**PETITION FOR A WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY**

Name ___CHAVEZ_____ ___SANTOS_____ __C_____
          (Last)                    (First)                  (Initial)

Prisoner Number ___C-87968_____

Institutional Address ___Correctional Training Facility___

ED-178-Up, P.O. Box 689, Soledad, CA 93960-0689

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

SANTOS CHAVEZ
(Enter the full name of plaintiff in this action.)

vs.

Ben Curry, Warden(A), et al.

_____

_____

_____

(Enter the full name of respondent(s) or jailor in this action)

Case No. _____
(To be provided by the clerk of court)

**PETITION FOR A WRIT
OF HABEAS CORPUS**

Exhibits Bound, Submitted
and Lodged, Separately.

### Read Comments Carefully Before Filling In

#### When and Where to File

You should file in the Northern District if you were convicted and sentenced in one of these counties: Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Monterey, Napa, San Benito, Santa Clara, Santa Cruz, San Francisco, San Mateo and Sonoma. You should also file in this district if you are challenging the manner in which your sentence is being executed, such as loss of good time credits, and you are confined in one of these counties. Habeas L.R. 2254-3(a).

If you are challenging your conviction or sentence and you were **not** convicted and sentenced in one of the above-named fifteen counties, your petition will likely be transferred to the United States District Court for the district in which the state court that convicted and sentenced you is located. If you are challenging the execution of your sentence and you are not in prison in one of these counties, your petition will likely be transferred to the district court for the district that includes the institution where you are confined. Habeas L.R. 2254-3(b).

PET. FOR WRIT OF HAB. CORPUS          - 1 -

1 | <u>Who to Name as Respondent</u>

2 |        You must name the person in whose actual custody you are. This usually means the Warden or

3 | jailor. Do not name the State of California, a city, a county or the superior court of the county in which

4 | you are imprisoned or by whom you were convicted and sentenced. These are not proper

5 | respondents.

6 |        If you are not presently in custody pursuant to the state judgment against which you seek relief

7 | but may be subject to such custody in the future (e.g., detainers), you must name the person in whose

8 | custody you are now <u>and</u> the Attorney General of the state in which the judgment you seek to attack

9 | was entered.

10 | <u>A. INFORMATION ABOUT YOUR CONVICTION AND SENTENCE</u>

11 |        1. What sentence are you challenging in this petition?

12 |               (a)    Name and location of court that imposed sentence (for example; Alameda

13 |                      County Superior Court, Oakland):

14 |               Superior Court of California        County of Los Angeles

15 |                      Court                                Location

16 |               (b)    Case number, if known ___A382607

17 |               (c)    Date and terms of sentence ___6/12/1984   17 years to life.

18 |               (d)    Are you now in custody serving this term? (Custody means being in jail, on

19 |                      parole or probation, etc.)              Yes _X__      No _____

20 |                      Where? Correctional Training Facility  ED-178-Up

21 |                      Name of Institution: ___California State Prison

22 |                      Address: ___P.O. Box 689, Soledad, CA 93960-0689

23 |        2. For what crime were you given this sentence? (If your petition challenges a sentence for

24 | more than one crime, list each crime separately using Penal Code numbers if known. If you are

25 | challenging more than one sentence, you should file a different petition for each sentence.)

26 | Second Degree Murder.

27 |

28 |

PET. FOR WRIT OF HAB. CORPUS       - 2 -

3. Did you have any of the following?

|  |  |  |
|---|---|---|
| Arraignment: | Yes __X__ | No _____ |
| Preliminary Hearing: | Yes __X__ | No _____ |
| Motion to Suppress: | Yes __X__ | No _____ |

4. How did you plead?

Guilty __X__    Not Guilty _____    Nolo Contendere _____

Any other plea (specify) _____

5. If you went to trial, what kind of trial did you have?

Jury _____    Judge alone_____    Judge alone on a transcript _____

6. Did you testify at your trial?                        Yes _____    No _____

7. Did you have an attorney at the following proceedings:

|  |  |  |  |
|---|---|---|---|
| (a) | Arraignment | Yes __X__ | No _____ |
| (b) | Preliminary hearing | Yes __X__ | No _____ |
| (c) | Time of plea | Yes __X__ | No _____ |
| (d) | Trial | Yes __X__ | No _____ |
| (e) | Sentencing | Yes __X__ | No _____ |
| (f) | Appeal   No direct appeal taken | Yes _____ | No _____ |
| (g) | Other post-conviction proceeding | Yes _____ | No __X__ |

