85

1    128.  So I - I'll (indiscernible) I guess that

2    would mean you have 18 128's as opposed to 17.

3    All right.  So (indiscernible) time between when

4    you were a gang member?

5         **INMATE CHAVEZ:**  Uh-huh.

6         **DEPUTY COMMISSIONER KEENAN:**  You were the

7    kind of guy who was willing to, you know, take

8    the law into his own hands -

9         **INMATE CHAVEZ:**  Yes.

10        **DEPUTY COMMISSIONER KEENAN:**  - and the

11   fact is, I mean, that was sort of your mindset

12   back then.

13        **INMATE CHAVEZ:**  Uh-huh.

14        **DEPUTY COMMISSIONER KEENAN:**  But you

15   believe if you didn't - if this thing didn't

16   happen though you would've been just fine five

17   years later?

18        **INMATE CHAVEZ:**  Yes, I do.

19        **DEPUTY COMMISSIONER KEENAN:**  You think

20   you would've just gotten lucky?  The odds would

21   be with you?

22        **INMATE CHAVEZ:**  Well, I was working so -

23   so that kept me busy, you know, and kept me out

24   of trouble.  Other than this, no, I didn't - I

25   don't drink or nothing so -

26        **DEPUTY COMMISSIONER KEENAN:**  And I'm

27   assuming that the reason that we conclude the

86

1    (indiscernible) because you've achieved all

2    kinds of personal growths and you're a whole

3    different kind of guy.

4         **INMATE CHAVEZ:**  Yes.

5         **DEPUTY COMMISSIONER KEENAN:**  And that's

6    why we would know maybe five years from you'd be

7    doing as well.

8         **INMATE CHAVEZ:**  Uh-huh.

9         **DEPUTY COMMISSIONER KEENAN:**  Back then you

10   didn't have any of that.  You were a gang

11   member, you know.  There's a willingness to

12   shoot, take the law into his own hands.  But you

13   believe that five years from that if you hadn't

14   been caught for this everything would've been

15   fine?

16        **INMATE CHAVEZ:**  I believe so.

17        **DEPUTY COMMISSIONER KEENAN:**  Okay.

18   That's all.

19        **PRESIDING COMMISSIONER JULIEN:**  Okay.

20   Okay, Mr. Yglecias, do you have questions for

21   Mr. Chavez?

22        **DEPUTY DISTRICT ATTORNEY YGLECIAS:**  Yes.

23   May I direct him - direct them to Mr. Chavez or

24   through the Panel?

25        **PRESIDING COMMISSIONER JULIEN:**  To us,

26   please.

27        **DEPUTY DISTRICT ATTORNEY YGLECIAS:**  What

87

1    I would be urging the Panel to ask Mr. Chavez,

2    again, following up on what we've just discussed

3    in trying to clarify how many weapons Mr. Chavez

4    brought with him that evening.  Didn't Mr.

5    Chavez, in fact, bring both a rifle and a

6    handgun?

7        **INMATE CHAVEZ:**  Yeah, my – my crime

8    partner had a handgun and I had the rifle.

9        **DEPUTY DISTRICT ATTORNEY YGLECIAS:**    Why

10   is it that at the May 21st, 1996, subsequent

11   parole consideration hearing you admitted that

12   you also had a .38 handgun and you fired

13   approximately six rounds from that handgun?

14       **INMATE CHAVEZ:**  That was one of the other

15   guys shooting at me.  I – I never admitted to

16   that.  That was somebody else shooting at me

17   from the side.  There's police reports about

18   that and all.

19       D**EPUTY DISTRICT ATTORNEY YGLECIAS:**    A

20   witness by the name of Ralph Castillo did, in

21   fact, tell police that he observed you – you

22   were the driver of the vehicle and that you used

23   a small automatic handgun while shooting at – at

24   the crowd.  Is – is that a correct statement or

25   do you dispute that?

26       **INMATE CHAVEZ:**  I dispute that.

27       **DEPUTY DISTRICT ATTORNEY YGLECIAS:**

88

1   Having grown up in that area you would agree,

2   wouldn't you, that for as long as you can

3   remember Cypress Park and the Avenues have been

4   very bitter rival gangs?  Is that true?

5          **INMATE CHAVEZ:**  True.

6          **DEPUTY DISTRICT ATTORNEY YGLECIAS:**   And

7   they have a long history of back and forth

8   killings.  Isn't that true?

9          **INMATE CHAVEZ:**  True.

10          **DEPUTY DISTRICT ATTORNEY YGLECIAS:**   And

11   they have a long history of drive-by shootings

12   against one another. Isn't that true?

13          **INMATE CHAVEZ:**  Yes.

14          **DEPUTY DISTRICT ATTORNEY YGLECIAS:**  Okay.

15   And one of the reasons that drive-by shootings

16   have been sort of a common way in which they

17   targeted each other is because of the geography.

18   There's basically a large hilly area that

19   separates the two neighborhoods and there are

20   very few through - through and through streets.

21   And, therefore, if you're targeting the rivals

22   whether you're from the Avenues or whether

23   you're from Cypress Park you pretty much have to

24   use a car to get to rival territory even though

25   it's next in - they're next to each other but

26   separated by a big hill.

27          **INMATE CHAVEZ:**  Uh-huh.

89

1      **DEPUTY DISTRICT ATTORNEY YGLECIAS:**    Isn't
2  that true?  You said yes?

3      **INMATE CHAVEZ:**  Yes.

4      **DEPUTY DISTRICT ATTORNEY YGLECIAS:**    And
5  isn't' it also true from your familiarity with
6  these - growing up in this area and with the
7  gangs that you knew full well that by driving up
8  Maseo Street and driving Isabel those are
9  notoriously - notorious streets known as gang
10  hangouts and as areas where Cypress Park gang
11  members live.  At least at that time.  Isn't
12  that true?

13      **INMATE CHAVEZ:**  Yes.

14      **DEPUTY DISTRICT ATTORNEY YGLECIAS:**    All
15  right.  If - if this was not a gang shooting why
16  is it that you took the time to pick up your
17  buddy, Jessie Cantu, who was also armed and
18  bring him with you to Isabel and Maseo Streets?

19      **INMATE CHAVEZ:**  I didn't pick him up.  He
20  was at my house.

21      **DEPUTY DISTRICT ATTORNEY YGLECIAS:**    Why
22  is it that you brought him with you?

23      **INMATE CHAVEZ:**  I didn't - I didn't
24  actually tell him to get in the car.  We just
25  both got in.  Nothing was said.  You know, I
26  also want to say that I totally messed up his
27  life by doing this, by, you know, being -

90

1   bringing him and dragging him into this.  By him
2   being there, you know.  But I didn't pick him
3   up.  And not to say that he - he's not accepting
4   his responsibility in this also but this is -
5   this is all my fault.  You know.

