EXH D

**SECTION    1**

48

1      CALIFORNIA BOARD OF PRISON TERMS

2              D E C I S I O N

3          DEPUTY COMMISSIONER HARMON:  You're on

4      record.

5          ATTORNEY TARDIFF:  (inaudible) let Mr.

6      Carbaugh come in.

7          PRESIDING COMMISSIONER FISHER:  Yeah, I

8      guess we might want to let -- Yeah.

9          DEPUTY COMMISSIONER HARMON:  Yeah.

10             [Off the record.]

11         DEPUTY COMMISSIONER HARMON:  You're on

12     record.

13         PRESIDING COMMISSIONER FISHER:  All right,

14     thank you.  I'm going to note for the record that

15     everyone who was previously in the room and

16     identified themselves have returned to the room.

17     Mr. Chavez, the Panel reviewed all information

18     received from the Public and relied on the

19     following circumstances in concluding that you're

20     not yet suitable for parole and would pose an

21     unreasonable risk of danger to society or a threat

22     to public safety if released from prison.  This is

23     a one year denial.  And the primary reason was the

24     commitment offense.  This was an offense that was

25     very callous.  There were multiple victims who were

26     attacked.  Two of them were injured.  One of them

27     SANTOS CHAVEZ   C-37935   DECISION PAGE 1   7/28/04

1    was killed.  The one who was killed in particular

2    happened to be an innocent bystander, who was a

3    Marine who happened to be on leave and had a wife

4    and child whom he left behind.  This was a very

5    calculated offense.  It was a situation where he

6    actually went out looking for people after getting

7    upset about, apparently, someone trying to take

8    your wife's car.  Or it had to do with your wife

9    and her car and they frightened her and made some

10   threats to her.  And so you decided to settle it

11   and went armed with your crime partner and two

12   weapons.  And as a result, two people were injured

13   and an innocent man was killed.  And this victim

14   was only 20 years old.  The motive for this crime

15   was very trivial in relation to this offense and

16   certainly in relation to the outcome of the

17   offense.  You have, however, programmed very well

18·  and I want to note that while you've had 17 128A

19   counseling chronos, the last one was in January of

20   2000.  And you have had three 115s, but the last

21   one was several years ago and (inaudible).

22         ATTORNEY TARDIFF:  '95.

23         PRESIDING COMMISSIONER FISHER:  '95, thank

24   you.  You do have good parole plans.  I want to

25   note that in response to 3042 notices, the District

26   Attorney of Los Angeles County appeared today in

27   SANTOS CHAVEZ   C-87963   DECISION PAGE 2   7/29/04

 1    opposition to a finding' of suitability at this
 2    time.  We do want to commend you for remaining
 3    disciplinary free since 1995 and for completing the
 4    two vocations that you have, auto mechanics and
 5    welding, and also for getting your GED.  However,
 6    currently the positive aspects of behavior do not
 7    outweigh the factors of unsuitability.  We
 8    recommend that you remain disciplinary free and
 9    really just continue your program.  You're doing
10    very well and I know you're disappointed, but this
11    was an awful -- This was an awful crime.

12         **INMATE CHAVEZ:**  Yes, I know.

13         **PRESIDING COMMISSIONER FISHER:**  Okay.  Thank
14    you.  Do you have any comments, Commissioner?

15         **DEPUTY COMMISSIONER HARMON:**  You are doing
16    very well, sir, and I want to leave you with that.
17    I want you to stay on the road that you're on.  And
18    just for clarification, did you indicate that there
19    were two victims or three?

20         **PRESIDING COMMISSIONER FISHER:**  Three.

21         **DEPUTY COMMISSIONER HARMON:**  Three victims.
22    Yeah, we have three victims out there that
23    sustained, you know, serious wounds, one of them
24    dying.  Just a terrible crime.  And I would suspect
25    you're going to get a date down the road.  I don't
26    know when, but everything you're doing is looking
27    SANTOS CHAVEZ    C-87968    DECISION PAGE 3    7/29/04

51

1    really good for you. So I wish you luck, sir.

2    Stay on the road you're on.    .

3        INMATE CHAVEZ: Thank you. I will.

4        PRESIDING COMMISSIONER FISHER:    That

5    concludes this hearing. It's approximately 3:15.

6                        --oOo--

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23    PAROLE DENIED ONE YEAR

24    THIS DECISION WILL BE FINAL ON: _____ 2 5

25    YOU WILL BE PROMPTLY NOTIFIED IF, PRIOR TO THAT

26    DATE, THE DECISION IS MODIFIED.

27    SANTOS CHAVEZ    C-87968    DECISION PAGE 4    7/28/04

**SECTION    2**

50

1               CALIFORNIA BOARD OF PRISON TERMS

2                     D E C I S I O N

3        DEPUTY COMMISSIONER RICARD:  You're on

4 record.

