EXH G

SECTION 1

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

**DEPT 100**

| | | | | |
|---|---|---|---|---|
| Date: | FEBRUARY 15, 2007 | | | |
| Honorable: | STEVEN R. VAN SICKLEN | Judge | J. PULIDO | Deputy Clerk |
| | NONE | Bailiff | NONE | Reporter |

(Parties and Counsel checked if present)

BH 003995
In re,
SANTOS CHAVEZ,
Petitioner,
On Habeas Corpus

Counsel for Petitioner:

Counsel for Respondent:

Nature of Proceedings: ORDER RE: WRIT OF HABEAS CORPUS

The Court has read and considered the petition for writ of habeas corpus filed April 28, 2006, in which petitioner seeks immediate release on parole due to alleged violation of the plea agreement.

"A plea agreement violation claim depends upon the actual terms of the agreement, not on the subjective understanding of the defendant or deficient advice provided by his attorney." (*In re Honesto* (2005) 130 Cal.App.4th 81, 92.)

The sentence imposed was for the crime of second-degree murder with a firearm which carries a minimum sentence of 17 years and a maximum term of life imprisonment. Petitioner's plea agreement included an indeterminate sentence with a maximum of life in prison. Our courts have traditionally held that "[o]ne who is legally convicted has no vested right to the determination of his sentence at less than the maximum." (*In re Schoengarth* (1967) 66 Cal.2d 295, 302.) "It has uniformly been held that the indeterminate sentence is in legal effect a sentence for the maximum term," subject to the Board setting a lesser term. (*In re Lee* (1918) 177 Cal. 690, 692-693; see also *In re Dannenberg* (2005) 34 Cal.4th 1061, 1097-1098.) Thus, petitioner could potentially serve a life sentence unless the Board finds him suitable for parole.

There was no promise by the court that petitioner would be released at any specific date. Release from prison is determined only by the Board of Parole Hearings and no matter the length of time that a prisoner has been confined, he or she will not be released until he or she has been found suitable for parole. (Pen. Code § 3041, subd. (b); Cal. Code Regs., tit. 15, § 2281, subd. (a); *In re Powell* (1988) 45 Cal.3d 895.)

Therefore, the petition is denied.

The court order is signed and filed this date. The clerk is directed to give notice.

A true copy of this minute order is sent to the petitioner via U.S. Mail as follows:

1

| Minutes Entered |
|---|
| 02-15-07 |
| County Clerk |

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

**DEPT 100**

| Date: | FEBRUARY 15, 2007 | | | |
|---|---|---|---|---|
| Honorable: | STEVEN R. VAN SICKLEN | Judge | J. PULIDO | Deputy Clerk |
| | NONE | Bailiff | NONE | Reporter |

(Parties and Counsel checked if present)

BH 003995
In re,
SANTOS CHAVEZ,
　Petitioner,
On Habeas Corpus

Counsel for Petitioner:

Counsel for Respondent:

Santos Chavez
C-87968
Correctional Training Facility
P.O. Box 689
Soledad, CA 93960-0689

THE DOCUMENT TO WHICH THIS CERTIFICATE IS
ATTACHED IS A FULL, TRUE, AND CORRECT COPY
OF THE ORIGINAL ON FILE AND OF RECORD IN
MY OFFICE.

ATTEST **FEB 1 6 2007**

JOHN A. CLARKE, Executive Officer/Clerk of the
Superior Court of the State of California for the
of Los Angeles.

By _____ , Deputy
JOSEPH M. PULIDO, S.C.C.
233219



| Minutes Entered |
|---|
| 02-15-07 |
| County Clerk |

2

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF LOS ANGELES | Reserved for Clerk's File Stamp<br>**CONFORMED COPY**<br>OF ORIGINAL FILED<br>Los Angeles Superior Court |
|---|---|
| COURTHOUSE ADDRESS:<br>Clara Shortridge Foltz Criminal Justice Center<br>210 West Temple Street<br>Los Angeles, CA 90012 | **FEB 16 2007** |
| PLAINTIFF/PETITIONER:<br><br>SANTOS CHAVEZ | John A. Clarke, Executive Officer/Clerk<br>By _____, **Deputy** |
| **CLERK'S CERTIFICATE OF MAILING**<br>CCP, § 1013(a)<br>Cal. Rules of Court, rule 2(a)(1) | CASE NUMBER:<br>BH003995 |

I, the below-named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that this date I served:

☐ Order Extending Time
☐ Order to Show Cause
☐ Order for Informal Response
☐ Order for Supplemental Pleading

☑ Order re: Writ of Habeas Corpus
☐ Order
☐ Order re:
☐ Copy of

I certify that the following is true and correct:  I am the clerk of the above-named court and not a party to the cause.  I served this document by placing true copies in envelopes addressed as shown below and then by sealing and placing them for collection; stamping or metering with first-class, prepaid postage; and mailing on the date stated below, in the United States mail at Los Angeles County, California, following standard court practices.

February 16, 2007
DATED AND DEPOSITED

JOHN A. CLARKE, Executive Officer/Clerk

By: _____, Clerk
         Joseph M. Pulido

Santos Chavez
C-87968
Correctional Training Facility
P.O. Box 689
Soledad, CA 93960-0689

**SECTION 2**

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

MAY 09 2006

John A. Clarke, Executive Officer/Clerk

By _____, Deputy

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES

In re,                                    ) CASE NO.: BH003291
                                          )
Santos Chavez,                            ) ORDER RE: WRIT OF
                                          )          HABEAS CORPUS
            Petitioner,                   )
                                          )
                                          )
         .    On Habeas Corpus            )

The Court has read and considered the petition for a writ of habeas corpus filed May 3, 2006, in which petitioner seeks immediate release on parole due to alleged violation of the plea agreement.

"A plea agreement violation claim depends upon the actual terms of the agreement, not on the subjective understanding of the defendant or deficient advice provided by his attorney." (*In re Honesto* 130 Cal.App.4th 81.)

The sentence imposed was for the crime of second-degree murder with a firearm which carries a minimum sentence of 17 years and a maximum term of life imprisonment. There was no promise by the court that petitioner would be released at any specific date. Release from prison is determined only by the Board of Prison Terms and Parole. And no matter how long a

slr

prisoner has been confined, he will not be released until he has been found suitable for parole.

(Pen. Code 3041(b); Cal. Code Regs., tit. 15, §2281(a); *In re Powell* 45 Cal.3d 895.)

     The petition for relief is denied.