8. Did you appeal your conviction?                    Yes _____    No __X__

(a)    If you did, to what court(s) did you appeal?

|  |  |  |
|---|---|---|
| Court of Appeal | Yes _____ | No __X__ |
| Year: _____    Result:_____ | | |
| Supreme Court of California | Yes _____ | No __X__ |
| Year: _____    Result:_____ | | |
| Any other court | Yes _____ | No __X__ |
| Year: _____    Result:_____ | | |

(b)    If you appealed, were the grounds the same as those that you are raising in this

PET. FOR WRIT OF HAB. CORPUS          - 3 -

1          petition?                    Yes _____      No _x_

2      (c)    Was there an opinion?          Yes _____      No _X_

3      (d)    Did you seek permission to file a late appeal under Rule 31(a)?

4                                                  Yes _____      No _X_

5          If you did, give the name of the court and the result:

6          _____

7          _____

8 9. Other than appeals, have you previously filed any petitions, applications or motions with respect to

9 this conviction in any court, state or federal?          Yes _X_      No_____

10       [Note: If you previously filed a petition for a writ of habeas corpus in federal court that

11 challenged the same conviction you are challenging now and if that petition was denied or dismissed

12 with prejudice, you must first file a motion in the United States Court of Appeals for the Ninth Circuit

13 for an order authorizing the district court to consider this petition. You may not file a second or

14 subsequent federal habeas petition without first obtaining such an order from the Ninth Circuit. 28

15 U.S.C. §§ 2244(b).]

16      (a)    If you sought relief in any proceeding other than an appeal, answer the following

17             questions for each proceeding. Attach extra paper if you need more space.

18          I.      Name of Court: __California Superior Court, County Los Angeles

19                  Type of Proceeding: __Motion for release_____

20                  Grounds raised (Be brief but specific):

21                  a.____Violation of Plea Agreement._____

22                  b._____

23                  c._____

24                  d._____

25                  Result: Denied, see Ex G § 1 & 2 ___Date of Result: 2/15/07 & 5/9/07

26          II.     Name of Court: _California Superior Court, County Los Angeles

27                  Type of Proceeding: ____Habeas Corpus._____

28                  Grounds raised (Be brief but specific):

PET. FOR WRIT OF HAB. CORPUS      - 4 -

1              a.    Board of Parole Hearings violated due process

2              b._____

3              c._____

4              d._____

5              Result:  Denied see Ex G § 3      Date of Result: 5/4/07

6        III.   Name of Court:  California Courts of Appeal, Second District.

7              Type of Proceeding: _____Habeas Corpus._____

8              Grounds raised (Be brief but specific):

9              a._____Board of Parole Hearings violated due process

10             b._____State is violating terms of plea agreement._____

11             c._____

12             d._____

13             Result: ____Denied____No. B199944_____Date of Result: 7/11/2007

14       IV.    Name of Court: _California Supreme Court_____

15             Type of Proceeding: _____Petition for Review_____

16             Grounds raised (Be brief but specific):

17             a._____Same as above in the Appellate Court, B199944___

18             b._____

19             c._____

20             d._____

21             Result: _Denied____No. S154571_____Date of Result: 9/19/2007

22       (b)    Is any petition, appeal or other post-conviction proceeding now pending in any court?

23                                            Yes _____  No_X__

24             Name and location of court: _____

25  B. GROUNDS FOR RELIEF

26       State briefly every reason that you believe you are being confined unlawfully. Give facts to

27  support each claim. For example, what legal right or privilege were you denied? What happened?

28  Who made the error? Avoid legal arguments with numerous case citations. Attach extra paper if you

PET. FOR WRIT OF HAB. CORPUS      - 5 -

1  need more space. Answer the same questions for each claim.

2  [Note: You must present ALL your claims in your first federal habeas petition. Subsequent

3  petitions may be dismissed without review on the merits. 28 U.S.C. §§ 2244(b); McCleskey v. Zant,

4  499 U.S. 467, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991).]