6       **DEPUTY DISTRICT ATTORNEY YGLECIAS:**
7   Jessie Cantu was also an - an Avenues gang
8   member, correct?

9       **INMATE CHAVEZ:**  Correct.

10      **PRESIDING COMMISSIONER JULIEN:**   Okay,
11  you need to answer to me.  Sorry.

12      **ATTORNEY CHRISTENSEN:**   Yeah.

13      **DEPUTY DISTRICT ATTORNEY YGLECIAS:**   Oh,
14  okay.

15      **PRESIDING COMMISSIONER JULIEN:**   Cause
16  it's not an adversarial.  Okay.

17      **DEPUTY DISTRICT ATTORNEY YGLECIAS:**   Why
18  is it that your former wife, Donna Chavez, never
19  corroborated your story about her having been
20  accosted by two or three Cypress Park
21  individuals?

22      **INMATE CHAVEZ:**  She has corroborated it.
23  She - that - she stated that to police.

24      **DEPUTY DISTRICT ATTORNEY YGLECIAS:**   When
25  you first were arrested you made a statement to
26  the police, correct?

27      **INMATE CHAVEZ:**  Yes.

91

1     **DEPUTY DISTRICT ATTORNEY YGLECIAS:**    And
2     isn't it also correct that during that statement
3     you never mentioned this story about your wife
4     haven been accosted and you going to seek
5     retaliation?

6     **INMATE CHAVEZ:**    No.

7     **DEPUTY DISTRICT ATTORNEY YGLECIAS:**    Isn't
8     that true?

9     **INMATE CHAVEZ:**    No, it's not true.

10    **DEPUTY DISTRICT ATTORNEY YGLECIAS:**    All
11    right.    Okay.    Are you claiming now that you did
12    - from the very moment you started to police
13    that you told this story?

14    **INMATE CHAVEZ:**    I'm sure I did.

15    **DEPUTY DISTRICT ATTORNEY YGLECIAS:**    Okay.
16    I'm going to read to you a summary of your
17    statement to the police and ask you to tell me
18    whether or not this is accurate.

19    **INMATE CHAVEZ:**    Okay.

20    **DEPUTY DISTRICT ATTORNEY YGLECIAS:**    With
21    the Board's permission.    "On Saturday night I
22    was at home watching our - on TV.    At about
23    10:30 I decided to go visit my father who lives
24    on (indiscernible) Street.    As I was passing the
25    Boy's Market I was flagged down by Pam Adams who
26    wanted a ride to the Park.    I took her to the
27    Park over by Avenue 64 in York.    After I dropped

92

1   her off I took at .22 caliber rifle from the

2   trunk of my vehicle and put it in the back seat.

3   As I was going to my father's house I saw Jessie

4   Cantu walking down the street by Franklin High.

5   I asked him if he wanted to ride with me to my

6   dad's house. After he got in I continued down

7   York Street and then Eagle Rock and onto

8   Cypress. When I got to Maseo Street I made a

9   left turn to go up to Isabel Street so I

10   wouldn't have to go by the Market. As I drove

11   by Maseo Street I saw a group of people standing

12   around in the yard and on the sidewalk. I

13   passed the group of people and made a u-turn to

14   go back down to Cypress Avenue. As I passed the

15   group this time someone threw a bottle at my

16   car. I then heard about 15 shots being fired.

17   I guess at this time Jessie reached in the back

18   seat and got the rifle and shot back."

19         **PRESIDING COMMISSIONER JULIEN:** What

20   page is that one?

21         **DEPUTY DISTRICT ATTORNEY YGLECIAS:** This

22   is a part of the, you know, unfortunately,

23   Commissioner, the file – my – this is under –

24         **PRESIDING COMMISSIONER JULIEN:** Legal

25   Documents?

26         **DEPUTY DISTRICT ATTORNEY YGLECIAS:** –

27   Legal Documents. It's not numbered. It's part

93

1   of a police report and it's approximately 30

2   pages into that section.  I noticed it after the

3   probation report there's a police affidavit that

4   - that does have written pages on the bottom.

5        **ATTORNEY CHRISTENSEN:**  I see it here.

6   Yeah, actually it's about mid-way through - oh,

7   gosh.  They should really number these pages.

8        **DEPUTY DISTRICT ATTORNEY YGLECIAS:**  Yeah.

9   And, unfortunately, after the numbered pages

10  this is about -

11       **ATTORNEY CHRISTENSEN:**   Cause after the -

12       **DEPUTY DISTRICT ATTORNEY YGLECIAS:**     -

13  ten to 15 pages -

14       **ATTORNEY CHRISTENSEN:**  Oh, yeah.

15       **DEPUTY DISTRICT ATTORNEY YGLECIAS:**     -

16  beyond the numbered pages.

17       **PRESIDING COMMISSIONER JULIEN:**   Is it

18  hand-written?

19       **ATTORNEY CHRISTENSEN:**   No, no.  It's a

20  type-written -

21       **DEPUTY DISTRICT ATTORNEY YGLECIAS:**    It's

22  type-written.

23       **ATTORNEY CHRISTENSEN:**  - it's says

24  Interview with Santos Chavez on 1/19 - oh,

25  that's his date of birth.  Interview on -

26       **DEPUTY DISTRICT ATTORNEY YGLECIAS:**    On

27  8/2.

94

1          **ATTORNEY CHRISTENSEN:**    8/2/82.

2          **DEPUTY DISTRICT ATTORNEY YGLECIAS:**    '82.

3    At 17:35 hours by Detective Grubel.

4          **PRESIDING COMMISSIONER JULIEN:**    Yes.

5          **DEPUTY DISTRICT ATTORNEY YGLECIAS:**

6    There's a page that's numbered Page 21 and it's

7    - it's basically a six-pack photo ID page.

8          **PRESIDING COMMISSIONER JULIEN:**    On

9    Saturday -

10         **DEPUTY DISTRICT ATTORNEY YGLECIAS:**    This

11    is about ten pages -

12         **PRESIDING COMMISSIONER JULIEN:**    Cause

13    that started on Saturday and I was watching TV.

14         **DEPUTY DISTRICT ATTORNEY YGLECIAS:**    Yes.

15         **ATTORNEY CHRISTENSEN:**    That's it.    Uh-

16    huh.

17         **DEPUTY DISTRICT ATTORNEY YGLECIAS:**    Yes.

18    Is this not the statement you -

19         **PRESIDING COMMISSIONER JULIEN:**

20    (Indiscernible).

21         **DEPUTY DISTRICT ATTORNEY YGLECIAS:**    -

22    made to the investigating officer -

23         **INMATE CHAVEZ:**    No.