5        PRESIDING COMMISSIONER WELCH:  Okay.  The

6 Panel reviewed all information received from the

7 public and relied on the following circumstances in

8 concluding that the prisoner is not yet suitable

9 for parole and would pose an unreasonable risk of

10 danger to others.  The offense was carried out in

11 an especially uncaring manner.  Multiple victims in

12 this incident were attacked, one was killed.  The

13 offense was carried out in a manner that

14 demonstrates an insensitive feeling towards one's

15 community.  The motive for the crime was

16 inexplicable or very trivial in relationship to the

17 offense.  The conclusion was drawn from the

18 Statement of Facts wherein the prisoner, apparently

19 after becoming upset over an incident that had

20 occurred with his prior wife, ex-wife, he and his

21 crime partner drove to an area and a witness

22 approached the car.  Chavez pointed a handgun at

23 him.  Several shots was fired by both the prisoner

24 and his crime partner and an innocent bystander was

25 fatally shot, and two other victims was wounded by

26 the gunfire.  The prisoner did not have a major

27 **SANTOS CHAVEZ   C-87968   DECISION PAGE 1   3/20/03**

51

1    criminal history; however, he did have some

2    encounters with law enforcement agencies as a

3    juvenile and also the only arrest noted as an adult

4    is the present offense. So there is at least one

5    encounter and the prisoner said he was placed in

6    juvenile camp for four months, I believe he said,

7    for that. So he didn't have a major criminal

8    history. However, he did fail to profit from

9    society's previous attempts to correct his

10   criminality, and that was juvenile camp. There's

11   no reason to believe that the prisoner did not have

12   a stable social history. I didn't see anything in

13   there indicating that his history not a stable

14   social history. And after reviewing the letters

15   and the family support, one would tend to think

16   that maybe the prisoner did have a stable social

17   history, because certainly he have a lot of support

18   now. The prisoner is engaged in positive

19   vocational type of programs. However, he have not

20   completed a certificate yet of -- that I could not

21   find where prisoner have actually completed a

22   vocation. However, it's noted that he's in ongoing

23   vocational training at this time. Maybe I'm

24   mistaken. Let me just ask you. Have you completed

25   a vocational program?

26           **INMATE CHAVEZ:** Yes.

27   **SANTOS CHAVEZ    C-87968    DECISION PAGE 2    3/20/03**

52

1        **PRESIDING COMMISSIONER WELCH:**  Which one

2    did you complete?

3        **INMATE CHAVEZ:**  Auto Mechanics.

4        **PRESIDING COMMISSIONER WELCH:**  I didn't

5    find a -- my colleague couldn't find a certificate

6    in there.  Was that the Small Engine?

7        **INMATE CHAVEZ:**  No.

8        **PRESIDING COMMISSIONER WELCH:**  You didn't

9    complete that.  Where did you complete this program

10   at?

11       **INMATE CHAVEZ:**  In California Men's Colony.

12       **PRESIDING COMMISSIONER WELCH:**  Okay.  And

13   certainly I want to give you credit for that if you

14   completed it, because I see that you were also in

15   Vocational Small Engine and you were in -- what was

16   the other one --

17       **INMATE CHAVEZ:**  Welding.

18       **DEPUTY COMMISSIONER RICARD:**  Vocational

19   Welding.

20       **PRESIDING COMMISSIONER WELCH:**  Vocational

21   Welding.  And while she's looking for that, I'll

22   come back to that.  Recent psychiatric report shows

23   that the prisoner is making positive progress.  His

24   level of dangerousness in the community is reduced,

25   and I certainly feel that he's on the right track.

26   Dr. Terrini, T-E-R-R-I-N-I, indicates that the

27   **SANTOS CHAVEZ   C-87968   DECISION PAGE 3   3/20/03**

53

1    prisoner's level of dangerousness in the community

2    is estimated to be no more than the average

3    citizen.  So certainly we feel that you're on the

4    right track in that area.  The prisoner does have

5    some parole plans.  He does have some employment

6    plans.  And certainly, if you completed the

7    vocation in Automotive, then certainly we feel that

8    he's on the right track with a marketable skill.

9    The hearing Panel notes that in response to Penal

10   Code 3042 notices indicate an opposition to a

11   finding of parole suitability, that specifically

12   the Deputy District Attorney from Los Angeles spoke

13   in opposition of a finding of suitability.  The

14   Panel recommends that you continue to make the kind

15   of progress that you're making.  Your disciplinary

16   behavior have basically subsided.  You haven't had

17   any disciplinaries since, I believe, in 1995.  And

18   it appears that you're on the right track.  You

19   only had three disciplinaries total.  And we

20   encourage you to continue in self-help programs,

21   continue in vocational programs, so that when you

22   encounter -- when you encounter stressful

23   situations that you won't react in those stressful

24   situations in a destructive manner.  And I believe

25   that your dangerousness to the community is being

26   reduced, as noted in your psych report.  However,

27   **SANTOS CHAVEZ    C-87968    DECISION PAGE 4    3/20/03**

54

1    there's still some concerns by the Panel in terms

2    of your unpredictability and a threat to society.

3    However, certainly we want to commend you for your

4    disciplinary-free behavior.  We want to commend you

5    for your good work reports, and we want -- Just go

6    ahead and tell me what's in there.

7         **DEPUTY COMMISSIONER RICARD:**  Okay.  There

8    is a certificate from Automotive Services,

9    excellent automobile specialty, has successfully

10   passed the examination and that experience

11   requirement prescribed by National Institute of

12   Automotive Service.

13        **PRESIDING COMMISSIONER WELCH:**  And when was

14   that?

15        **DEPUTY COMMISSIONER RICARD:**  It's hard to

16   read.  December 1990 -- December 31st, 1990.