Date: **5·9-06**

DAVID S. WESLEY
SUPERIOR COURT JUDGE

The clerk is to send notice.

slr

| **SUPERIOR COURT OF CALIFORNIA** <br> **COUNTY OF LOS ANGELES** | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS: <br> Clara Shortridge Foltz Criminal Justice Center <br> 210 West Temple Street <br> Los Angeles, CA 90012 | **CONFORMED COPY** <br> OF ORIGINAL FILED <br> Los Angeles Superior Court |
| PLAINTIFF/PETITIONER: <br><br> SANTOS CHAVEZ | MAY 09 2006 <br> John A. Clarke, Executive Officer/Clerk <br> By _____, Deputy |
| **CLERK'S CERTIFICATE OF MAILING** <br> CCP, § 1013(a) <br> Cal. Rules of Court, rule 2(a)(1) | CASE NUMBER: <br><br> BH003291 |

I, the below-named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that this date I served:

- ☐ Order Extending Time
- ☐ Order to Show Cause
- ☐ Order for Informal Response
- ☐ Order for Supplemental Pleading

- ☐ Order re: Request for Extension of Time
- ☐ Order    Petition
- ☒ Order re: Writ of Habeas Corpus
- ☐ Copy of

I certify that the following is true and correct: I am the clerk of the above-named court and not a party to the cause. I served this document by placing true copies in envelopes addressed as shown below and then by sealing and placing them for collection; stamping or metering with first-class, prepaid postage; and mailing on the date stated below, in the United States mail at Los Angeles County, California, following standard court practices.

May 9, 2006
DATED AND DEPOSITED

JOHN A. CLARKE, Executive Officer/Clerk

By: _Joseph M. Pulido_____, Clerk
                Joseph M. Pulido

Santos Chavez
C-87968
Correctional Training Facility
P.O. Box 689
Soledad, CA 93960-0689

SECTION 3

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

**DEPT 100**

| Date: | MAY 4, 2007 | | | |
|-------|-------------|---|---|---|
| Honorable: | STEVEN R. VAN SICKLEN | Judge | J. PULIDO | Deputy Clerk |
| | NONE | Bailiff | NONE | Reporter |

|  |
|---|
| (Parties and Counsel checked if present) |

BH004075
In re,
SANTOS CHAVEZ,
        Petitioner,
    On Habeas Corpus

Counsel for Respondent:

Nature of Proceedings: ORDER RE: WRIT OF HABEAS CORPUS

The Court has read and considered petitioner's Writ of Habeas Corpus filed on June 19, 2006. Having independently reviewed the record, giving deference to the broad discretion of the Board of Parole Hearings (" Board") in parole matters, the Court concludes that the record contains "some evidence" to support the Board's finding that petitioner is unsuitable for parole (See Cal. Code Reg. Tit. 15, §2402; *In re Rosenkrantz* (2002) 29 Cal.4th 616, 667 (hereafter *Rosenkrantz*).)

Petitioner was received in the Department of Corrections on June 22, 1984 after a conviction for second-degree murder. He was sentenced to seventeen years to life. His minimum parole eligibility date was March 7, 1993. The record reflects that on July 24, 1983, petitioner and a co-defendant drove to the territory of a rival gang. Petitioner was armed with a shotgun; his crime partner was armed with a rifle. They fired several shots at members of a rival gang. One man believed to be an innocent bystander was killed. Two gang members were injured. There was return fire that damaged petitioner's car. At that point, petitioner and his partner drove off. Petitioner contends that the shooting was retaliation for an attempted attack on his pregnant wife.

The Board found petitioner unsuitable for parole after a parole consideration hearing held on February 9, 2006. Petitioner was denied parole for one year. The Board concluded that petitioner was unsuitable for parole and would pose an unreasonable risk of danger to society and a threat to public safety. The Board based its decision on several factors, including his commitment offense.

The record reflects that there is some evidence that "multiple victims were attacked, injured or killed in the same or separate incidents." (Cal. Code Regs., tit. 15, §2402, subd. (c)(1)(A).) Petitioner killed one person, injured two more and could have harmed several others as he fired several shots into a crowd of people. The Board also found that the fact that petitioner was unconcerned about how many people were hurt or killed, indicated, "the offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering." (Cal. Code Regs., tit. 15, §2402, subd. (c)(1)(D).)

The Board was concerned about the inconsistencies in petitioner's version of the facts of the case. Where guilt is uncontested, Petitioner's version of the events may be "some evidence" he lacks remorse and understanding of the nature and magnitude of the offense. (*In re McClendon* (2004) 113 Cal.App.4th 315, 322.) At the hearing, the Deputy District Attorney pointed out that according to an early police report, petitioner initially did not mention the attack on his wife. At that time, he claimed that as he and his co-defendant were

1

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
**DEPT 100**

| Date: | MAY 4, 2007 | | | |
|-------|-------------|---|---|---|
| Honorable: | STEVEN R. VAN SICKLEN | Judge | J. PULIDO | Deputy Clerk |
| | NONE | Bailiff | NONE | Reporter |

|  |
|---|
| (Parties and Counsel checked if present) |

BH004075
In re,
SANTOS CHAVEZ,
    Petitioner,
On Habeas Corpus

Counsel for Respondent:

driving to his father's house through rival gang territory, they passed at group of people on the sidewalk. When one of them threw a bottle at his car, his co-defendant fired a rifle at them. (*Reporter's Transcript*, February 9, 2006, pp. 91-92.) Although the reports indicated that the victim who was killed was an innocent bystander who was not a gang member, petitioner claimed at the hearing that the victim was not only a gang member but also one of the men who accosted his wife. (*Id.* at 20, 114.) The Board denied parole for one year in order to resolve the inconsistencies in his story and erase the "lingering doubts" about his remorse and understanding of the nature and magnitude of the crime. (*Id.* at 116.) There is some evidence to support the Board's decision.

    Accordingly, the petition is denied.

    The court order is signed and filed this date. The clerk is directed to give notice.