5     Claim One:_____ SEE FOLLOWING PAGE 6 J.

6

7     Supporting Facts:____ SEE FOLLOWING PAGE 6 J.

8

9

10

11    Claim Two:___,____ SEE FOLLOWING PAGE 6 K.

12

13    Supporting Facts:____ SEE FOLLOWING PAGE 6 K.

14

15

16

17    Claim Three:_____ SEE FOLLOWING PAGE 6 k TO 6 1.

18

19    Supporting Facts:____ SEE FOLLOWING PAGE 6 k TO 6 1.

20

21    GROUNDS FOUR TO SEVEN - WITH SUPPORTING FACTS ARE ON PAGES 6 1 TO 6 o

22

23  If any of these grounds was not previously presented to any other court, state briefly which

24  grounds were not presented and why:

25  ALL GROUNDS CONTAINED IN THIS PETITION HAVE BEEN PRESENTED TO

26  AND DENIED BY THE CALIFORNIA SUPREME COURT CASE NO. S154571.

27

28

PET. FOR WRIT OF HAB. CORPUS        - 6 -

INTRODUCTION

Petitioner, Santos Chavez, declares the Board of Parole Hearings (Board) reason, possible differing versions of the life offense might show a lack of remorse, to deny parole during petitioner's 8th parole consideration hearing held February 09, 2006 (Hearing Transcripts submitted as Exhibit A)(Exhibits Submitted Separately), is not supported by "some evidence" that petitioner currently poses a current risk to public safety, in light of his 24 years of continued incarceration on a 17 to life sentence which resulted from a plea of guilty to one count of second degree murder, during which time the facts of petitioner's offense were agreed upon by the Los Angeles Deputy District Attorney (DDA), and plead guilty to by petitioner.

Petitioner on June 19, 2006 filed a petition for writ of Habeas Corpus in the California Superior Court, case no. BH004075, challenging the Board's denial and procedures, said court denied petitioner's petition on May 4, 2007 claiming that the Board's decision was supported by some evidence, see (Ex. G, Section 3).

Specifically the Superior Court found the Board's decision was supported by finding that "multiple victims were attacked, injured or killed". This finding is contrary to the Plea agreement promise made by DDA Pamela Springer, when she promised to dismiss all other counts for guilty plea to one count of second degree murder. At the change of plea hearing (see Exhibit E, Section 1) DDA Springer and petitioner engaged in the following colloquy:

Ms. Springer: "Yes, Your Honor. Pursuant to our discussion between counsel and myself, the defendant is prepared to at this time, it is my understanding, plead guilty to count II of this information, murder. He is prepared to admit to the allegation in return for which the remaining counts will be dismissed.

There will be a stipulation that there is a factual basis for a finding that the murder is in the second degree." (Id. at 2).

Ms. Springer:  "Mr. Chavez, you understand that counts I, III, and IV will be dismissed at the time of probation and sentencing provided you do go forward?

Do you understand that?

The Defendant: Yes."  (Id. at 6).

Ms. Springer:  "Now, when you do go to state prison, when the parole board determines that you are ready for release back into the community, you will be placed on parole for a period of five years.

If during that time you violate any condition of parole, you can be returned to state prison for up to one year.

Do you understand this?

The Defendant: Yes.  (Id. at 7).

Ms. Springer:  "Mr. Chavez, to information no. A38207, Count II, charging you with a violation of section 187 of the penal code, murder, in that you did willfully and unlawfully and with malice aforethought kill Ronald Rivas, a Human Being, how do you plead?

The Defendant:  Guilty.

Ms. Springer:  And do you admit, sir, that in the commission of that offense, you personally used a firearm?

The Defendant:  Yes.

Ms. Springer:  In this particular offense, that you used a rifle, is that correct?

The Defendant:  Yes?  (Id. at 10)

When, as here, promises are made by the state attorney in exchange for a plea of guilty, those promises are binding on the Board, see Brown v. Poole, 337 F.3d 1155 (9th Cir. 2003); Buckley v. Terhune, 441 F.3d. 688 (9th Cir. 2005) cert. denied Tilton v. Buckley, U.S. Supreme Ct. no 05-1623, 2007 DJDAR 5499.

Contrary to the findings of the Board, erroneously upheld by the superior court, there is "NO EVIDENCE" to support a multiple victim finding, the state attorney entered into a plea agreement with petitioner that he would be convicted of one count of second degree murder, nothing more and nothing less.

Assuming arguendo the Board could ignore plea agreements, the above finding is also among the "immutable" facts of crimes which, given the lapse of 2[4] years and the exemplary rehabilitative gains made by petitioner over time, continued reliance on the aggravating facts of the crime no longer amount[s] to 'some evidence' supporting denial of parole, see In re Barker, 2007 DJDAR 7548, 7558.

Next the superior courts claim that the Board found petitioner was "unconcerned about how many people were hurt or killed" is a complete misstatement of the Board's factual record.