24         **DEPUTY DISTRICT ATTORNEY YGLECIAS:**    -

25    Mr. Chavez?

26         **INMATE CHAVEZ:**    No.

27         **PRESIDING COMMISSIONER JULIEN:**    It's

95

1  not?

2      **INMATE CHAVEZ:**  No.  You know what

3  actually this – can I say?  Part of

4  conversations are on this (indiscernible) thing

5  is – is there's like three different times that

6  they asked me questions.  This has nothing to do

7  with this – this crime.  Nothing. It was

8  something else that happened probably months

9  before that.  They were asking me questions

10  about.

11      **DEPUTY DISTRICT ATTORNEY YGLECIAS:**  Well,

12  the murder occurred on July 24th. This interview

13  is on August the 2nd, approximately one week

14  later.

15      **INMATE CHAVEZ:**  Uh-huh.

16      **DEPUTY DISTRICT ATTORNEY YGLECIAS:**    Is

17  it your – your position this is a – has nothing

18  to do with the murder?

19      **INMATE CHAVEZ:**  Yeah, it doesn't.

20  Nothing.

21      **DEPUTY DISTRICT ATTORNEY YGLECIAS:**  Isn't

22  it also true, sir, that you originally – when

23  you originally spoke to investigators you blamed

24  Mr. Cantu for the shooting and denied that you

25  had been involved in the actual shooting?

26      **INMATE CHAVEZ:**  No.    Not true.

27      **DEPUTY DISTRICT ATTORNEY YGLECIAS:**  I'd

96

 1  call the Panel's attention and Mr. Chavez's
 2  attention to Page 5 of the affidavit which is in
 3  the Legal Documents section.  This one is
 4  numbered at the bottom.  It's Page 5.  It's
 5  closer to the front.  It's after the probation
 6  report.  About approximately the middle part of
 7  the - actually, line 16.  These - these are
 8  pages that are numbered.  Line 16 states Santos
 9  Chavez also stated that a Jessie Cantu, AKA
10  Porky, a fellow Avenues gang member, was the
11  sole shooter in this incident.  The police are -
12  are saying - the investigators are saying that
13  you - this is a statement that you made.  Are
14  you currently denying having made this
15  statement?
16          **INMATE CHAVEZ:**  Yes.
17          **DEPUTY DISTRICT ATTORNEY YGLECIAS:**    All
18  right.
19          **PRESIDING COMMISSIONER JULIEN:**    Where is
20  it?
21          **DEPUTY DISTRICT ATTORNEY YGLECIAS:**    I -
22  I'm sorry.  They're - after the probation
23  officer's report the Legal Document section has
24  a letter from one of our previous DA's and then
25  attached to that letter is an affidavit, a
26  typewritten affidavit -
27          **PRESIDING COMMISSIONER JULIEN:**    Okay, I

97

1   see – yeah.

2           **DEPUTY DISTRICT ATTORNEY YGLECIAS:**   – by

3   (indiscernible) Michael McDonough.  On – it's on

4   Page 2.  So at the bottom in handwritten pages.

5   Numeric –

6           **PRESIDING COMMISSIONER JULIEN:**   Yes.

7           **DEPUTY DISTRICT ATTORNEY YGLECIAS:**   –

8   it's a PG number.

9           **PRESIDING COMMISSIONER JULIEN:**   Yeah.

10          **DEPUTY DISTRICT ATTORNEY YGLECIAS:**   So I

11  would call the Panel's attention to Page number

12  5.

13          **PRESIDING COMMISSIONER JULIEN:**   Okay.

14          **DEPUTY DISTRICT ATTORNEY YGLECIAS:**   And

15  it's line – beginning at line 16.  It's just one

16  sentence.

17          **PRESIDING COMMISSIONER JULIEN:**   Yeah.

18          **DEPUTY DISTRICT ATTORNEY YGLECIAS:**

19  That's – that's what I was referring to.

20          **PRESIDING COMMISSIONER JULIEN:**   So you

21  didn't say that?

22          **INMATE CHAVEZ:**   No, the –

23          **PRESIDING COMMISSIONER JULIEN:**   Why

24  would somebody say you said that?

25          **INMATE CHAVEZ:**   I – I have no idea but

26  these also say stuff that doesn't have nothing –

27  nothing to do with it or other vehicles that

98

1    were involved.  It - it's a lot of - I - I'm not

2    saying mis - misdirection but it's not right.

3         **DEPUTY DISTRICT ATTORNEY YGLECIAS:**    I

4    would also ask the Panel to inquire of Mr.

5    Chavez as to why he waited until the hearing

6    date of February 24th, 1994, to claim the

7    sequence of events that includes the victims

8    shooting at him first.  In other words, that

9    it's never been claimed in the past until that

10   hearing date.  Why did you wait until then, Mr.

11   Chavez?

12        **INMATE CHAVEZ:**  That's not true.  I said

13   it from the start.  From the very beginning.

14        **DEPUTY DISTRICT ATTORNEY YGLECIAS:**    If

15   indeed the sequence of shooting occurred in the

16   manner that you've described at today's Hearing,

17   namely, that after - not until after you stopped

18   the vehicle and began to exit the vehicle how -

19   how were able - can you describe for this Panel

20   how it is that you were able to compose

21   yourself, to steady yourself and to aim your gun

22   with such accuracy that you were able to strike

23   all three victims including one in the head and

24   kill him at the same time that you were being

25   shot at and while you were exposed and - and

26   were - were - were not being protected by

27   anything?  How is it that you were able to do

99

1    that?

2        **INMATE CHAVEZ:**  Fear.  It's all that I

3    can explain.

4        **DEPUTY DISTRICT ATTORNEY YGLECIAS:**    I -

5    I have no further questions.

6        **PRESIDING COMMISSIONER JULIEN:**  What

7    happened to your first lawyer?

8        **INMATE CHAVEZ:**  My first lawyer.

9        **PRESIDING COMMISSIONER JULIEN:**

10        (Indiscernible) I think it was one of

11    your first.  Mr. McPherson.  Transferred.  It

12    just says to (indiscernible).  Did you end up

13    having - representing yourself?

14        **INMATE CHAVEZ:**  Oh, yeah.  Here, you

15    mean.  Yes.  Yes.

16        **PRESIDING COMMISSIONER JULIEN:**    What

17    happened?

18        **INMATE CHAVEZ:**  We - we got into - I

19    don't know.

20        **PRESIDING COMMISSIONER JULIEN:**    Okay.

21    Ms. Christensen, do you have any questions?  All

22    right.  Just one more thing.  Concerning the

23    shotgun, Mr. Chavez.  You say that you and your

24    family were active outdoorsmen?

25        **INMATE CHAVEZ:**  Uh-huh.

26        **PRESIDING COMMISSIONER JULIEN:**  And that

27    the shotgun was used for deer hunting?