17        **PRESIDING COMMISSIONER WELCH:**  Okay.  Have

18   you been able to keep that updated?

19        **INMATE CHAVEZ:**  Yes, I am --

20        **PRESIDING COMMISSIONER WELCH:**  Okay.

21        **INMATE CHAVEZ:**  -- (indiscernible).

22        **PRESIDING COMMISSIONER WELCH:**  They require

23   you to be certified how often?

24        **INMATE CHAVEZ:**  Well, every five, six

25   years.

26        **PRESIDING COMMISSIONER WELCH:**  Okay.  So

27   **SANTOS CHAVEZ   C-87968   DECISION PAGE 5   3/20/03**

55

1    are you currently up to snuff on that?  Do you have

2    a current certification?

3              **INMATE CHAVEZ:**  No, I don't.

4              **PRESIDING COMMISSIONER WELCH:**  Okay.  You

5    should try to do that, but certainly that's a good

6    -- that's a good vocation and we missed that and we

7    want to give you credit for that.  So you certainly

8    have a good vocation.  We want to commend you for

9    completing that.  And the way things are going,

10   you'll have three vocations, you know, before long.

11   And certainly it shows that you're making good

12   progress and we feel comfortable that you are

13   making good progress.  However, at this time those

14   positive aspects does not outweigh the factors of

15   unsuitability.  Your parole is going to be denied

16   for one year.  In that one year, sir, we certainly

17   recommend that you continue to remain disciplinary-

18   free, continue to put some distance behind that

19   1995 disciplinary that you received -- not even a

20   128.  As a person that's getting close to a parole

21   date, we certainly recommend that you don't even

22   get a 128 because these decisions are scrutinized

23   very closely.  And I tell you this because I feel

24   that in the not-too-distant future if you keep

25   working the way that you are, that you will be

26   found suitable for parole, and you stay on the

27   **SANTOS CHAVEZ    C-87968    DECISION PAGE 6    3/20/03**

56

1    right track and you keep that family support that

2    you have out there, good family support.  And that

3    concludes my comments.  Do you have any comments,

4    Commissioner?

5        DEPUTY COMMISSIONER RICARD:  No.  Good luck

6    to you and continue the good work you're doing.

7        INMATE CHAVEZ:  Thank you.

8    (Indiscernible).

9        PRESIDING COMMISSIONER WELCH:  You take

10   care.

11·      INMATE CHAVEZ:  You, too.

12       PRESIDING COMMISSIONER WELCH:  Good seeing

13   you.  Bye-bye.

14                    --oOo--

15

16

17

18

19

20

21

22

23

24

25   PAROLE DENIED ONE YEAR

26   FINAL DATE OF DECISION _____ JUN 1 8 2003 _____

27   SANTOS CHAVEZ    C-87968    DECISION PAGE 7    3/20/03

**SECTION    3**

60

1            CALIFORNIA BOARD OF PRISON TERMS

2                    D E C I S I O N

3        DEPUTY COMMISSIONER LOPEZ:  We're on record.

4        PRESIDING COMMISSIONER WELCH:  Okay, we're back on

5    record.  The Panel reviewed all information received from

6    the public and relied on the following circumstances in

7    concluding that the prisoner is not suitable for parole

8    and would pose an unreasonable risk of danger to society

9    or a threat to the public safety if released from prison.

10   The reasons are the commitment offense was carried out in

11   an especially cruel and callous manner.  The offense was

12   carried out in a manner that demonstrates a callous

13   disregard for human suffering.  The conclusion was drawn

14   from the Statement of Facts wherein the prisoner fired

15   several shots by both he and his crime partner Cantu at

16   rival gang members in the street.  As a result Rivas, an

17   innocent bystander, was fatally shot and two other victims

18   from the Cypress Park gang members were wounded by

19   gunfire.  The cause of death to Rivas was a gunshot wound

20   to the head.  The prisoner has on previous occasion

21   inflicted or attempted to inflict serious injury on a

22   victim.

23       ATTORNEY CHAMPLIN:  I object to that.  I don't

24   know where that's coming from.

25       PRESIDING COMMISSIONER WELCH:  I'll recant that.

26   The prisoner's unsuitable social history and prior

27   **SANTOS CHAVEZ**   C-87968  DECISION PAGE 1      3/07/01

1    criminality includes a juvenile record that has been

2    sealed and the instant offense for an adult commitment.

3    The prisoner has not sufficiently participated or

4    benefited from self-help or therapy programs.  The

5    prisoner failed to demonstrate evidence of positive change

6    and misconduct while incarcerated includes 128As,

7    counseling chronos, one dated -- one in 2000 for conduct

8    unbecoming in the visiting room, one in 1998 for not

9    adhering to grooming standards, another one in 1999 for

10   conduct, another one in 1999 for disobeying orders and

11   another one in 2000 for conduct, refusing to take a TABE

12   test.  The hearing Panel notes that responses to PC 3042

13   notices indicate opposition to a finding of suitability.