    A true copy of this minute order is sent via U.S. Mail to the following parties:

Santos Chavez
C-87968
Correctional Training Facility
P.O. Box 689
Soledad, CA 93960-0689

Department of Justice
Office of the Attorney General of the State of California
Gregory J. Marcot, Deputy Attorney General
110 West A Street, Suite 1100
San Diego, CA 92101

| Minutes Entered |
|---|
| 05-04-07 |
| County Clerk |

| | |
|---|---|
| **SUPERIOR COURT OF CALIFORNIA**<br>**COUNTY OF LOS ANGELES** | Reserved for Clerk's File Stamp<br><br>**CONFORMED COPY**<br>OF ORIGINAL FILED<br>Los Angeles Superior Court |
| COURTHOUSE ADDRESS:<br>Clara Shortridge Foltz Criminal Justice Center<br>210 West Temple Street<br>Los Angeles, CA 90012 | |
| PLAINTIFF/PETITIONER:<br><br>**SANTOS CHAVEZ** | **MAY 1 1 2007**<br><br>John A. Clarke, Executive Officer/Clerk<br>By _____ , Deputy |
| **CLERK'S CERTIFICATE OF MAILING**<br>CCP, § 1013(a)<br>Cal. Rules of Court, rule 2(a)(1) | CASE NUMBER:<br><br>BH004075 |

I, the below-named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that this date I served:

☐ Order Extending Time      ☑ Order re: Writ of Habeas Corpus dated May 4, 2007
☐ Order to Show Cause      ☐ Order
☐ Order for Informal Response      ☐ Order re:
☐ Order for Supplemental Pleading      ☐ Copy of

I certify that the following is true and correct: I am the clerk of the above-named court and not a party to the cause. I served this document by placing true copies in envelopes addressed as shown below and then by sealing and placing them for collection; stamping or metering with first-class, prepaid postage; and mailing on the date stated below, in the United States mail at Los Angeles County, California, following standard court practices.

May 11, 2007
DATED AND DEPOSITED

JOHN A. CLARKE, Executive Officer/Clerk

By: _____ , Clerk
           Joseph M. Pulido

Santos Chavez
C-87968
Correctional Training Facility
P.O. Box 689
Soledad, CA 93960-0689


Department of Justice
Office of the Attorney General of the State of
California
Gregory J. Marcot, Deputy Attorney General
110 West A Street, Suite 1100
San Diego, CA 92101

**SECTION 4**

SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

PROBATION OFFICER'S REPORT

REPORT SEQUENCE NO. 2 1

| DEFENDANT'S NAME(S) | | | | COURT | JUDGE | COURT CASE NO. |
|---|---|---|---|---|---|---|
| SANTOS CORDERO CHAVEZ | | | | 130 | BOLAND | A-382607 |

| ADDRESS (PRESENT / RELEASE) 4412 ROCKHOLD ROSEMEAD, CA    (285-5278) | | | | HEARING DATE 6/12/84 | DEFENSE ATTY. EGERS | PROSECUTOR DAVIS- SPRINGER- |
|---|---|---|---|---|---|---|

| BIRTHDATE 1/19/64 | AGE 20 | SEX MALE | RACE LATIN | DPO | AREA OFFICE | PHONE NO. |
|---|---|---|---|---|---|---|
| CITIZENSHIP STATUS U.S. | | DRIVER'S LICENSE / EXP. DATE UNK | | WALLACE | CAI | FILED |

| PROBATION NO. X- 009204 | CII NO. A06629916 | BOOKING NO. 6780259 | TYPE REPORT X Probation and sentence ___ Pre-Conviction (131.3 CCP) ___ Post sentence ___ Diversion (Specify) _____ | JUN 15 1984 JOHN J. CORCORAN County Clerk By M. _____ |
|---|---|---|---|---|
| DAYS IN JAIL THIS CASE X ESTIMATED ☐ VERIFIED 646 | CUSTODY STATUS/RELEASE DATE JAIL | | | |

PRESENT OFFENSE: LEGAL HISTORY

CHARGED with the crimes of (INCLUDE PRIORS, ENHANCEMENTS OR SPECIAL CIRCUMSTANCES)

182 PC (CONSPIRACY TO COMMIT MURDER WITH A FIREARM AND GREAT BODILY INJURY)
PURSUANT TO 12022.5, 1203.06(A)(1), 12022.7 AND 1203.075, COUNT ONE
187 PC (MURDER WITH THE USE OF A FIREARM) PURSUANT TO 12022.5 AND 1203.06(A)(
COUNT TWO,
664/187 PC (ATTEMPTED MURDER WITH THE USE OF A FIREARM AND GREAT BODILY INJUR
PURSUANT TO 12022.5, 1203.06(A)(1), 12022.7 AND 1203.075, COUNTS THREE
AND FOUR.

CONVICTED of the crimes of (INCLUDE PRIORS, ENHANCEMENTS OR SPECIAL CIRCUMSTANCES)

187 PC, SECOND DEGREE + 12022.5 + 1203.06(A)(1), COUNT II

| CONVICTED BY PLEA | DATE OF CONVICTION/XXXXXX 4/26/84 | COUNT(S) CONTINUED TO P & S FOR DISPOSITION I    III    IV | | |
|---|---|---|---|---|
| PROPOSED PLEA AGREEMENT | | | SOURCES OF INFORMATION | PC |
| DATE(S) OF OFFENSE 7/24/82 | | TIME(S) 10:00 P.M. | | |

| DEFENDANT: X N/A (SEE PRIOR RECORD SECTION) | ☐ ON PROBATION ☐ ON PAROLE-REMAINING TIME _____ | ☐ SENTENCED TO STATE PRISON/COUNTY JAIL ON CASE _____ ☐ PENDING PROBATION VIOLATION  ☐ PENDING NEW CASE | HOLDS/WARRANTS: ☐ YES  X NO |
|---|---|---|---|

RECOMMENDATION:

| ☐ PROBATION | X DENIAL ☐ COUNTY JAIL X STATE PRISON | ☐ DIAGNOSTIC STUDY ☐ 707.2 WIC ☐ 1203.03 PC | ☐ CYA | ☐ OTHER _____ |
|---|---|---|---|---|

76P725B — Prob. 19SC (Rev. 11/83)

| PRESENT OFFENSE: (CONTINUED) | SOURCES OF INFORMATION (this page) D.A. FILE |
|---|---|

| ARREST DATE | TIME | BOOKED AS | OFFENSE | LOCATION OF ARREST | ARRESTING AGENCY |
|---|---|---|---|---|---|
| 8/1/82 | 10:35 PM | SANTOS CORDERO CHAVEZ | 187 PC (MURDER) | 6056 LA PRADA ST. LOS ANGELES, CA | LAPD |

| CO-DEFENDANT(S) | CASE NO. | DISPOSITION |
|---|---|---|
| CANTU, JESSIE | A-382607 | UNK |

**ELEMENTS AND RELEVANT CIRCUMSTANCES OF THE OFFENSE:**

IN THE LATE EVENING HOURS OF JULY 24, 1982, RONALD RIVAS, AGE 20, A MARINE ON LEAVE, JOAQUIN LOPEZ, AGE 18 AND RALPH JIMENEZ, AGE 17, WERE STANDING IN THE FRONT YARD OF 3338 MACEO STREET, NEXT DOOR TO WHERE A BAPTISMAL CELEBRATION WAS BEING HELD. THE MEN WERE MEMBERS OF OR ASSOCIATED WITH THE STREET GANG KNOWN AS "CYPRESS PARK," AND THE LOCATION WAS KNOWN TO BE GANG TERRITORY.