The Board was concerned that [at the time of the shooting] many individuals were present and luckily there weren't more casualties, which went to the point that the "offense" was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering, see (Exhibit A, pg 112), another factor that will never change, notwithstanding the fact that petitioner plead guilty, expressed remorse then and now, and continues to state his concern over his actions and the danger his actions posed to all the many people were present, hurt or killed, a fact not disputed by the Board. The Board read into the record portions of three psych reports, briefly stated: See Exhibit A, starting on page 71, "we have April 15th of 2005. And that's authored by Zika. She's the senior supervisor in psychology. And goes over various issues. Identifying information, marital issue, the parole plans, possibly the current mental status with treatment needs. And I didn't notice any problems there. Does make a comment here that is "his judgment is sound and his insight is good." On page 72 they read into the record: "Inmate Chavez feels the full

6 c

impact of his terrible decision to shoot somebody resulting in a man's death. He stated today is would've been much better to have called the police and let them handle the problem. Inmate Chavez feels genuine remorse for the victim, the victims family and for his own family."

On page 74, petitioner explains to the Board that he feels terrible about the offense and is very fortunate that no one else died.

On pages 76, 78, 79 assessment of dangerous evaluations in three different psych reports between 2000 and 2005 all found petitioner's potential for violence in the community to be no more then the average citizen and a suitable candidate for parole. (All eight psych reports are submitted under Exhibit C).

Lastly the superior courts uphold of the Board's finding that petitioner has inconsistent version's of the offense is not supported by the entire record, and cannot be "some evidence" to support a denial of parole.

During the Board Hearing, Ex A, DDA Yglecias, in an "non-adversarial" manner (Id. at 90), proceeds to retry petitioner (Id. 86-99). Her major concern was an unsworn, unreliable, unsigned, alleged statement made prior to petitioner being charged for his offense.

During sentencing of petitioner, the record shows DDA Springer accepting petitioner's factual version of events based not on just the word of petitioner, but on the confession made by petitioner's crime partner (Mr. Cantu) as follows:

Ms. Springer: "Yes, Your Honor. Very briefly as to Mr. Cantu's cooperation. From the moment he was apprehended in Texas, he immediately laid out both his and his co-defendant's complicity in the murder. He waived extradition and came back to California voluntarily.

Though it was the type of a midnight hour type of deal worked out with Mr. Cantu, he nevertheless did agree to testify against this defendant in return for merely staying the use allegation.

As to whether or not the other side fired first and as a result two people

6 d

ended up wounded and one dead, that evidence was in conflict.  That evidence would have to go before a jury, and it would be up to the jury to determine whether or not which fired or who fired first.

But the fact remains, regardless of who actually fired first, that this defendant and his friend, Jessie Cantu, armed themselves with loaded firearms, a rifle, a hand gun, and went looking for members from Cypress Park, not particularly the ones who had harassed his wife, but he went looking.

They went looking for members of Cypress Park in order to retaliate for the harassment of his wife.  As a result of the hunt, Mr. Ronald Rivas, a marine who was home on leave without absolutely no evidence that he was involved in any harassment of the defendant's wife, he ended up dead, the victim of a bullet.

So, Your Honor, in submission, the People feel that this defendant does not deserve to have the stay -- excuse me.  That two years stayed.  There is no basis both in fact, reason, or logic to stay that additional two years.  We'd submit it.  (Ex E, Section 2 pgs 7-8).

Petitioner's version of his offense has remained the "SAME" since his admission of guilt May 21, 1984 and sentence June 12, 1984, in that he and his crime partner (Mr. Cantu) armed themselves with a handgun and a rifle and went to confront the men who attempted to attack petitioner's pregnant wife, as shown above these facts were undisputed 24 years ago, and accepted by the Los Angeles Superior Court Judge and the Los Angeles Deputy District Attorney.

Thus, now some 24 years later, a contrary allegation by a DDA at petitioner's parole hearing, who appears not to pleased with the plea of guilty agreement her office made 24 years ago, retires the case.  This retrial is a clear attempt to provide the Board "some evidence" to deny parole, which has blindly been upheld by the Superior Court.  The evidence, an unsworn, unsigned, self-serving, untrue statement, that was never used during trial proceedings, cannot be used as "some evidence" to support a finding that petitioner currently

6 e

poses a unreasonable risk to public safety. Additionally trained professionals have found petitioner does not pose an unreasonable risk to public safety if released on parole. Thus, petitioner's hearing was transformed from a fair hearing into an unfair, arbitrary hearing in violation of petitioner's due process rights, by a highly questionable tactic by a new DDA.