100

1        **INMATE CHAVEZ:**  Not that shotgun that
2    they arrested or –

3        **PRESIDING COMMISSIONER JULIEN:**  Not that
4    shotgun.  Okay.  Okay.  Now, is there anything
5    that you can do, Mr. Chavez to make – make
6    amends for this crime?

7        **INMATE CHAVEZ:**  There's nothing I can do
8    to – to – to make amends or to change it.  The
9    only thing I could do now was to be responsible,
10    you know, to me, to my family and to – to
11    society as a whole.  There's nothing I could do
12    to change what happened or – all I could do is –
13    is – is promise and – and – and make sure that I
14    never hurt no one else again.  Or put myself in
15    a situation where that will come up.

16        **PRESIDING COMMISSIONER JULIEN:**  And you
17    believe through all of the work that you've done
18    here in the Institution to improve yourself and
19    to gain knowledge would indicate that would not
20    happen again?

21        **INMATE CHAVEZ:**  Yes, I think I'm very
22    prepared for that.

23        **PRESIDING COMMISSIONER JULIEN:**  Okay.
24    All right, thank you, Mr. Chavez.  Okay.  Mr.
25    Yglecias, do you have a closing?

26        **DEPUTY DISTRICT ATTORNEY YGLECIAS:**  Yes,
27    thank you.  I wish to express on behalf of Los

101

1   Angeles County District Attorney that our office
2   is adamantly opposed to Mr. Chavez's release and
3   to a finding of suitability.  While I applaud
4   Mr. Chavez for his - his work and his self-
5   improvement and his vocational training and his
6   ability to remain relatively disciplinary fee -
7   free through most of his incarceration,
8   particularly the latter years, I think there is
9   a substantial difference between - in - in - in
10  the assessment that this Panel is - is legally
11  required to make which is whether or not he
12  continues to pose an unreasonable threat and
13  danger, potential danger, to the public if
14  released there's a substantial different between
15  the individual - the young individual exercising
16  very poor judgment, being hot-headed and
17  vindicating his pregnant wife after she's
18  assaulted which is the story that Mr. Chavez
19  would have this Panel believe and accept and has
20  been selling for a very long time to therapists,
21  to correctional - correctional counselors and
22  even to the probation department and as
23  distinguished by a cold-blooded gang killer who
24  simply takes it upon himself with, of course,
25  supported by other - a fellow gang member to
26  simply hunt down, go to rival territory,
27  specifically go to an area where he would expect

102

1    to find rival gang members on a Saturday night
2    and conduct a drive-by shooting.  Fully armed,
3    fully aware that this is a rival.
4    Unfortunately, Mr. Chavez is not undergone the
5    growth that he would have this Panel believe and
6    - or the growth that he has convinced
7    psychological evaluators that he's undergone, in
8    my opinion, because he has manipulated the facts
9    for many, many years to minimize his own
10   personal culpability and dangerousness.  While
11   he admits to the act he is unwilling to admit to
12   the motivation which is simply cold-blooded gang
13   rivalry.  The reason why I've asked a number of
14   questions of Mr. Chavez that I have is because
15   according to the records on file in this case
16   the facts are from what he would have this Panel
17   believe.  This was not a young man exercising
18   poor judgment and attempting to vindicate his
19   wife.  This was a man who simply is a cold-
20   blooded killer at that time who was seeking to
21   kill, maim and injure rival gang members.  We
22   know that because while we don't have a
23   transcript of a trial or an appellate transcript
24   because this was a - a - a - a case that was
25   settled by guilty plea what we do know about
26   this case flies in the face of what he now
27   claims.  The records in this case fail show, as

103

1    I've demonstrated, the records are clear that

2    his original statement to investigating officers

3    is simply that he picked up Mr. Cantu.  And he

4    minimized even in that story claiming he simply

5    was driving by, somebody threw bottle and there

6    were shots fired at him and that they fired –

7    Mr. Cantu fired in return.  But at no time when

8    he was first making a statement to the

9    investigating officers – I guess he hadn't

10   thought about the – the potential story of a

11   wife and the state – the story that he now

12   sticks to.

13        **DEPUTY COMMISSIONER KEENAN:**

14   (Indiscernible)

15                    (OFF THE RECORD)

16        **DEPUTY COMMISSIONER KEENAN:**  Back on

17   record, Tape 2 Side 1.

18        **DEPUTY DISTRICT ATTORNEY YGLECIAS:**  Thank

19   you.  Mr. Chavez has basically engaged in

20   revisionist history throughout the time that

21   he's been incarcerated.  Both in his

22   conversations to professionals and in his

23   statements made to this Panel and to predecessor

24   panels.  Our records show that Mr. Chavez has

25   added and massaged the facts over time.

26   Frankly, has made partial admissions – well, let

27   me restate that.  I – I would call this Panel's

104

1   attention to the transcript of the initial lifer
2   hearing in 1992 in early March and during that
3   time Mr. Chavez contended that two of the three
4   victims were gang members, the two that
5   survived.  But conceded that the - the third was
6   merely a bystander, an innocent civilian.  Today
7   that has changed to now even the third was a
8   gang member.  Today it's changed further.  Now
9   somehow Mr. Chavez knows that the third, the
10  decedent, was also one of his wife's original
11  assailants.  So the factitious story about the
12  wife hasn't been enough; that fictitious story
13  has evolved and additional facts have been added
14  to it all of which tend to de-humanize and take
15  away from the victims and somehow in a way that
16  is favorable and minimizes what Mr. Chavez is
17  guilty of.  I would call this Panel's attention
18  also to Page 15 in the Legal Documents section.
19  Page 15 of investigating officer's report,
20  affidavit and reports.  This is the one that
21  actually - has written on the bottom, you know,
22  the numerical order.  At the very bottom of Page
23  15 investigation officer writes "additional, one
24  witness interviewed parenthesis name, address
25  retained by IO close parenthesis stated that
26  after the shooting an unknown male fired six
27  shots at the suspect vehicle and the vehicle

105

1    suspects swerved and reacted like one of the
2    suspects was possibly hit."   This is significant
3    because this is the only indication that there
4    was shooting back at, that is during the
5    investigation, that they were shooting back at
6    Mr. Chavez's car.   The key word is after.   There
7    were bullet holes to be found on Mr. Chavez's
8    car.   However, the sequence was the opposite.
9    After he and his crime partner, Mr. Cantu, went
10   looking for, found and shot at rival gang
11   members not surprisingly other party-goers
12   and/or those rival gang members shot back.   It
13   is the evidence of this return fire that Mr.
14   Chavez has manipulated and seized upon to now
15   also weave into his fictitious story that it was
16   he who was shot at first.   The - I think the
17   passage of 20-something years, 23 years or 22
18   years, should not, in and of itself, inure to
19   Mr. Chavez's benefit in terms of the accuracy,
20   the factual accuracy, of what he did and what
21   was committed.   But certainly inured to his
22   benefit in other ways which this panel has
23   already reviewed.   But the fact of the matter is
24   that Mr. Chavez didn't need a motive.   He was a
25   gang member who felt very bitter against a rival
26   gang and together with a crime partner sought
27   out to find, shoot out and potentially kill gang