14   Specifically the District Attorney from Los Angeles County

15   objects to subject's parole.  The Panel makes the

16   following findings:  The prisoner needs therapy in order

17   to face, discuss, understand and cope with stress in a

18   non-destructive manner.  Unless progress is made the

19   prisoner continues to be an unpredictable threat to

20   others.  Nevertheless the prisoner should be commended for

21   not receiving any CDC 115s, for being enrolled in a

22   vocational welding program, for being enrolled in a small

23   engine vocational program until that program was

24   discontinued at no fault of the prisoner's.  Parole is

25   denied for two years.  The prisoner committed the offense

26   in an especially cruel manner.  Specifically several

27   **SANTOS CHAVEZ   C-87968   DECISION PAGE 2      3/07/01**

1    shots was fired by both Chavez and Cantu at rival gang

2    members in the street.  As a result Rivas, innocent

3    bystander, was fatally shot and two other victims of the

4    Cypress Park gang were also wounded by the gunfire.  The

5    cause of death to Rivas was a gunshot wound to the head.

6    Multi victims were attacked, injured and one individual

7    was killed during this incident.  The offense was carried

8    out in a manner which demonstrates a callous disregard for

9    human suffering.  The motive for the crime was

10   inexcusable, very trivial in relationship to the offense,

11   very trivial in relation to the offense.

12        **INMATE CHAVEZ:**  You call that trivial?

13        **PRESIDING COMMISSIONER WELCH:**  The prisoner has

14   not completed necessary programming which is essential to

15   his adjustment and needs additional time to gain such

16   programming and if possible fully participate in self-help

17   programs.  The Panel recommends that the prisoner become

18   totally disciplinary-free including 128s and remain

19   disciplinary-free, if available participate in self-help

20   programs and therapy programs.  The Panel also recommends

21   to you, Mr. Chavez, that your actions need to be

22   believable.  You need to be able to take responsibility

23   for your actions.  I personally as a Panel member did not

24   believe your accountability for the 128s that you

25   received.  It was my perception that you did not take full

26   responsibility for your actions.  I think you need to get

27   **SANTOS CHAVEZ    C-87968   DECISION PAGE 3        3/07/01**

63

1    involved in programs so that you take full responsibility

2    for your actions. You cannot blame the prison system, the

3    officers, the teachers and other folks for your actions.

4    It's you that must remain disciplinary-free, not the

5    prison. The prisoners do not run the prison. The

6    officers and other folks run the prison, the authority.

7    Other Panel members, do you have anything else to say?

8            COMMISSIONER BORDONARO: No comment.

9            DEPUTY COMMISSIONER LOPEZ: Nothing.

10           COMMISSIONER BORDONARO: The time is 4:30.

11           PRESIDING COMMISSIONER WELCH: The time is 4:30.

12                         --oOo--

13

14

15

16

17

18

19

20

21

22

23

24

25   PAROLE DENIED TWO YEARS
                                    MAR 2 8 2001
26   EFFECTIVE DATE OF THIS DECISION_____

27   SANTOS CHAVEZ   C-87968  DECISION PAGE 4     3/07/01

**SECTION    4**

41

1       CALIFORNIA BOARD OF PRISON TERMS

2                D E C I S I O N

3           PRESIDING COMMISSIONER GUADERRAMA:  Okay, we're

4       back on record at 15 minutes after 10:00 a.m. and all

5       those who were present before the break are back in.

6       Mr. Chavez, we have a unanimous decision.  The Panel

7       reviewed all the information received from the public

8       and relied on the following circumstances in

9       concluding that you are not suitable for parole, that

10      your release would pose an unreasonable risk of danger

11      to society and a threat to public safety if you were

12      to be released from prison.  The commitment offense

13      was carried out in a manner which exhibits a callous

14      disregard for the life and suffering of another.  The

15      offense was carried out in a dispassionate and

16      calculated manner.  Multiple victims were attacked,

17      injured and/or killed in the same incident.  These

18      conclusions are drawn from the Statement of Facts

19      where you and your crime partner went to a location

20      where the young men were standing around and you

21      started shooting and by your own account, you fired

22      about ten shots and you ended up killing one young man

23      and seriously wounding two others.  Previous history:

24      You have an escalating pattern of criminal conduct, a

25      persistent pattern of tumultuous relationships and

26      criminal behavior which commenced at an early age, you

27      SANTOS CHAVEZ      C-87968    DECISION PAGE 1    05/19/98

1  have an unstable social history.  You've failed to
2  profit from society's previous attempts to correct
3  your criminality.  Such attempts include juvenile
4  probation, you ended up going to juvenile camp, you
5  denied some of the crime that you committed and
6  there's carrying a concealed weapon.  And you dropped
7  out of school and you were involved with gangs, and
8  you were up to a lot of mischief.  Institutional
9  behavior:  You have programmed in a limited manner
10 while incarcerated.  You have not sufficiently
11 participated in beneficial self-help and therapy
12 programming.  Misconduct while incarcerated include
13 three CDC 115s, the last one was on September 16th,
14 1995.  The Panel makes the following findings:  That
15 you need therapy in order to face, discuss, understand
16 and cope with stress in a non-destructive manner.
17 Until additional progress is made, you continue to be
18 unpredictable and a threat to others.  Your gains are
19 recent, you must demonstrate an ability to maintain
20 gains over an extended period of time.  In view of
21 your assaultive history and lack of adequate program
22 participation, there is no indication that you would
23 behave differently if paroled.  You are to be
24 commended for being disciplinary-free since 1995 and
25 also for earning good work evaluations.  However,
26 these positive aspects of your behavior do not
27 **SANTOS CHAVEZ      C-87968    DECISION PAGE 2    05/19/98**

43

1    outweigh the factors of unsuitability.  Mr. Chavez,

2    you are being parole for two years.  The hearing Panel

3    finds that it is not reasonable that a parole be

4    granted during the following two years.  The specific

5    reasons for this finding are as follows:  One, you

6    committed the offense.  Specifically, you were seeking

7    apparent revenge for an incident involving your wife.