AT ABOUT 10:00 P.M., A CAR DRIVEN BY THE DEFENDANT WITH CODEFENDANT CANTU AS PASSENGER, DROVE BY AND STOPPED. THE DEFENDANT HAD A SHOTGUN AND CODEFENDANT WAS ARMED WITH A RIFLE. A WITNESS, APPROACHED THE CAR, AND THE DEFENDANT POINTED A HANDGUN AT HIM. SEVERAL SHOTS WERE FIRED BY BOTH THE DEFENDANT AND THE CODEFENDANT AT THE VICTIMS IN THE STREET. RIVAS WAS FATALLY SHOT, AND THE CAUSE OF DEATH WAS A GUNSHOT WOUND TO THE HEAD. THE TWO OTHER VICTIMS WERE WOUNDED BY GUNSHOTS.

DURING THE SUBSEQUENT INVESTIGATION, OFFICERS RECOVERED FIVE .22 CALIBER SPENT SHELL CASINGS AT THE CRIME SCENE. FURTHER

-2- (CHAVEZ)

76P725B — Prob. 195C (Rev. 11/83)

1  INVESTIGATION DISCLOSED THAT THE CAR USED IN THE SHOOTING WAS REGISTERED

2  TO THE DEFENDANT.  FOLLOWING HIS ARREST, THE DEFENDANT IDENTIFIED HIS

3  CRIME PARTNER AS JESSIE CANTU, A FELLOW GANG MEMBER OF THE "AVENUES."

4  OFFICERS FURTHER RECOVERED A .22 CALIBER BARREL AND STOCK AT THE

5  DEFENDANT'S RESIDENCE, WHICH MATCHED THE CASINGS FIRED AT THE CRIME

6  SCENE.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

-3- (CHAVEZ)

VICTIM:

SOURCES OF INFORMATION:

D.A. FILE

| NAME | COUNT(S) |
|---|---|
| RONALD RIVAS  (DECEASED) | TWO |

INJURY: PROPERTY LOSS (TYPE / COST / ETC.)

INSURANCE COVERAGE

| LOSS: ☐ YES ☐ NO | ESTIMATED LOSS | RESTITUTION ALREADY MADE | APPLIED FOR VICTIM RESTITUTION FUND |
|---|---|---|---|
| | | NONE | ☒ UNK  ☐ YES  ☐ NO |

VICTIM STATEMENT:

| RESTITUTION | TOTAL NUMBER OF VICTIMS | ESTIMATED LOSS TO ALL VICTIMS | VICTIM(S) NOTIFIED OF P&S HEARING |
|---|---|---|---|
| | THREE | | ☒ YES  ☐ NO  (NEXT OF KIN) |

| DOES DEFENDANT HAVE INSURANCE TO COVER RESTITUTION: | INSURANCE COMPANY NAME/ADDRESS/TELEPHONE NO. |
|---|---|
| ☐ YES  ☒ NO | |

-4- (CHAVEZ)

_____ VICTIM LIST CONTINUES NEXT PAGE

76P725B -- Prob. 19SC (Rev. 11/83)

PRIOR RECORD:

SOURCES OF INFORMATION (this page)
CII (5/16/84), PROBATION DEPT. RECORDS,
DEFENDANT'S STATEMENT

AKA'S:

NONE

## JUVENILE HISTORY:

THE DEFENDANT HAS A CLOSED JUVENILE NUMBER, 0637895 AND JUVENILE COURT NUMBER J-547706. JURISDICTION WAS TERMINATED ON DECEMBER 18, 1980. AT THE DATE OF THIS DICTATION, THE JUVENILE FILE FOR THE DEFENDANT HAS NOT BEEN AVAILABLE. THE DEFENDANT INDICATES THAT HE WAS SENT TO CAMP MILLER, A CAMP WHOSE PROGRAM IS A SHORT-TERM ONE. HE SAYS THAT WHEN HE GOT INTO NO FURTHER DIFFICULTIES AFTER HIS RELEASE FROM CAMP, HE WAS TERMINATED FROM PROBATION.

## ADULT HISTORY:

9/1/82        LAPD - 187(A) PC (MURDER)

(THIS REFERS TO THE PRESENT OFFENSE.)

-5- (CHAVEZ)

76P725B — Prob. 195C (Rev. 11/83)

1 | PERSONAL HISTORY:

SOURCES OF INFORMATION (this page)
DEFENDANT'S STATEMENT

---

SUBSTANCE ABUSE:

_X_ No record, indication, or admission of alcohol or controlled substance abuse.

_____ Occasional social or experimental use of _____ acknowledged.

_X_ See below: Indication / admission of significant substance abuse problem.

Referred to Narcotic Evaluator ☐ Yes ☒ No          _____ Narcotic Evaluator's report attached

---

Additional information

THE DEFENDANT DESCRIBES HIMSELF AS A SOCIAL DRINKER.

HE DENIED THE USE OF ANY OTHER CONTROLLED SUBSTANCES OR DRUGS.

---

PHYSICAL / MENTAL / EMOTIONAL HEALTH:

_X_ No indication or claim of significant physical/mental/emotional health problem.

_____ See below:  Indication / claim of significant physical/mental/emotional health problem.

---

Additional information

-6- (CHAVEZ)

76P725B — Prob. 195C (Rev. 11/83)

PERSONAL HISTORY:
(CONTINUED)

SOURCES OF INFORMATION (this p..
DEFENDANT'S STATEMb.

| RESIDENCE | TYPE RESIDENCE | LENGTH OF OCCUPANCY | XXXXXXX/RENT | RESIDES WITH/RELATIONSHIP |
|---|---|---|---|---|
| | APARTMENT | 10 MOS. | $450 | WIFE, CHILD |

| RESIDENTIAL STABILITY LAST FIVE YEARS | CAME TO STATE / FROM | CAME TO COUNTY / FROM |
|---|---|---|
| GOOD | BORN | BORN |

Additional information

| MARRIAGE / PARENTHOOD | MARITAL STATUS | NAME OF SPOUSE XXXXXXX XXXXXXXXXX |
|---|---|---|
| | MARRIED | DONNA (ORTIZ) CHAVEZ |

| LENGTH OF UNION | NO. OF CHILDREN THIS UNION | SUPPORTED BY |
|---|---|---|
| 5/84 TO PRESENT | TWO | WIFE |

| NO. PRIOR MARRIAGES / COHABITATIONS | NO. OF CHILDREN THESE UNIONS | SUPPORTED BY |
|---|---|---|
| NONE | N/A | N/A |

| NO. OF OTHER CHILDREN | SUPPORTED BY |
|---|---|
| NONE | N/A |

Additional information

    THE DEFENDANT AND HIS WIFE HAVE LEGALLY MARRIED SINCE HIS

ARREST IN THIS MATTER. PREVIOUSLY, DEFENDANT INDICATES THAT THEY LIVED

TOGETHER FOR THREE YEARS, AND ARE THE PARENTS OF TWO DAUGHTERS, AGES

THREE AND ONE.