NONE [emphasis added] of the reasons given by the Board to deny parole are supported by "any evidence" that petitioner would pose an unreasonable risk to public safety if released on parole after serving over 24 years in prison on a 17 to life sentence. The Board's decision actually contradicts their denial of parole, some of the comments made by the Board are as following:

"I'll make some comments and then read the decision. You know, we were very favorably impressed with you. Your programming is great. It's just we have - we're left with a lot of unanswered questions. And whenever we are in that type of situation we have to err on the side of caution." (Ex A, pg 111).

And the impetus for the crime was the inmate's wife at the time, Donna, had encountered some individuals from the Cypress Pard gang at a grocery store. They threatened her and she, in turn, told the inmate, her husband, who got upset over this and decided to basically take the matters into his own hands and discourage the gang members from that type of activity and he ended up shooting one and wounding two others." (Id. 113)

"In terms of your institutional behavior, you do have an excellent record, as I mentioned, of programming. You do seem to have participated in as many self-help and therapy programs as we could've asked you to do. And you do have a - is it three vocations?" (Ibid.)

The Board's record clearly shows petitioner is suitable for parole, their decision to deny parole is not support by "some evidence".

6 f

Petitioner has a right to a fair parole consideration hearing, the Board violated this right, petitioner has a protected liberty interest in parole, the Board violated this protected right, see <u>Irons v. Carey</u>, (2007) 479 F.3d 658, 2007 U.S. App. Lexis 5198; petitioner's minimum eligible parole date past on March 7, 1993 see (Ex. A, pg 1) and petitioner exceeded his actual minimum term of 17 years on September 1, 1999 [arrested 9/1/1982 + 17 years = 9/1/1999], notwithstanding the plea agreement entered into by petitioner, which promised he would be held accountable for one count of second degree murder, all other charges were dismissed and promised that when the parole board determined petitioner was ready for release petitioner would be placed on parole for five years.

THEREFORE:  Being there is "NO EVIDENCE" to support the Board's decision that petitioner actually poses a risk to public safety if released on parole, all the "EVIDENCE" in the record supports parole, and he has past both his minimum terms, and honored all the terms of his plea agreement, and that the Board was to release him, remand back to the Board would be a futile act, the only remaining remedy is to order respondent to parole him forthwith.

CALIFORNIA STATUTORY AND REGULATORY SCHEME FOR PAROLE

Beginning with <u>In re Elkins</u>, (2006) 144 Cal.App.4th 475, 487, "with an overview of the law as summarized in <u>In re Rosenkrantz</u>, (2002) 29 Cal.4th 616, and two subsequent decisions, <u>In re Scott</u>, (2004) 119 Cal.App.4th 871 (Scott I), and <u>In re Scott</u>, (2005) 133 Cal.App.4th 573 (Scoot II), and other constitutional, code and regulatory framework.

"Parole suitable decisions for inmates serving indeterminate life terms are made, in the first instance, by the Board. (<u>Scott I</u>, at 884-885).  While the Board has broad discretion, they must normally set parole release in a manner

6 g

that provides uniform terms for offenses of similar gravity and magnitude with respect to the public safety (ibid; PC § 3041, subd. (a)), and they must set a parole date unless it determines that the gravity of the current convicted offense or offenses, or their timing and gravity, are such that public safety requires a more lengthy period of incarceration (Scott I, at 885; PC § 3041, subd. (b)). That decision is guided, in turn, by a regulation directing the Board's consideration to six nonexclusive circumstances tending to show unsuitability and nine tending to show suitability, and a matrix table to be used to set uniform terms for where the particular murder fits, in terms of its relative seriousness see (Cal. Code Regs., tit. 15, 2400 et seq.); (Scott I at 888, 897); (Elkins, 487, fn.).

PC § 3041, Scott I, Scott II, found the only "statutory" factor required to be considered, and overarching consideration, is "public safety".

In determining risk to "public safety" the regs., (ibid) require that "all relevant, reliable information available to the panel shall be considered in determining suitability for parole.

The relative importance of each unsuitable or suitable factors is left to the judgment of the panel, (Scott II, at 592).

The goal of PC § 3041, is that "release on parole is the rule, rather than the exception. This section requires that the Board set a release date unless it determines that "consideration of the public safety requires a more lengthy period of incarceration" (In re Smith, (2003) 114 Cal.App.4th 343, 351; accord In re Lee, (2006) 143 Cal.App.4th 1400, 1405 [petitioner sentenced to indeterminate life term is normally entitled to parole when he does not pose an unreasonable risk to public safety"]).