106

1    members.   And he did find them and he did shoot
2    at and, unfortunately, did kill not a gang
3    member but an innocent civilian who - civilian
4    who has been accurately portrayed as an innocent
5    bystander.   A man who was attending a baptismal
6    party while on leave from the US military.   And
7    it's - it's disgraceful that Mr. Chavez has
8    weaved all these facts and manipulated all these
9    facts over all these years to get to a point, to
10   actually cause - perhaps to invite some sympathy
11   and some sense of maybe he is getting closer and
12   maybe he is ready.   I would also urge this Panel
13   to discount - to the extent that the
14   psychological evaluations that have been
15   performed over the last few years have been
16   favorable and have been based partially on his
17   contrition on the remorse on statements like Mr.
18   Chavez has accepted responsibility to the crime.
19   The conclusions in those reports are flawed
20   because they accept their partial-based on the
21   fictitious story that he has been selling for so
22   many years now.   There - it's hard to accept
23   that there has been as much growth and as much
24   acceptance and as much remorse when you  know
25   that the true state of affairs is substantially
26   different from what Mr. Chavez has been saying.
27   And this was, in fact, a cold-blooded killing by

107

1   a gang member who needed no motive and has since

2   been manipulated.  I urged this Panel not to

3   accept the story that has been recounted over

4   and over again simply because it has and I do

5   oppose a finding of suitability on behalf of the

6   District Attorney.  Thank you.

7        **PRESIDING COMMISSIONER JULIEN:**   Okay,

8   thank you.  Ms. Christensen?

9        **ATTORNEY CHRISTENSEN:**   Mr. Chavez has

10  been getting one year denials.  He hopes that

11  this will be his year to be paroled.  He's done

12  an exemplary job in prison.  He has a - he has

13  complied with all of the Board's recommendations

14  to improve himself in every possible area that

15  the Board looks at.  And regardless of what

16  happened that day the question before this Board

17  in determining suitability, the ultimate

18  question, is is he going to pose any degree of

19  threat to society if he is to be released.  And

20  the answer to that question is no. Mr. Chavez is

21  not going to involve himself in any gang

22  activities.  He's not going to pick up a gun.

23  He is no longer going oriented in that way.  He

24  has matured and grown and developed himself such

25  that he now has very pro-social goals and he

26  would be successful on parole because of

27  numerous self-help groups he's involved himself

108

1   in over the years.  A lot of marketable skills
2   that he has developed.  All of his vocations.
3   He is extremely remorseful for this crime.  And
4   - and he has - he has shown that he's not the
5   same person he was when he came into prison.
6   He's seized upon every opportunity to improve
7   himself.  And he is rehabilitated.  His family
8   support is excellent.  He's got three different
9   residence offers.  The one that he would be most
10  likely to accept would be with his mother and
11  his stepfather who is a retired detective
12  with the Los Angeles Police Department.  That
13  would certainly be a positive influence.  His
14  wife loves him and has stood by him.  She's
15  moved here to be close to him and she's willing
16  to move to wherever he needs to parole to.  And
17  he's also close to his family.  So he has all
18  the support in the world out there to help him
19  to stay on the straight and narrow but he has
20  inner controls to do that, too.  He is not prone
21  to violence.  He has no violence since he has
22  been in prison.  His 115's did not involve
23  anything like that.  So he's shown that he can
24  conform to the rules and regulations of society.
25  He does not react in anger today.  He thinks.
26  He's developed skills, coping skills, to enable
27  him to do very well out in society and he

109

1   believes that he should be given a chance and

2   asks for that chance today.  Thank you.

3           **PRESIDING COMMISSIONER JULIEN:**   Okay,

4   thank you.  And Mr. Chavez, do you have a

5   statement regarding your parole suitability?

6           **INMATE CHAVEZ:**  Well, I would just like

7   to - to say something.  I understand his

8   reluctance and I - you shouldn't live by any

9   gang members though.  That's true.  You know.

10  I'm all for that also.  And I would not ask for

11  your sympathy.  I don't want your sympathy.  I

12  don't deserve it.  If you - you decide to give

13  me a parole date because you think I - I could -

14  I'm ready, you know, it's your decision.  I, you

15  know, it's not because of sympathy.  But also to

16  say I can manipulate so many professionals like

17  that, that - that's - that's not saying -

18  speaking very highly of the professionals that

19  this state hires to evaluate us.  And I just

20  want to say that no matter what I say or can do

21  from now on, I could be a doctor in here, it's

22  not going to change the fact that - what

23  happened.  I can't change that.  There's no way

24  to change that.  So I would ask that you base

25  your opinion on - on, you know, my performance

26  now, you know.  I am not a gang member any

27  longer but I understand cause it's bad down

110

1    there how we think and I'm sorry that he views

2    me that way but – it is understandable but it is

3    not – I – I'm not manipulating you or anyone

4    else.  I have never changed my story.  Never.

5    He said to look in (indiscernible) but I never –

6    I didn't see it, you know.  But that's all.

7    Thank – thank you.

8         **PRESIDING COMMISSIONER JULIEN:**  Okay.

9    Thank you, sir.  We will recess now for

10   deliberations.

11                    **R E C E S S**

12                     --oOo—

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

111

1    **CALIFORNIA BOARD OF PAROLE HEARINGS**

2              **D E C I S I O N**

3        **DEPUTY COMMISSIONER KEENAN:** Back on

4    record.

5        **PRESIDING COMMISSIONER JULIEN:** Okay, our

6    parties have returned to the room in the hearing

7    for Santos Chavez. And Mr. Chavez, we are going

8    to deny parole today. We're going to deny

9    parole for a year. I'll make some comments and

10   then read the decision. You know, we were very

11   favorably impressed with you. Your programming

12   is great. It's just we have - we're left with a

13   lot of unanswered questions. And whenever we

14   are in that type of a situation we have to err

15   on the side of caution. And we want to - we're

16   going to ask you to address a few things that

17   were brought up and my colleague is going to

18   speak more on that but let me go ahead and read

19   the decision. Okay?

20        **INMATE CHAVEZ:** Uh-huh.