8    You went out and found these young men standing on the

9    street, you ended up shooting about ten shots.  You

10   ended up killing one man and wounding two others.  The

11   second reason is that you have a longer period of time

12   is required to evaluate your suitability in view of

13   your history of criminality and misconduct including

14   your involvement, heavily involved in gangs, and also

15   for having been carrying, having a serious record of

16   carrying a guns and twice you were sent to camp

17   because of that.  The third reason is that have not

18   completed the necessary programming which is essential

19   to your adjustment and you need additional time to

20   gain such programming.  You need to involve yourself

21   in some self-help and I've read from these transcripts

22   it indicates that you have been encouraged to get

23   really involved in some of the programs that could

24   give you a better handle on some of the problems that

25   you have and your teenage years and also the things

26   that brought you to prison.  You need a better handle

27   **SANTOS CHAVEZ    C-87968    DECISION PAGE 3    05/19/98**

1  on it.   The Panel recommends that you remain

2  disciplinary-free and that you participate in self-

3  help and therapy programming.   That's the official

4  decision.   I'm going to encourage you to really read

5  the transcripts like I have, and you'll the ways you

6  have told different stories and we're not sure what

7  the truth is, at least from your point of view.   And

8  we want to review the District Attorney's records and

9  she's going to send us the police reports and we'll

10  have those on hand for the next time that you come in.

11  So I hope you read the transcripts and really get your

12  story straight, whatever it is, and be as truthful as

13  you can when you come in here.   It's the only way

14  you're going to help yourself, okay?   All right.

15  Here's a copy of the decision.   We're going to see you

16  in two years.   I want to wish you well.   And that ends

17  the hearing at 20 minutes after ten.   Good luck to

18  you.

19                          --o0o--

20

21

22

23

24

25  PAROLE DENIED TWO YEARS

26  EFFECTIVE DATE OF THIS DECISION    JUN 1 7 1998

27  SANTOS CHAVEZ      C-87968     DECISION PAGE 4      05/19/98

**SECTION   5**

1    CALIFORNIA BOARD OF PRISON TERMS

2    D E C I S I O N

3    **PRESIDING COMMISSIONER KOENIG:**    Okay.    We

4    reconvene the panel hearing on Santos Chavez.    All

5    participants are present who were present prior to the

6    recess.    The panel unanimously finds the prisoner

7    unsuitable for parole.    We do feel you'd pose an

8    unreasonable risk of danger to society if released at

9    this time.    The first reason is the violent crime that

10    the prisoner committed.    It's a crime where the

11    prisoner in the retaliation against three victims, who

12    he thought had harassed his wife, drove to the

13    location of the victims, fired at the victims killing

14    one victim and seriously injuring the other two.    The

15    prisoner then left the scene.    It is noted that the --

16    the second reason is his prior social factors.    He was

17    involved in curfew violations, quitting school in the

18    10th grade, became gang involved and was gang involved

19    for approximately four years prior to the instant

20    offense.    Society's previous attempts to correct his

21    criminality consisted of boy's camp and probation.

22    Boy's camp was for carrying a concealed weapon.    The

23    second -- the third reason is lack of sufficient

24    programming.    It is noted that he did complete auto

25    mechanics.    We commend him for that, also for being

26    generally disciplinary free except for one

27    **SANTOS CHAVEZ    C-87968    DECISION PAGE 1    5/21/96**

47

1    administrative 115.  We notice his class score is

2    zero.  He has completed his GED, and we commend him

3    for that also.  He participated to a degree in AA but

4    not to a great extent.  He did participate in Life

5    Skills with Dr. Bakeman, which is a 10-week program.

6    And by that, he got something out of that particular

7    area.  In the work area, he is a leadman in textiles.