FORMAL EDUCATION:
    THE DEFENDANT LAS ATTENDED BONITA HIGH SCHOOL IN LA VERNE.
HE REACHED THE TENTH GRADE BEFORE QUITTING. HE HAS HAD NO FURTHER
EDUCATION OR VOCATIONAL TRAINING.

-7- (CHAVEZ)
76P725B - Prob. 19SC (Rev. 11/83)

**PERSONAL HISTORY:**
**(CONTINUED)**

SOURCES OF INFORMATION (th.    )
DEFENDANT'S STATEMENT

| EMPLOYMENT STATUS | [X] EMPLOYED<br>[ ] UNEMPLOYED | REFERRED TO WORK FURLOUGH<br>[ ] YES [X] NO | EMPLOYER AWARE OF PRESENT OFFENSE<br>[X] YES [ ] NO |
|---|---|---|---|

| XXXXXXX/LAST EMPLOYER / ADDRESS / PHONE<br>SAFEWAY STORES<br>YORK BOULEVARD<br>LOS ANGELES, CA | OCCUPATION<br>STOCK CLERK | PERIOD OF EMPLOYMENT<br>ONE YEAR | GROSS MONTHLY WAGE<br>$6.10 PER HR. |
|---|---|---|---|
| [ ] VERIFIED    [ ] UNVERIFIED | EMPLOYMENT STABILITY<br>LAST 5 YEARS<br>FAIR | TYPES OF PREVIOUS EMPLOYMENT<br>SHOE SALESMAN | |

Additional information

| FINANCIAL STATUS | INCOME STABILITY<br>UNK | NET MONTHLY INCOME<br>UNABLE TO REMEMBER | |
|---|---|---|---|
| PRIMARY INCOME SOURCE<br>EMPLOYMENT | SECONDARY INCOME SOURCE(S)<br>NONE | EST. TOTAL ASSETS<br>0 | EST. TOTAL LIABILITIES<br>0 |

MAJOR ASSETS / ESTIMATED VALUE

NONE

MAJOR LIABILITIES / ESTIMATED AMOUNT (MONTHLY)

NONE

Additional information

GANG ACTIVITY    [X] YES    [ ] NO          Name of Gang _____AVENUES_____ —

-8-  (CHAVEZ)

76P725B — Prob. 195C (Rev. 11/83)

GANG ACTIVITY:

1

2          THE DEFENDANT ADMITS TO BEING AN ACTIVE MEMBER OF THE

3   AVENUES GANG.

4   DEFENDANT'S STATEMENT:

5          THE DEFENDANT ADMITS TO HIS INVOLVEMENT IN THIS OFFENSE,

6   AND HE EXPRESSES HIS EXTREME REGRET.  HE SAYS THAT RIVAL MEMBERS

7   ATTEMPTED TO TAKE HIS CAR FROM HIS WIFE WHO WAS DRIVING IT AT THE

8   TIME.  THESE GANG MEMBERS FRIGHTENED THE DEFENDANT'S WIFE, BY

9   SURROUNDING HER AND MAKING THREATS.  THE DEFENDANT SAYS THAT HE

10  WENT TO SETTLE THIS PERSONALLY, AND AT THE TIME HE MADE THE DECISION,

11  THE CODEFENDANT, JESSIE CANTU, WAS AT HIS HOUSE, AND ACCOMPANIED HIM.

12          THE DEFENDANT SAYS HE REGRETS VERY MUCH WHAT HAS

13  HAPPENED.  HE REALIZES NOW THAT HE SHOULD HAVE GIVEN MUCH MORE THOUGHT

14  TO WHAT HE WAS DOING BEFORE HE TOOK ACTION.

15  INTERESTED PARTIES:

16          THE DEFENDANT HAS BEEN ADVISED OF HIS RIGHT TO HAVE

17  LETTERS OF CHARACTER REFERENCE SUBMITTED IN HIS BEHALF.

18  EVALUATION:

19          THIS DEFENDANT IS A 20-YEAR-OLD YOUNG MAN, WHO APPEARS

20  BEFORE THE COURT AS A RESULT OF HIS FIRST LAW ENFORCEMENT CONTACT.

21          THE OFFENSE IS EXTREMELY SERIOUS, HOWEVER.   SEEKING

22  RETALIATION FROM RIVAL GANG MEMBERS, THE DEFENDANT INSTEAD CAUSED

23  THE DEATH OF AN INNOCENT BYSTANDER.  THE VICTIM, A MEMBER OF THE

    -9- (CHAVEZ)
    76C692G - PROB. 5A - PS 8-82

1  ARMED FORCES, LEFT A WIDOW AND CHILDREN BEHIND.

2         THE DEFENDANT EXPRESSES HIS EXTREME REGRET AND NO

3  DOUBT HE IS SINCERE.  HOWEVER, AN OFFENSE OF THIS MAGNITUDE CONSTITUTES

4  A SERIOUS THREAT TO THE COMMUNITY AT LARGE, AND THE DEFENDANT MUST

5  THEREFORE BE REMOVED FROM IT.

6         SENTENCING CONSIDERATIONS:

7         FACTORS IN AGGRAVATION ARE:

8         1.  THE CRIME INVOLVED GREAT VIOLENCE, AND CAUSED GREAT
              BODILY HARM.
9

10        2.  THE VICTIM WAS PARTICULARLY VULNERABLE.

11        FACTORS IN MITIGATION ARE:

12        NONE.

13        AS THERE ARE NO FACTORS MENTIONED IN MITIGATION, THE

14  COURT MAY WISH TO CONSIDER THE HIGH-BASE TERM.

15  RECOMMENDATION:

16        IT IS RECOMMENDED THAT PROBATION BE DENIED AND DEFENDANT

17

18

19

20

21

22

23

-10-  (CHAVEZ)

1  BE SENTENCED TO STATE PRISON WITH PREIMPRISONMENT CREDIT OF 646 DAYS.

2  RESPECTFULLY SUBMITTED,

3  BARRY NIDORF,
   ACTING PROBATION OFFICER

4

5  BY _____ FOR WALLACE

6  KATHRYN WALLACE, DEPUTY
   CENTRAL ADULT INVESTIGATIONS

7  974-9352

8  READ AND APPROVED                    I HAVE READ AND CONSIDERED
                                        THE FOREGOING REPORT OF THE
9                                       PROBATION OFFICER.