Petitioner, being pro per, asks the court to use less stringent standards than formal pleadings drafted by lawyers, Haines v. Kerner, (1972) 404 U.S. 519, also use close judicial scrutiny when judging petitioner's parole denial, since

he committed his offense over 24 years ago, exceeded his 17 year minimum term by 9 years, <u>Scott II</u>, <u>Lee</u>, <u>Elkins</u> and <u>Irons</u>, using all above framework for review.

STANDARD FOR REVIEW

In denying petitioner's habeas corpus petition, the superior court did not conduct an evidentiary hearing, this being an original proceeding, this court should review the record independently (<u>Scott I</u> at 884). And the review is under the undisputed "some evidence" standard (<u>Rosenkrantz</u> at 658; <u>Elkins</u>, at 488 ["some evidence" standard designed to ensure minimum procedural due process protections].

While the court is precluded from resolving conflicts in the evidence, weight to be given evidence, or the manner specific factors relevant to parole suitability are to be considered and balanced, being these matters are exclusively within the discretion of the Board, making it irrelevant that a court might find the evidence in the record supporting suitability far outweighs unsuitability factors (<u>Rosenkrantz</u> at 677) the evidence must have some indicia of reliability (<u>Scott I</u> at 899) and unsuitability - suitability determinations must have some rational basis in fact (<u>Elkins</u> at 489).

As summarized by the California Supreme Court, the judicial branch is authorized to review the factual basis of a decision of the Board denying parole in order to ensure that the decision comports with the requirements of due process of law, in conducting such a review, the court may inquire whether "some evidence" in the record before the Board supports the decision to deny parole, based upon factors specified by the statute and regulation. If the decision's consideration of the specified factors is not supported by some evidence in the record and thus is devoid of a factual basis, the court should grant the petition for writ of habeas corpus (<u>Rosenkrantz</u> at 658), remanding the case for a new hearing being futile, the only appropriate remedy is to grant release (<u>Saif'ullah</u> 2005 WL 1555389 at *16; <u>Rosenkrantz v. Marshall</u>, 2006 WL 2327085;

McQuillion v. Duncan, (2003) 342 F.3d 1012, 1015-101; Lee and Elkins.

Finally, as has been stated, because the overarching consideration is public safety, the test in reviewing the Board's decision denying parole "is not whether some evidence supports the reasons the Board gives for denying parole, but whether some evidence indicates a parolee's release unreasonably endangers public safety (Lee at 1408).

Some evidence of the existence of a particular factor does not necessarily equate to some evidence the parolee's release unreasonably endangers public safety (Id.). "A commitment offense is an unsuitability factor that is immutable and whose predictive value may be very questionable after a long period of time." see (Scott II, at 594-595 and fn 9) quoting (People v. Murtishaw, (1981) 29 Cal.3d 733, 768) holding "predictions of future dangerousness are exceedingly unreliable, even where the passage of time is not a factor and the assessment is made by an expert".

**GROUND ONE:**

Can petitioner be denied parole based on dismissed counts by the Deputy District Attorney?

Petitioner plead guilty to one count of second degree murder with the promise by the state attorney that all other counts would be dismissed. Now the parole authority holds these dismissed counts against petitioner and using them to deny parole is contrary to his plea agreement and California Law.

California Penal Code 3041 (b) requires a parole date be set unless the gravity of the convicted offense is such that a longer period of incarceration is necessary. Petitioner was never convicted of crimes against multiple victims, any use of this factor to deny parole for petitioner violates both the law and petitioner's plea agreement. See Brown and Buckley, supra.

6 j

**GROUND TWO:**

Being the record is the only reliable information and the trial record contains the facts of petitioner's offense, use of police reports violates Cal. Code of Regs. tit. 15 2402.

Police reports are not part of the record of conviction, Draeger v. Reed, 9 Cal.App.4th 1511. Therefore all references to police reports in the transcripts are not evidence and must be stricken. During parole hearings, "evidence" must have "indicia of reliability" Biggs v. Terhune, 334 F.3d at 915, "some evidence" standard is only met, if the "evidence" is reliable, in the "record" and supports the "record" Powell v. Gomez, 33 F.3d 39, 40, Cato v. Rushen, 824 F.2d 703, 705 and Superintendent v. Hill, 472 US 455-456. The United States Supreme Court held in Crawford v. Washington, 2004 DJDAR 2949 "The Confrontation Clause commands that "reliability" be assessed in a particular manner: By testing in the crucible of cross-examination". An unsworn, unsigned, typed by an unknown author, with no evidence of how this alleged statement was taken is unreliable.

During the change of plea hearing and sentencing hearing of petitioner (see Exhibit E) the state attorney set forth the facts of the case, the Superior Court Judge accepted them as true and reliable.