21        **PRESIDING COMMISSIONER JULIEN:** The

22   Panel has reviewed all the information received

23   from the public in relying on the following

24   circumstances in concluding that the inmate is

25   not yet suitable for parole and would pose an

26   unreasonable risk of danger to society or threat

27   **SANTOS CHAVEZ C-87968 DECISION PAGE 1 2/9/06**

112

1    to public safety if released from prison.  As it
2    regards the criminal offense, multiple victims
3    were involved in this crime.  And the crime took
4    place on July 24, 1982, at an address in Los
5    Angeles.  And there was one victim who was
6    murdered and that was Ronald Rivas age 20 and
7    shots were fired and two other victims were
8    injured and that is - were Mr. Lopez and Mr.
9    Jimenez and this was with a .22 caliber gun that
10   the inmate had armed himself with and used to
11   fire into a crowd.  And then Mr. Rivas, as
12   mentioned earlier, was murdered and the two
13   other victims injured.  And as was discussed in
14   your last hearing and I'm sure we touched a
15   little bit on it today there was a gathering of
16   many people.  Many individuals at that house and
17   where all those shots being fired who else knows
18   what could've happened; who else could've been
19   injured.  Luckily it was - there weren't more
20   casualties.  And this goes to the point that the
21   offense is carried out in a manner which
22   demonstrates an exceptionally callous disregard
23   for human suffering.  And the impetus for the
24   crime was the inmate's wife at the time, Donna,
25   had encountered some individuals from the
26   Cypress Park gang at a grocery store.  They
27   **SANTOS CHAVEZ C-87968 DECISION PAGE 2 2/9/06**

113

1   threatened her and she, in turn, told the
2   inmate, her husband, who got upset over this and
3   decided to basically take the matters into his
4   own hands and discourage the gang members from
5   that type of activity and he ended up shooting
6   one and wounding two others.    In terms of a
7   prior record, the inmate has a juvenile arrest
8   for carrying a concealed weapon and no other
9   arrests or convictions that we see.    And in
10  terms of your institutional behavior, you do
11  have an excellent record, as I mentioned, of
12  programming.    You do seem to have participated
13  in as many self-help and therapy programs as we
14  could've asked you to do.    And you do have a -
15  think it's three or four vocations.    Is it three
16  vocations?

17          **INMATE CHAVEZ:**    Really, two.

18          **PRESIDING COMMISSIONER JULIEN:**    Okay, so
19  you have programmed very well.    And in terms of
20  parole plans, you do have viable parole plans.
21  You have three offers, at least three offers, of
22  residence that we talked about today.    Any one
23  of them would be acceptable.    And you also do
24  have a job offer with your mother and stepfather
25  as well as at least two or three other people.
26  And you do have marketable skills.    And we note
27  **SANTOS CHAVEZ C-87968 DECISION PAGE 3 2/9/06**

114

1    that in response to 3042 notices, opposition to
2    finding of parole suitability, has been
3    expressed by the District Attorney of Los
4    Angeles County.  And so here's our
5    recommendations, basically, and then
6    Commissioner Keenan will also give you some
7    commendations.  You know, it's really hard to
8    figure out exactly what happened.  Okay, so we
9    kind of went around and around with this and
10   then when it was the DA's turn to ask you
11   questions and to speak I think even more
12   questions were raised on our part.  During the
13   break we went through a lot of material, the
14   prior transcripts, C-File, everything, and tried
15   as best as we could to determine if, in fact,
16   you were twisting and turning in terms of your
17   version and that type of thing.  And we found
18   that your - your version of the crime has been
19   relatively consistent through the years.
20   There's the first police statement that my
21   colleague wants to ask you about and then I -
22   I'm particularly interested in Mr. Rivas and
23   in terms of, you know, did you know was he, in
24   fact, a gang member or was he just an innocent
25   bystander.  Because in going back over the
26   transcripts we see an innocent bystander up
27   **SANTOS CHAVEZ C-87968 DECISION PAGE 4 2/9/06**

115

1   until today.  So we're going to give you some

2   assignments.  Hopefully, you'll be able to – I

3   don't know what records you have, you know, but

4   I think you're going to need, once you get these

5   transcripts, you're going to need to go through

6   them very careful – very carefully and the

7   issues that the DA raised I think next year be

8   prepared to answer them.  At this point in time

9   this is what's holding you back, okay, from a

10  date.  As I said in the decision your

11  programming is good.  I don't like those 128's

12  at all.  We don't use 128's in determining

13  suitability but they don't look good.  But they

14  can be overcome.  You have three 115's.  Of

15  course, don't get any more.  But, in my opinion

16  at least, the lingering questions that we are

17  unable to answer today are – about the

18  commitment offense are primarily I think what is

19  standing in your way.  And I think you're going

20  to have to resolve them for any panel.  So,

21  therefore, I would encourage you to figure

22  Out what happened.  Even if you have to write

23  out a timeline.  What happened that night.  And

24  all the different guns and the different, you

25  know.  So – cause some times it's not enough to

26  say well, you know, that wasn't this case and

27  **SANTOS CHAVEZ C-87968 DECISION PAGE 5 2/9/06**

116

1    that fell apart and the police brought the gun

2    and, you know, all of this is - it'd be - it all

3    becomes very confusing.  After a certain point

4    it's like what the heck happened, you know?  And

5    until we're a 100%, you know, with the parole

6    suitability here and we have to be 100% sure.

7    We can't have, you know, lingering doubts.

8    Okay?  So Commissioner Keenan, I think you have

9    some more specific things you were going to

10   address as well as the commendations.

11         **DEPUTY COMMISSIONER KEENAN:**  Well, I

12   don't know how specific they were.

13         **PRESIDING COMMISSIONER JULIEN:**  Well,

14   the police -

15         **DEPUTY COMMISSIONER KEENAN:**

16   (Indiscernible) -

17         **PRESIDING COMMISSIONER JULIEN:**  - the

18   police report.

19         **DEPUTY COMMISSIONER KEENAN:**  Okay.

20         **PRESIDING COMMISSIONER JULIEN:**  That -

21   the statement from the police report.

22         **DEPUTY COMMISSIONER KEENAN:**  Okay.  And

23   I'll -

24         **PRESIDING COMMISSIONER JULIEN:**  Oh, did

25   you mark it?  Maybe you didn't mark it.

26         **DEPUTY COMMISSIONER KEENAN:**  Well,

27   **SANTOS CHAVEZ C-87968 DECISION PAGE 6 2/9/06**

117

1  (indiscernible) it.  But I - I - I don't need
2  that.