8    And we see counseling chronos for his good work in

9    that particular area and commend him for that.  The

10   psych report by Bakeman is not totally supportive of

11   release.  If you read Dr. Bakeman's report it states

12   that -- the doctor states that the prisoner does

13   appear to be showing improvement in his behavior and

14   would probably not react to such an impulsive way

15   today.  But in reading the report I get a hesitancy in

16   his report that the prisoner is ready to return to

17·  society.  And, in fact, that he must gain further

18   training in vocation and continue his present

19   programming, is what the doctor has to say about the

20   prisoner.  The panel finds that -- the Board report by

21   Studebaker (phonetic), who's CC1, states that the

22   prison would pose a moderate degree of threat to

23   society if released.  And so the panel, in considering

24   these factors, the panel finds that concerning the

25   instant offense that the prisoner committed, the

26   shooting to death of one victim who was in the service

27   **SANTOS CHAVEZ    C-87968    DECISION PAGE 2    5/21/96**

48

1   at the time, a young victim, the shooting and

2   seriously injuring the other two in retaliation,

3   taking the law in his own hands, and the prior social

4   factors, the need for additional programming, there's

5   not sufficient evidence at this time that the prisoner

6   would behave differently if released from prison.   In

7   a separate decision the panel finds it is not

8   reasonable to expect that the prisoner would receive a

9   parole date during the following two years.   This is a

10  two-year denial.   The reasons are:   The crime he

11  committed, his prior criminal record and social

12  factors and the need for additional programming in the

13  institution.   In the ensuing two years we ask that the

14  prisoner remain disciplinary free, that he upgrade

15  vocationally in the computer field that you're

16  interested in, and also educationally, attempt to,

17  even if it's cell study, attempt to improve yourself

18  in the educational area, and participate in any type

19  of self-help that becomes available to you.   This

20  concludes the decision.   And here's a copy of that

21  decision.   We wish you good luck.

22          INMATE CHAVEZ:    Thank you.

23          DEPUTY COMMISSIONER TROTT:    Good luck.

24                    --oOo--

25  PAROLE DENIED TWO YEARS

26  EFFECTIVE DATE OF THIS DECISION _____ AUG 1 2 1996

27  SANTOS CHAVEZ    C-87968    DECISION PAGE 3    5/21/96

SECTION   6

54

CALIFORNIA BOARD OF PRISON TERMS

## D E C I S I O N

PRESIDING BOARD COMMISSIONER GUADERRAMA:    Okay, the time now is 15 minutes after 1:00 P.M. and everyone identified earlier is back again.    Mr. Chavez, we have a unanimous decision.    The panel reviewed all information received from the public and relied on the following circumstances in concluding that you are not suitable for parole and would pose an unreasonable risk of danger to society and a threat to public safety if released from prison.

The offense was carried out in a manner which exhibits a callous disregard for the life and suffering of another.    Multiple victims were attacked, injured or killed in the same or separate incidents.    These conclusions are drawn from the Statement of Facts where the prisoner and a crime partner in a drive-by shooting, shot and killed one victim and wounded two others.    The shooting was in retaliation for an incident that occurred earlier where the prisoner's wife had been accosted by rival gang members.

Previous record, the prisoner has an escalating pattern of criminal conduct.    A persistent pattern of tumultuous relationships and criminal behavior which commenced at an early age. An unstable social history. He has failed to profit from society's previous attempts to correct his criminality.    Such attempts include juvenile probation and juvenile camp.

SANTOS CHAVEZ    C-87968    DECISION PAGE 1    02/24/94

SEIBLES
COBBS, WILLIS & MOORE
916 552-1163

Has an unstable social history and prior criminality which includes having dropped out of school in the tenth grade, was a street gang member, has a juvenile record for vandalism, and taking a gun to school and experimented with marijuana.

Institutional behavior, the prisoner has programmed in a limited manner while incarcerated. He has failed to upgrade educationally as previously recommended by the Board. He has not sufficiently participated in beneficial self-help and therapy programming. Misconduct while incarcerated includes two C.D.C. 115's. The last one was in 1987.

The panel makes the following findings. The prisoner needs therapy in order to face, discuss, understand and cope with stress in a nondestructive manner. Until progress is made, the prisoner continues to be unpredictable and a threat to others. Therapy in a controlled setting is needed, but motivation and amenability are questionable.

The prisoner's gains are recent, and he must demonstrate an ability to maintain gains over an extended period of time. Nevertheless, the prisoner should be commended for earning above average work reports, being disciplinary free since 1987 and upgrading vocationally. However, these positive aspects of his behavior do not outweigh the factors of unsuitability.

Mr. Chavez, you are being denied parole for two years. The hearing panel finds it is unreasonable to expect

**SANTOS CHAVEZ    C-87968    DECISION PAGE 2    02/24/94**

that parole would be granted at a hearing during the following two years. The specific reasons for this finding are as follows.

One, he committed the offense, specifically you and a crime partner shot and killed one man and wounded two others in a drive-by shooting in retaliation for an earlier incident involving your wife.

Second reason, a longer period of time is required to evaluate your suitability in view of your history of criminality and misconduct including your gang membership, your juvenile arrests for vandalism and taking a gun to school, and your experimentation with marijuana.

The third reason, you have not completed necessary programming which is essential to your adjustment, and you need additional time to gain such programming. This one is really important. You need to get into some kind of therapy, and you need to get insight into your crime and a better understanding about the problems that you had up to and including the life offense. And you should be taking advantage of all the groups and therapy that's available to you in the institution.

Our recommendations are that you remain disciplinary free. That you work toward reducing your custody level so that program opportunities become more available. That you upgrade educationally. And that you participate in self-help and therapy programming.

That's the official decision. Just like to say

**SANTOS CHAVEZ    C-87968    DECISION PAGE 3    02/24/94**

that you come in here and you appear to have a good attitude. And we discussed your case after you walked out today, and there's mixed feelings about how you conducted yourself and your motivation. And also the differences in your story since the last hearing. We had some concerns about that.

And I strongly encourage you when you get your transcript for this hearing that you study it. And study the last one. Take a look and see if there's a difference in what you testified to today and what was said a couple years ago.

You need to take advantage of the self-help groups. I don't know of anybody anymore that's getting out of prison by just serving so much time. You're a lifer. You got to remember that. And you could stay here till the day you die. Hopefully you won't do that.