10 _____

11 NATHANIEL BOWIE, JR./SDPO

12 (SUBMITTED:   6/8/84)           JUDGE OF THE SUPERIOR COURT
   (RECEIVED:    6/8/84)
13 (TYPED:       6/8/84)
   KW:DMR (6)
14

15

16

17

18

19

20

21

22

23

   -11- (CHAVEZ)

**SECTION 5**

## SUPERIOR COURT OF THE STATE OF CALIFORNIA
### FOR THE COUNTY OF LOS ANGELES

The People of the State of California,

Plaintiff,

v.

SANTOS CORDERO CHAVEZ
JESSIE CANTU

Defendant.

No.   A382607

## INFORMATION

182 P.C. - 1 Count
187 P.C. - 1 Count
664/187 P.C. - 2 Counts

The said  SANTOS CORDERO CHAVEZ and JESSIE CANTU

are
~~is~~/ accused by the District Attorney of and for the County of Los Angeles, State of California, by this

information, of the crime of  CONSPIRACY TO COMMIT MURDER, in violation of Section 182
Penal Code

a felony, committed as follows:  That the said  SANTOS CORDERO CHAVEZ and JESSIE CANTU

on or about the   ~~7th~~   *7/8 4/82*   day of September, 1982 at and in the County of Los Angeles, State of California,
did willfully and unlawfully conspire together and with another person and persons
whose identity is unknown to commit the crime of murder, in violation of
Section 187 of the Penal Code, a felony; that pursuant to and for the pur-
pose of carrying out the objects and purposes of the aforesaid conspiracy,
the said defendants committed the following overt act and acts at and in
the County of Los Angeles:

### OVERT ACT NO. 1

Santos Chavez and Jessie Cantu armed themselves with a rifle and pistol.

### OVERT ACT NO. 2

Santos Chavez, Jessie Cantu, and other persons drove to Maceo Street.

(SEE ATTACHED FOR OVERT ACTS and SPECIAL ALLEGATIONS)

Filed in open Superior Court of the State of
California, County of Los Angeles, on motion
of the District Attorney of said County.

DATED: *11-10-82*

JOHN. J. CORCORAN, Clerk

By

Deputy

JOHN K. VAN DE KAMP, District Attorney
for the County of Los Angeles, State of California

By ...................................................
Deputy

## OVERT NO. 3

Santos Chavez manuevered his vehicle to the wrong side of Maceo Street and stopped in front of Ronald Rivas, Joaquin Lopez, Ralph Jimenez and others.

## OVERT ACT NO. 4

Santos Chavez and Jessie Cantu fired guns at Ronald Rivas, Joaquin Lopez and Ralph Jimenez.

---

JOHN K. VAN DE KAMP, District Attorney

for the County of Los Angeles, State of California

By............................................................................

Deputy

Filed in open Superior Court of the State of California, County of Los Angeles, on motion of the District Attorney of said County.

DATED:

JOHN J. CORCORAN, Clerk

By_____
                    Deputy

76I550A3 - Rev. 174  141

## COUNT II

For a further and separate cause of action, being a different offense of the same class of crimes and offenses as the charge     set forth in     Count I

hereof,

the said     SANTOS CORDERO CHAVEZ and JESSIE CANTU

is accused by the District Attorney of and for the County of Los Angeles, State of California, by this                     information, of the crime of MURDER, in violation of Section 187 Penal Code

a felony, committed as follows: That the said  SANTOS CORDERO CHAVEZ and JESSIE CANTU

on or about the   24th      day of  July, 1982              at and in the County of Los Angeles, State of California, did willfully and unlawfully    and with malice aforethought murder ~~Joaquin Lopez~~, a human being.
RONALD RIVAS

It is further alleged that in the commission and attempted commission of the above offense the said defendants Santos Cordero Chavez and Jessie Cantu, personally used a firearm, to wit, a rifle and handgun, within the meaning of Penal Code Section 12022.5 and 1203.06(a)(1).

Filed in open Superior Court of the State of California, County of Los Angeles, on motion of the District Attorney of said County.

DATED:

JOHN J. CORCORAN, Clerk

By...........................................................
                                        Deputy

JOHN K. VAN DE KAMP, District Attorney

for the County of Los Angeles, State of California

By...........................................................
                                        Deputy

**SECTION 6**

FILED

FEB 06 2004

KIRI TORRE
Chief Executive Officer/Clerk
Superior Court of County of Santa Clara
BY _____ DEPUTY

SUPERIOR COURT OF CALIFORNIA

COUNTY OF SANTA CLARA

|  |  |
|---|---|
| In re | No.: 108084 |
|     KAILASH CHAUDHARY | ORDER |
| On Habeas Corpus | |

For individuals who pled guilty to second degree murder prior to the passage of Proposition 89, which led to the enactment of PC § 3041.2, the application of this provision to them violates the Due Process Clause. Accordingly the writ must be granted in this case and the California Department of Corrections directed to release Petitioner on parole forthwith.

Petitioner gave the state the substantial benefit of a murder conviction, without protracted proceedings, by waiving all defenses and convicting himself by a plea of guilty. Central to this contract[1] was the understanding that Petitioner would be released on

---

[1] (People v. Cunningham (1996) 49 Cal.App.4th 1044, 1047; "A plea agreement is, in essence, a contract between the defendant and the prosecutor to which the court

1  parole if he met the suitability criteria, served sufficient time per

2  the Board's matrix, and was actually granted parole by the Board.

3  The courts and the prosecution are fully aware of, and rely on, the

4  fact that when a person enters a plea to murder they are focused on,

5  and motivated by, the prospect of parole pursuant to the process then

6  in place.   (See *Brown v. Poole* (2003) 337 F.3d 1155 citing *INS v.*

7  *St.Cyr* (2001) 533 U.S. 289, 322-323, 325: "inferring based on general

8  analysis of what would motivate defendants to accept plea agreements

9  that particular defendant 'almost certainly' relied on availability

10  of particular relief.")

11       It cannot be denied that PC § 3041.2 has nullified the

12  consideration that the state gave for a particular plea bargain.