The Board must be prohibited from using unreliable untested police reports as "some evidence" in a attempt to over ride reliable factual judicial findings to deny parole.

**GROUND THREE:**

Can the Board use an alleged failure to met one of the nine suitability factors as "some evidence" to deny parole?

As understood by petitioner, the Board is to set a parole date unless they find the crime was committed beyond the minimum necessary elements to sustain the conviction. The Supreme Court held in Dannenberg and Rosenkrantz this to mean "particular egregious", reading those cases, petitioner cannot find

**6 k**

anywhere the Court said the Board could deny if petitioner failed to meet a suitability factor.

In petitioner's case the Board said, as address supra, they were very impressed with petitioner, yet until they are 100% certain of petitioner's remorse they err on the side of caution and denied parole.

Signs of Remorse is a suitability factor which is to be weighed against the unsuitability factors, not a means to deny parole, so what weighing process does the Board use?

Clearly, using an alleged failure to meet a suitability factor, with a 100% certainty does not justify the denial of parole under statute, regulations or court rulings.

**GROUND FOUR:**

Does the Indeterminate Sentence Law substitute the will and discretion of the Board of Parole Hearings as to the time when petitioner is to be released for the fixed right to a deduction for his term of good conduct?

Petitioner is vested with a statutory right to earn good time conduct credits, In re Monigold, (1988) 205 Cal.App.3d 1224, (see Exhibit B, section 3).

When the Law substitutes the discretion of the Board for a statutory right, then it appears to be unconstitutional.

When, as here, the Board has not fixed the length of time which petitioner is to serve until the time they are ready to grant him his discharge, as evidenced by the instant case, there is obviously no opportunity for the operation of the good time credit system (see Ex Parte Lee, (1918) 177 Cal. 690)

The Law requires petitioner shall be released upon reaching his maximum term Dannenberg unless the Board fixes a shorter time and grants release, which they have failed to do.

For this reason it appears penal code 3041 (b) is unconstitutional.

**GROUND FIVE:**

Decision that petitioner is unsuitable for parole is not justified when the Board's own decision does not contain "any evidence" petitioner currently poses an unreasonable risk to public safety.

The Board's only concerns regarding parole was, multiple victims and petitioner's alleged failure to meet a suitability factor with a 100% clarity.

Petitioner's record and the Board found petitioner's psych reports fully supported parole. That petitioner had parole plans, had done all the programming they expected of him and they were very impressed.

As address, petitioner did not plead guilty to a charge of multiple victims, those charges were dismissed, besides that fact that after 24 years its been held that this reason is no longer a factor (Elkins at 498; and Barker, 2007 DJDAR 7558).

The only issue is the failure to meet a suitability factor in the eyes of the Board. Yet no rule, statute, regulation, Law, of court ruling, petitioner can locate holds that parole can be denied for failing to met a suitability factor.

Clearly, petitioner no longer poses an unreasonable risk to public safety and should therefore be released.

**GROUND SIX:**

Petitioner's due process rights under the 5th & 14th Amemd., of the U.S. Const., are violated by the Board's use of unchanging factors to deny petitioner a grant of parole, once petitioner exceeded his minimum term.

As discussed in the Introduction, petitioner has served his minimum term September 1, 1999, that was set under California Penal Code 3041 (a), use of offense to deny parole now violates both state and federal due process.

Numerous courts have found the continued denials of parole based on unchanging factors in face of the rehabilitation of petitioner, espoused by the

prison system and in face of impeccable prison programming, does in fact violate due process of law, state due process violated in Barker, Lee, Elkins, Scott, In re Gray, 2007 DJDAR 7515; federal due process violated in Martin v. Marshall, (2006) 431 F.Supp.2d 1038; Sanchez v. Kane, (2006) 444 F.Supp.2d 1049; Rosenkrantz v. Marshall, (2006) 444 F.Supp.2d 1063; Biggs v. Terhune, (2003) 334 F.3d 914; Willis v. Kane, 2007 WL 1232060.

Petitioner's life offense, as explained, has no evidentiary value in proving current dangerousness, what remains is petitioner's rehabilitation which shows his lack of danger to public safety if released on parole.

It is generally recognized by the courts and by modern penologists that the purpose of the indeterminate sentence law, like other modern laws in relation to the administration of the criminal law, is to mitigate the punishment which would otherwise be imposed upon the offender.

These laws place emphasis upon the reformation of the offender.  They seek to make the punishment fit the criminal rather than the crime.