3        **PRESIDING COMMISSIONER JULIEN:**  Okay.
4        **DEPUTY COMMISSIONER KEENAN:**  But I'll go
5  over the commendations first.  Okay, first of
6  all, you're commended for the two vocations,
7  auto - auto mechanics and welding.  And you have
8  skills you've developed also in lab tech dental,
9  and textiles.  And you're in NA, AA over a long
10 stretch of time, most recently as stated in
11 Change Project or Project Change and Impact
12 self-help program.  Get your GED.  But you did
13 that some time ago.  You've also been involved
14 in life skills group.  And, actually, getting to
15 something more recent, you mentioned
16 (indiscernible) from Dr. - not Dr., Charlie
17 Walker, indicating your participation in three
18 hours of video review and dialogue
19 (indiscernible) and anger management.  And see
20 you have three hours of the - successfully
21 (indiscernible) in - into society.  And so
22 you're to being commended for that and also just
23 to follow-up on your earlier comments by
24 Commissioner St. Julien the District Attorney's
25 representative has pointed out various
26 inconsistencies, you know, and he thinks that
27 **SANTOS CHAVEZ C-87968 DECISION PAGE 7 2/9/06**

118

1   speaks to your credibility and whether or not
2   you're, you know, honest and trustworthy or not.
3   And - and the view on that is that if you're not
4   (indiscernible) remorse, etcetera, that weighs
5   in on the - it sort of takes away from the fav -
6   favorable (indiscernible) being offered by the
7   psychologist.  All right?  If the information is
8   trustworthy or maybe his opinion isn't all that
9   solid when he's saying favorable things about
10  you.  And, you know, I - I'm not going to go
11  over the whole list of inconsistencies
12  (indiscernible) Commissioner St. Julien made
13  reference to a police report telling us,
14  basically, you know, that you indicated that
15  well, I haven't seen it here today, you know.
16  Didn't have a chance to look at it and
17  (indiscernible) but you didn't read - you said
18  you didn't make that statement to the police
19  (indiscernible).  And, at any rate, that's just
20  another one of the issues that the District
21  Attorney's representative pointed to.  I would
22  suggest that you go back to your transcript of
23  his comments and look at it very carefully and
24  review the report, review his statements and be
25  ready to answer those questions because I saw
26  that that came up at your hearing or two ago.
27  **SANTOS CHAVEZ C-87968 DECISION PAGE 8 2/9/06**

119

1   Saw that talk about inconsistencies.  Think you

2   need to be able to speak to those issues at the

3   next hearing.  And, I mean, I felt that there

4   were a lot of positives about you but, you know,

5   the inconsistencies are an issue in

6   (indiscernible) and, you know, it's an issue

7   here today.  You need to look at those and have

8   a thoughtful, honest response to them, you know.

9   And it's important to have the facts but equally

10  important I think, from my perspective anyway,

11  is to make sure (indiscernible) think he's

12  telling me truth.  And I'm not saying you're

13  not.  I mean, I just - a lot of sort of

14  unanswered questions I think that think you

15  should probably review this and be able to speak

16  to those.  And that's it.

17       **PRESIDING COMMISSIONER JULIEN:**  And I

18  think this was where it says I - it begins on -

19  on a Saturday night.  I was home watching TV.  I

20  guess that I don't know - cause it's a

21  completely different story so I don't know if it

22  was this night of the crime or not because -

23       **INMATE CHAVEZ:**  When was that made?

24       **PRESIDING COMMISSIONER JULIEN:**  It's -

25  is that your file?  Are you -

26       **ATTORNEY CHRISTENSEN:**  Yes.

27  **SANTOS CHAVEZ C-87968 DECISION PAGE 9 2/9/06**

120

1      **PRESIDING COMMISSIONER JULIEN:**  - going
2  to give him -

3      **ATTORNEY CHRISTENSEN:**  I gave him -
4      **PRESIDING COMMISSIONER JULIEN:**  - the
5  file - the file to (indiscernible).  Well, you
6  saw it.  It's where they were interviewing and
7  it's like a completely different story.

8      **INMATE CHAVEZ:**  I'd just like to - to
9  know what was dated on -

10      **PRESIDING COMMISSIONER JULIEN:**  It
11  doesn't have it here.

12      **DEPUTY COMMISSIONER KEENAN:**  No, August -
13  the date of the arrest, August the 2nd.

14      **PRESIDING COMMISSIONER JULIEN:**  Oh.

15      **INMATE CHAVEZ:**  Cause I was arrested -

16      **DEPUTY COMMISSIONER KEENAN:**  - 1982.
17  Why he - because of that - and all that it was
18  dismissed for the (indiscernible).

19      **PRESIDING COMMISSIONER JULIEN:**  This is
20  the one - the statement that was one week after
21  the (indiscernible).

22      **DEPUTY COMMISSIONER KEENAN:**  The date of
23  the arrest was one week after the murder.

24      **PRESIDING COMMISSIONER JULIEN:**  It's in
25  here.  So you have the whole file now to review
26  and -

27  **SANTOS CHAVEZ C-87968 DECISION PAGE 10 2/9/06**

121

1       **INMATE CHAVEZ:**  Okay.

2       **PRESIDING COMMISSIONER JULIEN:**  - keep.

3   So write it down.  You know, write down the

4   play-by-play of what -

5       **INMATE CHAVEZ:**  Okay.

6       **PRESIDING COMMISSIONER JULIEN:**  -

7   happened and what you've said throughout the

8   years and, you know, initially it looked like

9   you said that Santos - Cantu had done the

10  firing.

11      **INMATE CHAVEZ:**  (Indiscernible).

12      **PRESIDING COMMISSIONER JULIEN:**  So say,

13  you know, explain why you said that.  And just

14  come in and be able to address it.  Okay?  So

15  that your panel is very comfortable.

16      **INMATE CHAVEZ:**  But - okay, I will

17  address that but when someone - a person says -

18  the DA and I'm not -

19      **PRESIDING COMMISSIONER JULIEN:**  Uh-huh.

20      **INMATE CHAVEZ:**  - you know -

21      **PRESIDING COMMISSIONER JULIEN:**  Uh-huh.

22      **INMATE CHAVEZ:**  - but if he said

23  something and he has no proof of that, he has a

24  police report that was shown to you that was

25  wrong saying I had a shotgun.

26      **PRESIDING COMMISSIONER JULIEN:**  That -

27  **SANTOS CHAVEZ C-87968 DECISION PAGE 11 2/9/06**

122

1   yeah, and then you have to say -

2       **INMATE CHAVEZ:**  There - there's

3   indiscretions on that police report as it is, so

4   how - how can -

5       **PRESIDING COMMISSIONER JULIEN:**  But then

6   you have to say - you have to say, you know, I

7   know that he's saying this or whatever and I've

8   no recollection of it, it's not accurate.

9       **INMATE CHAVEZ:**  I did - I did say it was

10  not accurate.

11      **PRESIDING COMMISSIONER JULIEN:**  Yeah,

12  but - but - but we don't know that because it

13  isn't -

14      **INMATE CHAVEZ:**  Uh-huh.