But unless you really get hot and start working on it and get some kind of program together where you earn your G.E.D. You're doing well in your vocation and you've got good work reports. But that's not going to be enough. You got to get a little more understanding on why you committed this horrible crime. It's really a bad crime.

As a matter of fact, one day and probably soon, it's going to be a capital crime where somebody involved in that kind of offense is going to get death. You need to think about that. It's a pretty serious crime. So you need a lot of insight.

And I think the District Attorney brought up some

SANTOS CHAVEZ    C-87968    DECISION PAGE 4    02/24/94

real good points too about your parole plans and where you're going to resettle when you get out. I'd stay as far away from gang territory as I possibly could. And of course you've got to go back to L.A. County. Where you're not going to be involved or tempted to become involved in gang problems.

So anyway, put together a plan, take a look at the transcripts and get together with your counselor and whoever else will help you, and put something together. We're not recommending Cat X this time because you didn't take advantage of it last time. Perhaps -- I'm not sure what will happen two years from now. If the panel thinks that they're going to need it to make a good evaluation of whether to give you a parole date, they may recommend it, but I don't know.

In the meantime, put that plan together. Here's your copy of the decision. We're going to see you in a couple years, and we want to wish you well.

INMATE CHAVEZ: Okay, thank you.

PRESIDING BOARD COMMISSIONER GUADERRAMA: Time now is 20 minutes after 1:00 P.M. and the hearing is terminated.


PAROLE DENIED 2 YEARS.

EFFECTIVE DATE OF DECISION:_____MAY 2 6 1994_____


SANTOS CHAVEZ    C-87968    DECISION PAGE 5    02/24/94

**SECTION   7**

## CALIFORNIA BOARD OF PRISON TERMS

In the Matter of the                                Life Prisoner

Hearing of                              Initial Parole Consideration

CHAVEZ, Santos                                Denied (2 Years)

C-87968

CTF

This matter was heard before the Board of Prison Terms (BPT) on February 20, 1992, at the Correctional Training Facility. The hearing panel was composed of J. Aceto, Commissioner; R. Koenig, Commissioner; and C. Mar, Deputy Commissioner.

Present at the hearing were S. Chavez, prisoner; D. Condren, counsel for prisoner; and J. Kimall, Deputy District Attorney, Los Angeles County.

Any others present are identified in the transcript.

Oral and documentary evidence was submitted and after due consideration of all the evidence, the panel makes the following findings:

### Legal Status

On June 22, 1984, the prisoner was received in prison pursuant to Penal Code (PC) § 1168 for a violation of PC § 187 and pursuant to PC § 1170 for a violation of PC § 12022.5, second degree murder with use of a firearm (Los Angeles County Case No. A382607, count 2). The controlling minimum eligible parole date (MEPD) is March 7, 1993.

PC § 3041(a) provides that the BPT shall meet with persons sentenced under PC § 1168 and shall normally set a parole release date unless, pursuant to PC § 3041(b), the Board determines that a parole date cannot be fixed at this hearing.

This hearing is conducted pursuant to Title 15, California Code of Regulations (15 CCR), Division 2, Chapter 3, Article 11, which sets forth parole consideration criteria and guidelines for life prisoners implementing PC § 3041.

### Statement of Facts

In the late evening hours of July 24, 1982, Ronald Rivas, age 20, a marine on leave, Joaquin Lopez, age 18 and Ralph Jimenez, age 17, were standing in the front yard of 3338 Maceo Street, next door to where a Baptismal celebration was being held. The men were members of or were associated with the street gang known as "Cypress Park", and the location was known to be gang territory.

At about 10:00 p.m., a car driven by the prisoner with crime partner Cantu as passenger, drove by and stopped. The prisoner had a rifle and the crime partner was armed with a rifle. A witness approached the car and the prisoner pointed a handgun at him. Several shots were fired by both the prisoner and the crime partner at the victims in the street. Rivas was fatally shot, and the cause of death was a gunshot wound to the head. The two other victims were wounded by gunshots.

Further investigation disclosed that the car used in the shooting was registered to the prisoner. Following his arrest, the prisoner identified his crime partner as Jessie Cantu, a

CHAVEZ, S.  C-87968            -2-          2/20/92
mr

fellow gang member of the "Avenues." Officers further recovered
a .22 caliber barrel and stock at the prisoner's residence which
matched the casings fired at the crime scene.

## Parole Suitability

15 CCR § 2402(a) requires that the panel first determine
whether the prisoner is suitable for release on parole.
Regardless of the length of time served, a life prisoner shall be
found unsuitable for and denied parole if in the judgment of the
panel the prisoner will pose an unreasonable risk of danger to
society if released from prison. 15 CCR § 2402(c) sets forth
circumstances tending to show unsuitability and 15 CCR § 2402(d)
sets forth circumstances tending to show suitability. These
regulations are guidelines only.

The panel relied on the following circumstances in
determining whether or not the prisoner is suitable for parole:

1. Commitment offense. The offense was carried out in an
especially heinous, atrocious, cruel, dispassionate and
calculated manner which exhibits a callous disregard for the life
and suffering of others. Multiple victims were attacked, two
injured and one was killed in the same incident.