13  Petitioner does have a vested right in the procedure in place at the

14  time of his plea because it is what the state promised him in

15  exchange for the valuable consideration of his guilty plea.[2]  The

16  California Supreme Court has stated that invalid or illusory

17  "'concessions'" offered by the state "constitutes a species of

18  fraud."  (*In re Ibarra* (1983) 34 Cal.3d 277, 289.)  It is just as

19  true that when the state nullifies the benefit of the bargain after

20  the fact, it has also perpetrated "a species of fraud."  At stake in

21  these cases is the honor of the government and public confidence in

22  the fair administration of justice.  "The reciprocal nature of a plea

23  bargain agreement mandates that either party to the agreement be

24  entitled to enforce the agreement in a situation where the party is

25

26  consents to be bound.")
[2] "When the State enters a plea bargain with a criminal defendant, it receives
27  immediate and tangible benefits, such as promptly imposed punishment without the
    expenditure of prosecutorial resources."  (*Newton v. Rumery* (1987) 480 U.S. 386,
    394.)
28

2

1   deprived of the benefit of the bargain.  Failure to hold a [party] to

2   the terms of his bargain would undermine the integrity of the

3   judicial process."  (*People v. Vargas* (2001) 91 Cal.App.4th 506, 533-

4   534, quoting *People v. Collins* (1996) 45 Cal. App. 4th 849, 863-864.)

5        Although labeling the Governor's new power "merely" "an

6   additional level of discretionary review," *In re Rosenkrantz* (2002)

7   29 Cal.4th 616, 640[3], may suffice to defeat an ex post facto claim,

8   it _defines_ a Due Process Clause violation under these circumstances.

9   It has long been the law with regard to a plea bargain that the State

10  must "keep its word," *People v. Mancheno* (1982) 32 Cal.3d 855, 860,

11  and may not try to alter events or considerations in their favor.

12  (See *Santabello v. New York* (1971) 404 U.S. 257, 261: plea bargain

13  contracts "presuppose fairness in securing agreement between an

14  accused and a prosecutor."  And see *People v. Leroy* (1984) 155

15  Cal.App.3d 602, 606: "Plea Bargain Must Be Specifically Enforced.")

16       Petitioner's plea to murder cannot be interpreted as other than

17  an exchange for the guarantee of parole if, as was the law, the Board

18  granted parole.  And it cannot be reasonably disputed that the

19  Governor's use of a subsequently enacted law abrogates Petitioner's

20  expectations and rights.  "It is clear from *Santabello* [*supra,*] that

21  due respect for the integrity of plea bargains demands that once a

22  defendant has carried out his part of the bargain the Government must

23  fulfill its part."  (*Brown v. Poole, supra.*)

24       For the purposes of the above analysis it is irrelevant whether

25

26  [3] Though the validity of this decision has been cast into doubt given the United
    States Supreme Court's reversal of the California Supreme Court's "too narrow" ex
    post facto understanding which focused on labeling changes as "procedural" rather
    than on an examination of their impact on fundamental fairness.  In *Stogner v.*

27  *California* (2003) 156 L.Ed.2d 544 the United States Supreme Court invalidated

28

3

1  the Governor's position at the time he reversed Petitioner's parole

2  grant is characterized as a "no-parole policy" or merely an

3  individual "more stringent and cautious than the Board." (*Rosenkrantz*

4  at p. 686,). Even if Petitioner's case was the only plea bargain

5  that had ever been nullified by the exercise of § 3041.2 power, it

6  violated Petitioner' <u>individual</u> right to due process.

7      Dispositive on this point is the case of *INS v. St.Cyr* (2001)

8  533 U.S. 289 [150 L.Ed.2d 347] in which the United States Supreme

9  Court held vested rights must be honored, and the law applicable at

10  the time of the plea bargain applied. As outlined in the order to

11  show cause in this case, in *St.Cyr* the Supreme Court explained, "Plea

12  agreements involve a *quid pro quo* between a criminal defendant and

13  the government. In exchange for some perceived benefit, defendants

14  waive several of their constitutional rights (including the right to

15  a trial) and grant the government numerous tangible benefits, such as

16  promptly imposed punishment without the expenditure of prosecutorial

17  resources." Because a plea agreement is a binding contract, it is

18  unacceptable for the state to reap the "benefit of the[] plea

19  agreement" and then impose "significant and manifest" detriments on

20  the defendant retroactively. This "would surely be contrary to

21  familiar considerations of fair notice, reasonable reliance, and

22  settled expectations." This "clearly attaches a new disability, in

23  respect to transactions or considerations already past." (Quotations

24  from *St. Cyr* at 150 L.Ed.2d 375-378.)[4]

25

---

26  *People v. Frazer* (1999) 21 Cal.4th 737 noting "a long line of authority" and "the
   apparent unanimity of pre-*Frazer* case law."
   [4] To mischaracterize this, as Respondent does, as an ex post facto claim and assert
27  it is precluded by *Rosenkrantz* is entirely flawed. The *St. Cyr* court never once
   mentioned the ex post facto clause and instead grounded its decision in the due

28

4

1    The "perceived benefit" in this case was parole if the Parole

2  Board found Petitioner suitable.  It does not matter that parole

3  decisions are discretionary because the *St. Cyr* Court made its

4  holding in the context of a similarly discretionary benefit.  The

5  decision in *St. Cyr* was based in large part on the earlier case of

6  *Landgraf v. USI Film Products* (1994) 511 U.S. 244, 266, 128 L.Ed.2d

7  229, 252-253, which pointed out that the "antiretroactivity principle"

8  applicable here relates to the "Due Process" clause and the

9  "Obligation of Contracts" clause.

10    It is also noteworthy that the case of *Mallett v. North Carolina*

11  (1901) 181 U.S. 589, 45 L.Ed. 1015, relied upon by *Rosenkrantz, In re*

12  *Arafiles* (1992) 6 Cal.App.4th 1467, and *Johnson v. Gomez* (1996) 92

13  F.3d 964, came to its conclusion because those "defendants had no

14  'vested rights'" that were impacted by the new law.  In this case,

15  however, Petitioner did have a vested right to parole if granted by

16  the Parole Board because that was the sole benefit of his plea

17  bargain.

18    Although all three of the above cited United States Supreme Court

19  cases were decided under different circumstances, their principle is

20  controlling here.  While the express purpose of the voters in passing

21  Proposition 89 was to allow the Governor to operate retrospectively,

22  the drafters of the proposition did not consider the impact on plea

23  bargains.  In those instances, where retroactive application is

24  proposed, application of the new law is a violation of the United

25

26  process clause as applicable to plea bargains.  Furthermore, the *Rosenkrantz* Court
    did not have before it a plea bargain situation and therefore did not consider this

27  factor.