They endeavor to put before the prisoner great incentive to well-doing in order that his will to do well should be strengthened and confirmed by the habit of well-doing.  Instead of trying to break the will of the offender and make his submissive, the purpose is to strengthen his will to do right and lesson his temptation to do wrong (see Ex Parte Lee, (1918) 177 Cal. 690).

In petitioner's case, he served his minimum term of punishment, his record shows he has a strong will to do right, and does not pose a risk to public safety, and must be released on parole.

**GROUND SEVEN:**

Does the promise of Deputy District Attorney Springer, that the parole board will release petitioner back into the community prevent the application of the enactment of statute 3041.2 after petitioner entered his plea agreement.

Petitioner entered into his plea agreement in 1984, 4 years prior to the

enactment of proposition 89, and the promise made to petitioner was that the parole Board would release him on parole. In the case In re Chaudhary, (2004) county of Santa Clara Case no. 108084, (provided as Exhibit G, Section 6) held application of prop. 89's enactment of Penal Code 3041.2 violated due process, to those who plead to second degree murder prior to its enactment.

Clearly, petitioner plead to second degree murder prior to 1988, was promised that the parole board would be the one to parole him.

CONCLUSION

WHEREFORE: When "NO EVIDENCE" can be found in the "record" that petitioner currently poses an unreasonable risk to public safety when paroled, remand to the Board of Parole Hearings is futile. Petitioner's "record" shows experts rated his risk to public safety as low or no more than the average citizen.

Petitioner has exceeded his 17 year term of punishment and has served 9 years into the "to life" portion, combined, more than 24 years of rehabilitation. Petitioner plead covered all the elements of the offense, thus no elements remain to deny parole.

Petitioner's plea promised him the Board would release him on parole back into the community. The Boards failure to parole petitioner, without good cause, now requires this court to order petitioner released forthwith.

I, Santos Chavez, hereby declare all the above true and correct under penalty of perjury.

Dated: SEPTEMBER 23, 2007

Respectfully Submitted,

Santos Chavez Pro Per

6 o

1         List, by name and citation only, any cases that you think are close factually to yours so that they

2    are an example of the error you believe occurred in your case. Do not discuss the holding or reasoning

3    of these cases:

4    SEE PROCEEDING PAGES 6 a TO 6 o.

5    

6    

7    Do you have an attorney for this petition?                                    Yes_____          No _X_

8    If you do, give the name and address of your attorney:

9    

10        WHEREFORE, petitioner prays that the Court grant petitioner relief to which s/he may be entitled in

11   this proceeding. I verify under penalty of perjury that the foregoing is true and correct.

12   

13   Executed on ___SEPTEMBER 23, 2007___

14                         Date          Santos C. Chavez
                                      Signature of Petitioner

15   

16   

17   

18   

19   

20   (Rev. 6/02)

21   

22   

23   

24   

25   

26   

27   

28   

PET. FOR WRIT OF HAB. CORPUS          - 7 -

**PROOF OF SERVICE BY MAIL**
**BY UNREPRESENTED PERSON IN STATE CUSTODY**
(FR CivP Rule 4 & 5)
(C.C.P. §§§§ 1011, 1012, 1013, 1013(a), 2015,5)


I, _____Santos Chavez_____, declare:

I'm over 18 years of age, I'm a party to this action. I'm reside
in CORRECTIONAL TRAINING FACILITY, STATE PRISON in the County of
Monterey, State of California. My prison address is:

        Santos Chavez_____, CDCR #:C-87968_____
        CORRECTIONAL TRAINING FACILITY
        P.O. Box 689, Housing# _ED-178-Up____
        Soledad, CA 93960-0689

On _September 23, 2007____, I served the attached

    Petition for Writ of Habeas Corpus.
_____

_____

by placing true and correct copies in a postage prepaid sealed
envelope, seal signed by prison staff, who then deposited said
envelope in the institutional mail collection system, envelopes
were addressed as follows:

CLERK of the UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
450 GOLDEN GATE AVENUE
P.O. BOX 36060
SAN FRANCISCO, CA 94102

I declare under penalty of perjury that the foregoing is true

and correct.  Executed on_____SEPTEMBER 23, 2007_____.

                                    SANTOS CHAVEZ        PRO SE

Pursuant to Huston v. Lack, 487 U.S.
266, 270-71, 101 L.Ed.2d 245 (1988);
Huizar v. Carey, 273 F.3d 1220 (9th
Cir. 2001); and Rule 4(c) FR Civ. P,
[Inmate legal documents are deemed
filed on the date they are delivered
to prison staff for processing and
mailing via the institutional legal
mail collection system procedures.