15      **PRESIDING COMMISSIONER JULIEN:**  - and I -

16  we can't make out the date, whatever, so I said

17  maybe you have some files.  Maybe you have some

18  - do you have your arrest records and all that?

19      **INMATE CHAVEZ:**  Well, those are them.

20  Right.  But they're wrong and if - see, we took

21  (indiscernible) -

22      **PRESIDING COMMISSIONER JULIEN:**  But see

23  and I don't understand what's - what's wrong.

24      **INMATE CHAVEZ:**  Took a (indiscernible)

25  again and -

26      **PRESIDING COMMISSIONER JULIEN:**  Uh-huh.

27  **SANTOS CHAVEZ C-87968 DECISION PAGE 12 2/9/06**

123

1        **INMATE CHAVEZ:**  - it was dismissed and
2   they let me go and because of a lot of
3   indiscretions on the - on the police reports
4   that's why it was dismissed.  I was arrested
5   August - September 1st again so all this was
6   first arrest and it was dismissed.  But I - I
7   don't have none of - none of that on my, you
8   know, when I - when I went to - when I find my
9   case I have none of that against me or - or
10  they're using that against me at all.  Cause it
11  was dismissed.  So I would have nothing
12  concerning that.  Cause it was dated August.
13       **PRESIDING COMMISSIONER JULIEN:**   The -
14  but - but the statement was still made.
15       **INMATE CHAVEZ:**  No, that's a police
16  report it's not a statement.  That's a -
17       **PRESIDING COMMISSIONER JULIEN:**   Well, it
18  says it was a state - it says it was - it says
19  it was your statement.  It says he said -
20       **INMATE CHAVEZ:**  I would - I would figure
21  they would have my statement.
22       **PRESIDING COMMISSIONER JULIEN:**   It says
23  Chavez, you know, when the made.  And then it
24  says that you made this statement.
25       **INMATE CHAVEZ:**  Uh-huh.  Okay.
26       **PRESIDING COMMISSIONER JULIEN:**  So, you
27  **SANTOS CHAVEZ C-87968 DECISION PAGE 13 2/9/06**

124

1    know -

2         **INMATE CHAVEZ:**   I will try to get -

3         **PRESIDING COMMISSIONER JULIEN:**   - you -

4    yeah, just say you know what - you can say if

5    you don't remember making this statement say I

6    never made it or if you made it say I did make

7    this statement and this is why and it was

8    dismissed because of, you know.

9         **INMATE CHAVEZ:**   Okay.   The -

10        **PRESIDING COMMISSIONER JULIEN:**   And if

11   you have any -

12        **DEPUTY DISTRICT ATTORNEY YGLECIAS:**   The

13   procedural history isn't - I think Mr. Chavez is

14   using the wrong term.   What - what happened was

15   the case was originally presented to the DA's

16   office for filing.   The DA that reviewed the

17   case did not feel that the case was yet ready

18   for filing.   He wanted further investigation,

19   further supplemental interviews and reports.

20   That's when Mr. Chavez was released.

21   (Indiscernible) the case not filed.   It wasn't -

22   and it was filed eventually after the

23   supplemental investigation occurred.   So using

24   the term dismissal is somewhat misleading.   It

25   was never filed and that's why he was originally

26   released but that has nothing to do with the

27   **SANTOS CHAVEZ C-87968 DECISION PAGE 14 2/9/06**

125

1   accuracy of the report.  They just needed more
2   information.

3       **PRESIDING COMMISSIONER JULIEN:**  Okay, so
4   yeah - cause in the event - in any event, we
5   have this paper in front of us.  We have this
6   statement.

7       **INMATE CHAVEZ:**  Okay.

8       **PRESIDING COMMISSIONER JULIEN:**  That is
9   completely contradictory to what you later said.
10  And you know what, you know, you just have to
11  explain it.

12      **INMATE CHAVEZ:**  Okay.

13      **PRESIDING COMMISSIONER JULIEN:**  Okay?
14  So that we don't feel that we don't know the
15  full story.  Okay?  Okay, we will adjourn and
16  it's 12:15 p.m.

17      **INMATE CHAVEZ:**  Thank you.

18      **PRESIDING COMMISSIONER JULIEN:**  Okay,
19  thank you, sir.

20      **DEPUTY COMMISSIONER KEENAN:**  Good luck.

21      **PRESIDING COMMISSIONER JULIEN:**  Think he
22  might need some -

23      **DEPUTY COMMISSIONER KEENAN:**
24  (Indiscernible)?

25      **PRESIDING COMMISSIONER JULIEN:**  Oh, I'm
26  sorry.

27  **SANTOS CHAVEZ C-87968 DECISION PAGE 15 2/9/06**

126

1        **ATTORNEY CHRISTENSEN:**   Okay.   I'm going

2    to say good-bye.

3        **PRESIDING COMMISSIONER JULIEN:**   Okay,

4    thank you.   Good luck.   Okay, bye Candace.

5        **DEPUTY COMMISSIONER KEENAN:**

6    (Indiscernible) –

7        **PRESIDING COMMISSIONER JULIEN:**   See you

8    later.

9        **ATTORNEY CHRISTENSEN:**   Bye.   Okay.

10       **DEPUTY COMMISSIONER KEENAN:**   Good-bye.

11                      **--oOo–**

12

13

14

15

16

17

18

19

20

21

22

23   **PAROLE DENIED ONE YEAR**            **JUN   9 2006**

24   **THIS DECISION WILL BE FINAL ON:**_____

25   **YOU WILL BE PROMPTLY NOTIFIED, IF PRIOR TO THAT**

26   **DATE, THE DECISION IS MODIFIED.**

27   **SANTOS CHAVEZ C-87968 DECISION PAGE 16 2/9/06**

127

## CERTIFICATE AND
## DECLARATION OF TRANSCRIBER

I, TRACY RICHARDSON, a duly designated transcriber, PETERS SHORTHAND REPORTING, do hereby declare and certify under penalty of perjury that I have transcribed tape(s) which total one in number and cover a total of pages numbered 1 - 126, and which recording was duly recorded at CORRECTIONAL TRAINING FACILITY IN SOLEDAD, CALIFORNIA, in the matter of the SUBSEQUENT PAROLE CONSIDERATION HEARING OF SANTOS CHAVEZ, CDC NO. C-87968, ON FEBRUARY 9, 2006, and that the foregoing pages constitute a true, complete, and accurate transcription of the aforementioned tape to the best of my ability.

I hereby certify that I am a disinterested party in the above-mentioned matter and have no interest in the outcome of the hearing.

Dated FEBRUARY 27, 2006, at Sacramento, California.

TRACY RICHARDSON
TRANSCRIBER
**PETERS SHORTHAND REPORTING**