These conclusions are drawn from the Statement of Facts
wherein the prisoner and crime partner drove up to the location
and stopped. The prisoner and crime partner were both armed with
firearms. As a witness approached the prisoner's vehicle, the
prisoner pointed a rifle at him. Several shots were fired by the
prisoner and crime partner at the victims. Victim Rivas was
fatally shot and two other victims were wounded by gunshots.

CHAVEZ, S.  C-87968          -3-          2/20/92
mr

Shell casings were found at the scene.

2.  Previous record.  The prisoner has failed to profit from society's previous attempts to correct his criminality.  Such attempts include juvenile camp.

The prisoner has an unstable social history and prior criminality which includes being an active gang member.

3.  Institutional behavior.  The prisoner has programmed in a limited manner while incarcerated.  He has failed to upgrade educationally and vocationally as previously recommended by the BPT and has not participated in beneficial self-help or therapy programs.  He has failed to demonstrate evidence of positive change.  Misconduct while incarcerated includes receiving two California Department of Corrections (CDC) disciplinaries (115s) with the last one in 1987.  He has also received five 128As with the last one being in 1991.

4.  Psychiatric factors.  The psychological evaluation dated January 3, 1992, by R. Kitt, Ph.D., is not totally supportive of release and indicates the following:

"...In his previous psychological evaluation in 1989, he was diagnosed as 'antisocial personality, by history.'  Today, a review was made of his behavior during his juvenile years.  He states that he was first arrested at the age of 12 for breaking a window at school.  His next arrest was at age 15 for a concealed weapon.  His file indicates that his juvenile history was closed and sealed in December of 1980, when he was approximately 16 year old.  His first psychological evaluation indicates that his first experience with sexual intercourse was at the age of 14.  After

CHAVEZ, S.  C-87968          -4-          2/20/92
mr

asking him many questions about truancy, runaway, fighting, vandalism, cruelty and other conduct problems prior to the age of 15, it appears that he does not meet the American Psychiatric Association diagnostic criteria for antisocial personality disorder.

"Since his last psychological evaluation for the Board of Prison Terms, he has not received any psychiatric treatment or psychotherapy. He has recently finished the auto mechanics trade. There have been no recent disciplinary action. Although he is no longer married, he still receives visits from his two children, who accompany his father or brother to the visit...

"...Adult antisocial behavior and antisocial traits...

"...Conditions of parole should include close supervision of his relationship with peers. He appears to have an improved social identification and is now old enough to have better emotional stability and be less influenced by the sociological factors of his environment."

The panel finds the prisoner needs therapy in order to face, discuss, understand and cope with stress in a non-destructive manner. Until progress is made, he continues to be unpredictable and a threat to others.

The prisoner's gains are recent and he must demonstrate an ability to maintain gains over an extended period of time.

Nevertheless, the prisoner should be commended for his good work habits and for his certification in auto mechanics. However, these positive aspects of his behavior do not outweigh the factors of unsuitability.

CHAVEZ, S.  C-87968            -5-            2/20/92
mr

Based on the information contained in the record and considered at this hearing, the panel concludes and states, as required by PC §§ 3043 and 3043.5, that the prisoner would pose a threat to public safety if released on parole. Therefore, the prisoner is found unsuitable for parole.

PC § 3041.5(b)(2) permits a two year denial if the Board finds that it is not reasonable to expect that parole would be granted at a hearing during the following year and states the bases for the finding. In addition to the foregoing reasons supporting postponement of parole consideration, the panel also specifically finds that it is not reasonable to expect that parole would be granted at a hearing scheduled earlier based on the following facts:

1. The prisoner committed the offense in an especially heinous, atrocious and cruel manner. Specifically, he and his crime partner fired at a group of people in a local neighborhood. The prisoner fired his rifle at three individuals. One victim was killed and two were wounded. As a result, a longer period of observation and/or evaluation is required before the Board should set a parole date.

2. The prisoner has not completed necessary programming which is essential to his adjustment and needs additional time to gain such programming. He has failed to participate in self-help or therapy.

The next hearing will be scheduled in two years.

### Recommendation

PC § 3041.5(b)(2) provides that within 20 days following any

meeting where a parole date has not been set, the Board shall send the prisoner a written statement setting forth the reason or reasons for refusal to set a parole date and when the prisoner can reasonably expect to be considered again for the setting of a parole date and in what beneficial activities the prisoner might participate.

This case shall be scheduled for hearing for parole consideration as provided in 15 CCR § 2270(c).

In preparation for the next parole consideration hearing, the panel recommends that the prisoner:

1.   Remain disciplinary free.

2.   Upgrade vocationally and/or educationally.

3.   Participate in self-help and therapy programming.

4.   Cooperate with clinicians and staff and/or the Psychiatric Council in a Category X Program.

**NOTE TO CDC STAFF:**

The panel requests that the prisoner be transferred to CMC or SQ for the purpose of participating in the Category X program.

The Category X Program and/or the Psychiatric Council is to explore:

1.   Violence potential in the free community.

2.   The extent to which the prisoner has explored the commitment offense and come to terms with the underlying causes.

3.   The need for therapy programs while incarcerated.

**Order**

Based on the foregoing findings and reasons, parole is denied.

CHAVEZ, S.  C-87968           -7-            2/20/92
mr

**EFFECTIVE DATE OF THIS DECISION**    MAY 27 1992