28

5

1  States Constitution.  Accordingly, Penal Code § 3041.2 may only be

2  applied, consistent with the Due Process Clause, to individuals who

3  were convicted by way of a trial or who committed their crime after

4  its passage.

5

6      This Court will additionally note that even if Petitioner had

7  pled guilty after § 3041.2 was enacted, the Governor's decision in

8  this case violated the due process/plea bargain principles

9  articulated above in another way.  Since the state agreed to, and did

10  set, Petitioner's crime as second degree murder, the Governor is

11  precluded from recharacterizing it as first degree murder and then

12  relying on those characterizations of the crime as proof that the

13  crime was "especially" cruel, grave and callous.  While the

14  *Rosenkrantz* court stated that the Governor is free to disregard a

15  **jury's** conclusion and reinterpret the crime as first degree

16  murder/lying in wait (and then forever deny parole) such is precluded

17  when there is a plea bargain.  By way of the plea bargain the

18  executive branch is committed and bound by the agreement that the

19  crime is no more than second degree murder.  The Constitution will

20  not allow the breach of a contract, which stipulated that a crime is

21  second degree murder, by a Governor who opines that the crime must be

22  punished as first degree murder thereby violating the terms of the

23  plea.  Without this recharcterization there is no evidence to support

24  the Governor's decision in this case.[5]

25

26  [5]  The Governor's purported concerns regarding Petitioner's desire to make
contact with the daughter he gave up for adoption carry no weight.  To the extent
the Governor feels Petitioner would be a danger to his daughter there is no

27  evidence supporting this speculation.  All the evidence shows that Petitioner still
loves his daughter and this is his sole motive for seeking contact.  To the extent

28

1    Finally, while normally fiscal concerns are beyond a court's
2  mention, given the current budget crisis and enormous deficit, which
3  has resulted in severe cutbacks even in the court and criminal
4  justice system, we no longer have this luxury.  Recently, in *People*
5  *v. Abbaszadeh* (2003) 106 Cal.App.4th 642, 650, after the court found
6  a repeated pattern of deliberate judicial error, it concluded its
7  opinion by lamenting that; "the needless expense to the public caused
8  by retrials is appalling."  (See also *People v. Butram* (2003) 30
9  Cal.4th 773, 791, Justice Baxter's concurrence to his own opinion, in
10 which he wrote separately regarding "our already-overextended court
11 system" and these times of "unprecedented fiscal difficulties."  And
12 see *People v. Heard* (2003) 31 Cal.4th 946, 968 in which the Chief
13 Justice lamented needless instances when the "public fisc is
14 squandered.")

15   This Court feels obliged to comment on the similarly appalling
16 and needless expense to the public caused by the extraordinary number
17 of instances wherein the Governor or the Board has voided plea
18 agreements and has recharacterized the facts of a crime so as to
19 convert punishment to life without parole.  First, there are the
20 hundreds of habeas corpus petitions, at all levels of the court
21 system, brought by those who have been directly affected by the
22 politically infected parole process, and its "no-parole" policy.
23 Such a policy is needlessly draining resources.  Secondly, the prison

24
25  the Governor feels that Petitioner's emotions are misguided or are not in the best
    interest of the child, such can be dealt with by way of special parole conditions
    and, in any event, is not a legitimate factor for denying parole.  The Court in
26  *Rosenkrantz* repeatedly stated that the parole suitability decision must be made on
    the basis of "specified factors."  (*Rosenkrantz* at 656, 658, 663, 665, 667, 677.)
    The Governor violated this rule by articulating "concerns" which, although
27  supported by some evidence, are neither the statutory "specified factors," nor
    otherwise relevant to the "unreasonable dangerousness" question.
28

1    system incurs additional costs in housing and the provision of health
2    care for the persons confined within the state prison system as they
3    advance into old age.   The overwhelming weight of the evidence
4    demonstrates that aging prisoners do not present a viable threat to
5    the public.

6        The effect of this policy is even felt in currently pending
7    cases.   Every competent defense attorney tells their client that
8    there is no benefit in pleading guilty to any life sentence because
9    it will, in reality, mean life without the possibility of parole.
10   Cases that would have justly been settled with a plea bargain are
11   being forced to trial.   Every defendant knows that he has nothing to
12   lose by a trial and nothing to gain by a plea bargain.   Since these
13   are the most serious cases, the trial court expenses are at their
14   highest.   The consumption of resources at the appellate level will
15   also be large.   While there would have been no appeal after a guilty
16   plea, appeals following a jury verdict, taken as of right, are many
17   and involved.

18       "Plea bargaining is essential to the efficient administration of
19   justice."   (*People v. Armendariz* (1993) 16 Cal.App.4th 906, 911.)
20   The current parole policies and processes have taken away this
21   crucial tool at a most inopportune time.

22
23
24   DATED:  _Feb 5_ , 2004        _James C. Emerson_
25                                  JAMES C. EMERSON
                                    JUDGE OF THE SUPERIOR COURT
26   cc:  Petitioner's Attorney (Allen Schwartz)
          Attorney General (Pamela Hooley)
27        CJIC
28

**PROOF OF SERVICE BY MAIL**
**BY UNREPRESENTED PERSON IN STATE CUSTODY**
(FR CivP Rule 4 & 5)
(C.C.P. §§§§ 1011, 1012, 1013, 1013(a), 2015,5)

I, ____Santos Chavez_____, declare:

I'm over 18 years of age, I'm a party to this action. I'm reside in CORRECTIONAL TRAINING FACILITY, STATE PRISON in the County of Monterey, State of California. My prison address is:

           Santos Chavez_____, CDCR #: C-87968___
           CORRECTIONAL TRAINING FACILITY
           P.O. Box 689, Housing# _ED-178-Up_
           Soledad, CA 93960-0689

On --September-23,-2007 I served the attached

  EXHIBITS FOR PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS

_____(BOUND, SUBMITTED AND LODGED SEPARATELY)_____

by placing true and correct copies in a postage prepaid sealed envelope, seal signed by prison staff, who then deposited said envelope in the institutional mail collection system, envelopes were addressed as follows:

CLERK of the UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
450 Golden Gate Avenue
P.O. Box 36060
San Francisco, CA 94102

I declare under penalty of perjury that the foregoing is true and correct. Executed on____September 23, 2007_____.

                              Santos Chavez            PRO SE

Pursuant to Huston v. Lack, 487 U.S. 266, 270-71, 101 L.Ed.2d 245 (1988); Huizar v. Carey, 273 F.3d 1220 (9th Cir. 2001); and Rule 4(c) FR Civ. P, [Inmate legal documents are deemed filed on the date they are delivered to prison staff for processing and mailing via the institutional legal mail collection system procedures.