# EXHIBIT F

# ORIGINAL

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

COURT OF APPEAL - SECOND DIST.

# FILED

JUL 11 2007

JOSEPH A. LANE _____ Clerk

E. AMOS _____ Deputy Clerk

In re

SANTOS CHAVEZ

on Habeas Corpus.

B199944

(Super. Ct. No. A382607)

**ORDER**

THE COURT*:

We have read and considered the petition for writ of habeas corpus filed on June 21, 2007.

The petition is denied as there is "some evidence" supporting the Board of Parole Hearing's February 2006 determination that petitioner was unsuitable for parole. (See *In re Rosenkrantz* (2002) 29 Cal.4th 616, 658.)

*COOPER, P.J.                    RUBIN, J.                    FLIER, J.

Copy

REC'D CLS DOCKETING

AURORA

MC-275

| | |
|---|---|
| Name | Santos Chavez |
| Address | P.O. Box 689  ED-052-Up |
| | Soledad, CA 93960-0689 |

CDC or ID Number    C-87968

## CALIFORNIA COURTS OF APPEAL

## SECOND APPELLATE DISTRICT

(Court)

PETITION FOR WRIT OF HABEAS CORPUS

SANTOS CHAVEZ

Petitioner

vs.

BEN CURRY, Warden (A), et al.

Respondent

No. _____

(To be supplied by the Clerk of the Court)

**EXHIBITS BOUND AND SUBMITTED SEPARATELY**

## INSTRUCTIONS—READ CAREFULLY

- If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.

- If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.

- Read the entire form *before* answering any questions.

- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.

- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

- If you are filing this petition in the Superior Court, you need file only the original unless local rules require additional copies. Many courts require more copies.

- If you are filing this petition in the Court of Appeal, file the original and four copies of the petition and, if separately bound, one copy of any supporting documents.

- If you are filing this petition in the California Supreme Court, file the original and ten copies of the petition and, if separately bound, two copies of any supporting documents.

- Notify the Clerk of the Court in writing if you change your address after filing your petition.

- In most cases, the law requires service of a copy of the petition on the district attorney, city attorney, or city prosecutor. See Penal Code section 1475 and Government Code section 72193. You may serve the copy by mail.

Approved by the Judicial Council of California for use under Rule 60 of the California Rules of Court [as amended effective January 1, 2005]. Subsequent amendments to Rule 60 may change the number of copies to be furnished to the Supreme Court and Court of Appeal.

Page one of six

Form Approved by the
Judicial Council of California
MC-275 [Rev. July 1, 2005]

PETITION FOR WRIT OF HABEAS CORPUS

Penal Code, § 1473 et seq.;
Cal. Rules of Court, rule 60(a)

American LegalNet, Inc.
www.USCourtForms.com

This petition concerns:

☐ A conviction                   ☒ Parole

☐ A sentence                     ☐ Credits

☐ Jail or prison conditions      ☐ Prison discipline

☒ Other (specify):  Board's decision to deny parole is not supported by some evidence.

1. Your name:  Santos Chavez

2. Where are you incarcerated?  Correctional Training Facility - East Dormitory

3. Why are you in custody?  ☒ Criminal Conviction   ☐ Civil Commitment

Answer subdivisions a. through i. to the best of your ability.

a. State reason for civil commitment or, if criminal conviction, state nature of offense and enhancements (for example, "robbery with use of a deadly weapon").

   Second Degree Murder and armed with a firearm.

b. Penal or other code sections:  PC § 187, § 12022.5

c. Name and location of sentencing or committing court:  Superior Court of Los Angeles,County

State of California - Dept. 130

d. Case number:  A382607

e. Date convicted or committed:  May 23, 1984

f. Date sentenced:  June 12, 1984

g. Length of sentence:  17 to Life

h. When do you expect to be released?  Expected to have been released prior to 12/07/97

i. Were you represented by counsel in the trial court?  ☒ Yes.  ☐ No.  If yes, state the attorney's name and address:

   Mitchell Egers W., 205 S. Broadway #209, Los Angeles, CA 90012-3607

4. What was the LAST plea you entered? (check one)

☐ Not guilty   ☒ Guilty   ☐ Nolo Contendere   ☐ Other:

5. If you pleaded not guilty, what kind of trial did you have?

☐ Jury   ☐ Judge without a jury   ☐ Submitted on transcript   ☐ Awaiting trial

MC-275 [Rev. January 1, 1999]                PETITION FOR WRIT OF HABEAS CORPUS                Page two of six

INTRODUCTION

Petitioner, Santos Chavez, declares the Board of Parole Hearings (Board) reason, possible differing versions of the life offense might show a lack of remorse, to deny parole during petitioner's 8th parole consideration hearing held February 09, 2006 (Hearing Transcripts submitted as Exhibit A)(Exhibits Submitted Separately), is not supported by "some evidence" that petitioner currently poses a current risk to public safety, in light of his 24 years of continued incarceration on a 17 to life sentence which resulted from a plea of guilty to one count of second degree murder, during which time the facts of petitioner's offense were agreed upon by the Los Angeles Deputy District Attorney (DDA), and plead guilty to by petitioner.

Petitioner on June 19, 2006 filed a petition for writ of Habeas Corpus in the California Superior Court, case no. BH004075, challenging the Board's denial and procedures, said court denied petitioner's petition on May 4, 2007 claiming that the Board's decision was supported by some evidence, see (Ex. G, Section 3).

Specifically the Superior Court found the Board's decision was supported by finding that "multiple victims were attacked, injured or killed". This finding is contrary to the Plea agreement promise made by DDA Pamela Springer, when she promised to dismiss all other counts for guilty plea to one count of second degree murder. At the change of plea hearing (see Exhibit E, Section 1) DDA Springer and petitioner engaged in the following colloquy:

Ms. Springer: "Yes, Your Honor. Pursuant to our discussion between counsel and myself, the defendant is prepared to at this time, it is my understanding, plead guilty to count II of this information, murder. He is prepared to admit to the allegation in return for which the remaining counts will be dismissed.

2 a

There will be a stipulation that there is a factual basis for a finding that the murder is in the second degree." (Id. at 2).

Ms. Springer: "Mr. Chavez, you understand that counts I, III, and IV will be dismissed at the time of probation and sentencing provided you do go forward?

Do you understand that?

The Defendant: Yes." (Id. at 6).

Ms. Springer: "Now, when you do go to state prison, when the parole board determines that you are ready for release back into the community, you will be placed on parole for a period of five years.

If during that time you violate any condition of parole, you can be returned to state prison for up to one year.

Do you understand this?

The Defendant: Yes. (Id. at 7).

Ms. Springer: "Mr. Chavez, to information no. A38207, Count II, charging you with a violation of section 187 of the penal code, murder, in that you did willfully and unlawfully and with malice aforethought kill Ronald Rivas, a Human Being, how do you plead?

The Defendant: Guilty.

Ms. Springer: And do you admit, sir, that in the commission of that offense, you personally used a firearm?

The Defendant: Yes.

Ms. Springer: In this particular offense, that you used a rifle, is that correct?

The Defendant: Yes? (Id. at 10)

When, as here, promises are made by the state attorney in exchange for a plea of guilty, those promises are binding on the Board, see Brown v. Poole, 337 F.3d 1155 (9th Cir. 2003); Buckley v. Terhune, 441 F.3d. 688 (9th Cir. 2005) cert. denied Tilton v. Buckley, U.S. Supreme Ct. no 05-1623, 2007 DJDAR 5499.

Contrary to the findings of the Board, erroneously upheld by the superior court, there is "NO EVIDENCE" to support a multiple victim finding, the state attorney entered into a plea agreement with petitioner that he would be convicted of one count of second degree murder, nothing more and nothing less.

Assuming arguendo the Board could ignore plea agreements, the above finding is also among the "immutable" facts of crimes which, given the lapse of 2[4] years and the exemplary rehabilitative gains made by petitioner over time, continued reliance on the aggravating facts of the crime no longer amount[s] to 'some evidence' supporting denial of parole, see In re Barker, 2007 DJDAR 7548, 7558.

Next the superior courts claim that the Board found petitioner was "unconcerned about how many people were hurt or killed" is a complete misstatement of the Board's factual record.

The Board was concerned that [at the time of the shooting] many individuals were present and luckily there weren't more casualties, which went to the point that the "offense" was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering, see (Exhibit A, pg 112), another factor that will never change, notwithstanding the fact that petitioner plead guilty, expressed remorse then and now, and continues to state his concern over his actions and the danger his actions posed to all the many people were present, hurt or killed, a fact not disputed by the Board. The Board read into the record portions of three psych reports, briefly stated: See Exhibit A, starting on page 71, "we have April 15th of 2005. And that's authored by Zika. She's the senior supervisor in psychology. And goes over various issues. Identifying information, marital issue, the parole plans, possibly the current mental status with treatment needs. And I didn't notice any problems there. Does make a comment here that is "his judgment is sound and his insight is good." On page 72 they read into the record: "Inmate Chavez feels the full

2 c

impact of his terrible decision to shoot somebody resulting in a man's death.
He stated today is would've been much better to have called the police and let
them handle the problem.  Inmate Chavez feels genuine remorse for the victim,
the victims family and for his own family." '

On page 74, petitioner explains to the Board that he feels terrible about
the offense and is very fortunate that no one else died.

On pages 76, 78, 79 assessment of dangerous evaluations in three different
psych reports between 2000 and 2005 all found petitioner's potential for
violence in the community to be no more then the average citizen and a suitable
candidate for parole.  (All eight psych reports are submitted under Exhibit C).

Lastly the superior courts uphold of the Board's finding that petitioner
has inconsistent version's of the offense is not supported by the entire record,
and cannot be "some evidence" to support a denial of parole.

During the Board Hearing, Ex A, DDA Yglecias, in an "non-adversarial"
manner (Id. at 90), proceeds to retry petitioner (Id. 86-99).  Her major concern
was an unsworn, unreliable, unsigned, alleged statement made prior to petitioner
being charged for his offense.

During sentencing of petitioner, the record shows DDA Springer accepting
petitioner's factual version of events based not on just the word of petitioner,
but on the confession made by petitioner's crime partner (Mr. Cantu) as follows:

Ms. Springer: "Yes, Your Honor.  Very briefly as to Mr. Cantu's
cooperation.  From the moment he was apprehended in Texas, he immediately laid
out both his and his co-defendant's complicity in the murder.  He waived
extradition and came back to California voluntarily.

Though it was the type of a midnight hour type of deal worked out with
Mr. Cantu, he nevertheless did agree to testify against this defendant in return
for merely staying the use allegation.

As to whether or not the other side fired first and as a result two people

2 ℓ

ended up wounded and one dead, that evidence was in conflict. That evidence would have to go before a jury, and it would be up to the jury to determine whether or not which fired or who fired first.

But the fact remains, regardless of who actually fired first, that this defendant and his friend, Jessie Cantu, armed themselves with loaded firearms, a rifle, a hand gun, and went looking for members from Cypress Park, not particularly the ones who had harassed his wife, but he went looking.

They went looking for members of Cypress Park in order to retaliate for the harassment of his wife. As a result of the hunt, Mr. Ronald Rivas, a marine who was home on leave without absolutely no evidence that he was involved in any harassment of the defendant's wife, he ended up dead, the victim of a bullet.

So, Your Honor, in submission, the People feel that this defendant does not deserve to have the stay -- excuse me. That two years stayed. There is no basis both in fact, reason, or logic to stay that additional two years. We'd submit it. (Ex E, Section 2 pgs 7-8).

Petitioner's version of his offense has remained the "SAME" since his admission of guilt May 21, 1984 and sentence June 12, 1984, in that he and his crime partner (Mr. Cantu) armed themselves with a handgun and a rifle and went to confront the men who attempted to attack petitioner's pregnant wife, as shown above these facts were undisputed 24 years ago, and accepted by the Los Angeles Superior Court Judge and the Los Angeles Deputy District Attorney.

Thus, now some 24 years later, a contrary allegation by a DDA at petitioner's parole hearing, who appears not to pleased with the plea of guilty agreement her office made 24 years ago, retires the case. This retrial is a clear attempt to provide the Board "some evidence" to deny parole, which has blindly been upheld by the Superior Court. The evidence, an unsworn, unsigned, self-serving, untrue statement, that was never used during trial proceedings, cannot be used as "some evidence" to support a finding that petitioner currently

2e

poses a unreasonable risk to public safety. Additionally trained professionals have found petitioner does not pose an unreasonable risk to public safety if released on parole. Thus, petitioner's hearing was transformed from a fair hearing into an unfair, arbitrary hearing in violation of petitioner's due process rights, by a highly questionable tactic by a new DDA.

NONE [emphasis added] of the reasons given by the Board to deny parole are supported by "any evidence" that petitioner would pose an unreasonable risk to public safety if released on parole after serving over 24 years in prison on a 17 to life sentence. The Board's decision actually contradicts their denial of parole, some of the comments made by the Board are as following:

"I'll make some comments and then read the decision. You know, we were very favorably impressed with you. Your programming is great. It's just we have – we're left with a lot of unanswered questions. And whenever we are in that type of situation we have to err on the side of caution." (Ex A, pg 111).

And the impetus for the crime was the inmate's wife at the time, Donna, had encountered some individuals from the Cypress Pard gang at a grocery store. They threatened her and she, in turn, told the inmate, her husband, who got upset over this and decided to basically take the matters into his own hands and discourage the gang members from that type of activity and he ended up shooting one and wounding two others." (Id. 113)

"In terms of your institutional behavior, you do have an excellent record, as I mentioned, of programming. You do seem to have participated in as many self-help and therapy programs as we could've asked you to do. And you do have a – is it three vocations?" (Ibid.)

The Board's record clearly shows petitioner is suitable for parole, their decision to deny parole is not support by "some evidence".

2 f

Petitioner has a right to a fair parole consideration hearing, the Board violated this right, petitioner has a protected liberty interest in parole, the Board violated this protected right, see <u>Irons v. Carey</u>, (2007) 479 F.3d 658, 2007 U.S. App. Lexis 5198; petitioner's minimum eligible parole date past on March 7, 1993 see (Ex. A, pg 1) and petitioner exceeded his actual minimum term of 17 years on September 1, 1997 [arrested 9/1/1982 + 17 years = 9/1/1997], notwithstanding the plea agreement entered into by petitioner, which promised he would be held accountable for one count of second degree murder, all other charges were dismissed and promised that when the parole board determined petitioner was ready for release petitioner would be placed on parole for five years.

THEREFORE: Being there is "NO EVIDENCE" to support the Board's decision that petitioner actually poses a risk to public safety if released on parole, all the "EVIDENCE" in the record supports parole, and he has past both his minimum terms, and honored all the terms of his plea agreement, and that the Board was to release him, remain back to the Board would be a futile act, the only remaining remedy is to order respondent to parole him forthwith.

## CALIFORNIA STATUTORY AND REGULATORY SCHEME FOR PAROLE

Beginning with <u>In re Elkins</u>, (2006) 144 Cal.App.4th 475, 487, "with an overview of the law as summarized in <u>In re Rosenkrantz</u>, (2002) 29 Cal.4th 616, and two subsequent decisions, <u>In re Scott</u>; (2004) 119 Cal.App.4th 871 (Scott I), and <u>In re Scott</u>, (2005) 133 Cal.App.4th 573 (Scoot II), and other constitutional, code and regulatory framework.

"Parole suitable decisions for inmates serving indeterminate life terms are made, in the first instance, by the Board. (<u>Scott I</u>, at 884-885). While the Board has broad discretion, they must normally set parole release in a manner

that provides uniform terms for offenses of similar gravity and magnitude with respect to the public safety (ibid; PC § 3041, subd. (a)), and they must set a parole date unless it determines that the gravity of the current convicted offense or offenses, or their timing and gravity, are such that public safety requires a more lengthy period of incarceration (Scott I, at 885; PC § 3041, subd. (b)). That decision is guided, in turn, by a regulation directing the Board's consideration to six nonexclusive circumstances tending to show unsuitability and nine tending to show suitability, and a matrix table to be used to set uniform terms for where the particular murder fits, in terms of its relative seriousness see (Cal. Code Regs., tit. 15, 2400 et seq.); (Scott I at 888, 897); (Elkins, 487, fn.).

PC § 3041, Scott I, Scott II, found the only "statutory" factor required to be considered, and overarching consideration, is "public safety".

In determining risk to "public safety" the regs., (ibid) require that "all relevant, reliable information available to the panel shall be considered in determining suitability for parole.

The relative importance of each unsuitable or suitable factors is left to the judgment of the panel, (Scott II, at 592).

The goal of PC § 3041, is that "release on parole is the rule, rather than the exception. This section requires that the Board set a release date unless it determines that "consideration of the public safety requires a more lengthy period of incarceration" (In re Smith, (2003) 114 Cal.App.4th 343, 351; accord In re Lee, (2006) 143 Cal.App.4th 1400, 1405 [petitioner sentenced to indeterminate life term is normally entitled to parole when he does not pose an unreasonable risk to public safety"]).

Petitioner, being pro per, asks the court to use less stringent standards than formal pleadings drafted by lawyers, Haines v. Kerner, (1972) 404 U.S. 519, also use close judicial scrutiny when judging petitioner's parole denial, since

he committed his offense over 24 years ago, exceeded his 17 year minimum term by 9 years, Scott II, Lee, Elkins and Irons, using all above framework for review.

STANDARD FOR REVIEW

In denying petitioner's habeas corpus petition, the superior court did not conduct an evidentiary hearing, this being an original proceeding, this court should review the record independently (Scott I at 884). And the review is under the undisputed "some evidence" standard (Rosenkrantz at 658; Elkins, at 488 ["some evidence" standard designed to ensure minimum procedural due process protections].

While the court is precluded from resolving conflicts in the evidence, weight to be given evidence, or the manner specific factors relevant to parole suitability are to be considered and balanced, being these matters are exclusively within the discretion of the Board, making it irrelevant that a court might find the evidence in the record supporting suitability far outweighs unsuitability factors (Rosenkrantz at 677) the evidence must have some indicia of reliability (Scott I at 899) and unsuitability – suitability determinations must have some rational basis in fact (Elkins at 489).

As summarized by the California Supreme Court, the judicial branch is authorized to review the factual basis of a decision of the Board denying parole in order to ensure that the decision comports with the requirements of due process of law, in conducting such a review, the court may inquire whether "some evidence" in the record before the Board supports the decision to deny parole, based upon factors specified by the statute and regulation. If the decision's consideration of the specified factors is not supported by some evidence in the record and thus is devoid of a factual basis, the court should grant the petition for writ of habeas corpus (Rosenkrantz at 658), remanding the case for a new hearing being futile, the only appropriate remedy is to grant release (Saif'ullah 2005 WL 1555389 at *16; Rosenkrantz v. Marshall, 2006 WL 2327085;

2:

McQuillion v. Duncan, (2003) 342 F.3d 1012, 1015-101; Lee and Elkins.

Finally, as has been stated, because the overarching consideration is public safety, the test in reviewing the Board's decision denying parole "is not whether some evidence supports the reasons the Board gives for denying parole, but whether some evidence indicates a parolee's release unreasonably endangers public safety (Lee at 1408).

Some evidence of the existence of a particular factor does not necessarily equate to some evidence the parolee's release unreasonably endangers public safety (Id.). "A commitment offense is an unsuitability factor that is immutable and whose predictive value may be very questionable after a long period of time." see (Scott II, at 594-595 and fn 9) quoting (People v. Murtishaw, (1981) 29 Cal.3d 733, 768) holding "predictions of future dangerousness are exceedingly unreliable, even where the passage of time is not a factor and the assessment is made by an expert".

## GROUND ONE:

Can petitioner be denied parole based on dismissed counts by the Deputy District Attorney?

Petitioner plead guilty to one count of second degree murder with the promise by the state attorney that all other counts would be dismissed. Now the parole authority holds these dismissed counts against petitioner and using them to deny parole is contrary to his plea agreement and California Law.

California Penal Code 3041 (b) requires a parole date be set unless the gravity of the convicted offense is such that a longer period of incarceration is necessary. Petitioner was never convicted of crimes against multiple victims, any use of this factor to deny parole for petitioner violates both the law and petitioner's plea agreement. See Brown and Buckley, supra.

3

GROUND TWO:

Being the record is the only reliable information and the trial record contains the facts of petitioner's offense, use of police reports violates Cal. Code of Regs. tit. 15 2402.

Police reports are not part of the record of conviction, <u>Draeger v. Reed</u>, 9 Cal.App.4th 1511. Therefore all references to police reports in the transcripts are not evidence and must be stricken. During parole hearings, "evidence" must have "indicia of reliability" <u>Biggs v. Terhune</u>, 334 F.3d at 915, "some evidence" standard is only met, if the "evidence" is reliable, in the "record" and supports the "record" <u>Powell v. Gomez</u>, 33 F.3d 39, 40, <u>Cato v. Rushen</u>, 824 F.2d 703, 705 and <u>Superintendent v. Hill</u>, 472 US 455-456. The United States Supreme Court held in <u>Crawford v. Washington</u>, 2004 DJDAR 2949 "The Confrontation Clause commands that "reliability" be assessed in a particular manner: By testing in the crucible of cross-examination". An unsworn, unsigned, typed by an unknown author, with no evidence of how this alleged statement was taken is unreliable.

During the change of plea hearing and sentencing hearing of petitioner (see Exhibit E) the state attorney set forth the facts of the case, the Superior Court Judge accepted them as true and reliable.

The Board must be prohibited from using unreliable untested police reports as "some evidence" in a attempt to over ride reliable factual judicial findings to deny parole.

GROUND THREE:

Can the Board use an alleged failure to met one of the nine suitability factors as "some evidence" to deny parole?

As understood by petitioner, the Board is to set a parole date unless they find the crime was committed beyond the minimum necessary elements to sustain the conviction. The Supreme Court held in Dannenberg and Rosenkrantz this to mean "particular egregious", reading those cases, petitioner cannot find

anywhere the Court said the Board could deny if petitioner failed to meet a
suitability factor.

In petitioner's case the Board said, as address supra, they were very
impressed with petitioner, yet until they are 100% certain of petitioner's
remorse they err on the side of caution and denied parole.

Signs of Remorse is a suitability factor which is to be weighed against the
unsuitability factors, not a means to deny parole, so what weighing process does
the Board use?

Clearly, using an alleged failure to meet a suitability factor, with a 100%
certainty does not justify the denial of parole under statute, regulations or
court rulings.

GROUND FOUR:

Does the Indeterminate Sentence Law substitute the will and discretion of
the Board of Parole Hearings as to the time when petitioner is to be released
for the fixed right to a deduction for his term of good conduct?

Petitioner is vested with a statutory right to earn good time conduct
credits, In re Moniqold, (1988) 205 Cal.App.3d 1224, (see Exhibit B, section 3).

When the Law substitutes the discretion of the Board for a statutory right,
then it appears to be unconstitutional.

When, as here, the Board has not fixed the length of time which petitioner
is to serve until the time they are ready to grant him his discharge, as
evidenced by the instant case, there is obviously no opportunity for the
operation of the good time credit system (see Ex Parte Lee, (1918) 177 Cal. 690)

The Law requires petitioner shall be released upon reaching his maximum
term Dannenberg unless the Board fixes a shorter time and grants release, which
they have failed to do.

For this reason it appears penal code 3041 (b) is unconstitutional.

4 a

**GROUND FIVE:**

Decision that petitioner is unsuitable for parole is not justified when the Board's own decision does not contain "any evidence" petitioner currently poses an unreasonable risk to public safety.

The Board's only concerns regarding parole was, multiple victims and petitioner's alleged failure to meet a suitability factor with a 100% clarity.

Petitioner's record and the Board found petitioner's psych reports fully supported parole. That petitioner had parole plans, had done all the programming they expected of him and they were very impressed.

As address, petitioner did not plead guilty to a charge of multiple victims, those charges were dismissed, besides that fact that after 24 years its been held that this reason is no longer a factor (Elkins at 498; and Barker, 2007 DJDAR 7558).

The only issue is the failure to meet a suitability factor in the eyes of the Board. Yet no rule, statute, regulation, Law, of court ruling, petitioner can locate holds that parole can be denied for failing to met a suitability factor.

Clearly, petitioner no longer poses an unreasonable risk to public safety and should therefore be released.

**GROUND SIX:**

Petitioner's due process rights under the 5th & 14th Amemd., of the U.S. Const., are violated by the Board's use of unchanging factors to deny petitioner a grant of parole, once petitioner exceeded his minimum term.

As discussed in the Introduction, petitioner has served his minimum term September 1, 1997, that was set under California Penal Code 3041 (a), use of offense to deny parole now violates both state and federal due process.

Numerous courts have found the continued denials of parole based on unchanging factors in face of the rehabilitation of petitioner, espoused by the

prison system and in face of impeccable prison programming, does in fact violate
due process of law, state due process violated in Barker, Lee, Elkins, Scott, In
re Gray, 2007 DJDAR 7515; federal due process violated in Martin v. Marshall,
(2006) 431 F.Supp.2d 1038; Sanchez v. Kane, (2006) 444 F.Supp.2d 1049;
Rosenkrantz v. Marshall, (2006) 444 F.Supp.2d 1063; Biggs v. Terhune, (2003) 334
F.3d 914; Willis v. Kane, 2007 WL 1232060.

Petitioner's life offense, as explained, has no evidentiary value in
proving current dangerousness, what remains is petitioner's rehabilitation which
shows his lack of danger to public safety if released on parole.

It is generally recognized by the courts and by modern penologists that the
purpose of the indeterminate sentence law, like other modern laws in relation to
the administration of the criminal law, is to mitigate the punishment which
would otherwise be imposed upon the offender.

These laws place emphasis upon the reformation of the offender. They seek
to make the punishment fit the criminal rather than the crime.

They endeavor to put before the prisoner great incentive to well-doing in
order that his will to do well should be strengthened and confirmed by the habit
of well-doing. Instead of trying to break the will of the offender and make his
submissive, the purpose is to strengthen his will to do right and lesson his
temptation to do wrong (see Ex Parte Lee, (1918) 177 Cal. 690).

In petitioner's case, he served his minimum term of punishment, his record
shows he has a strong will to do right, and does not pose a risk to public
safety, and must be released on parole.

GROUND SEVEN:

Does the promise of Deputy District Attorney Springer, that the parole
board will release petitioner back into the community prevent the application of
the enactment of statute 3041.2 after petitioner entered his plea agreement.

Petitioner entered into his plea agreement in 1984, 4 years prior to the

4c

enactment of proposition 89, and the promise made to petitioner was that the parole Board would release him on parole. In the case <u>In re Chaudhary</u>, (2004) county of Santa Clara Case no. 108084, (provided as Exhibit G, Section 6) held application of prop. 89's enactment of Penal Code 3041.2 violated due process, to those who plead to second degree murder prior to its enactment.

Clearly, petitioner plead to second degree murder prior to 1988, was promised that the parole board would be the one to parole him.

CONCLUSION

WHEREFORE: When "NO EVIDENCE" can be found in the "record" that petitioner currently poses an unreasonable risk to public safety when paroled, remand to the Board of Parole Hearings is futile. Petitioner's "record" shows experts rated his risk to public safety as low or no more than the average citizen.

Petitioner has exceeded his 17 year term of punishment and has served 9 years into the "to life" portion, combined, more than 24 years of rehabilitation. Petitioner plead covered all the elements of the offense, thus no elements remain to deny parole.

Petitioner's plea promised him the Board would release him on parole back into the community. The Boards failure to parole petitioner, without good cause, now requires this court to order petitioner released forthwith.

I, Santos Chavez, hereby declare all the above true and correct under penalty of perjury.

Dated: 6\18\01

Respectfully Submitted,

Santos Chavez Pro Per

4𝓁

8. Did you appeal from the conviction, sentence, or commitment?  ☐ Yes.  ☒ No.  If yes, give the following information:
   a. Name of court ("Court of Appeal" or "Appellate Dept. of Superior Court"):

   b. Result: _____  c. Date of decision: _____

   d. Case number or citation of opinion, if known: _____

   e. Issues raised:  (1) _____

      (2) _____

      (3) _____

   f. Were you represented by counsel on appeal?  ☐ Yes.  ☐ No.  If yes, state the attorney's name and address, if known:

9. Did you seek review in the California Supreme Court?  ☐ Yes.  ☐ No.  If yes, give the following information:

   a. Result: _____  b. Date of decision: _____

   c. Case number or citation of opinion, if known: _____

   d. Issues raised:  (1) _____

      (2) _____

      (3) _____

10. If your petition makes a claim regarding your conviction, sentence, or commitment that you or your attorney did not make on appeal, explain why the claim was not made on appeal:

    Issued not ripe during time to appeal.

11. Administrative Review:
    a. If your petition concerns conditions of confinement or other claims for which there are administrative remedies, failure to exhaust administrative remedies may result in the denial of your petition, even if it is otherwise meritorious. (See In re Muszalski (1975) 52 Cal.App.3d 500 [125 Cal.Rptr. 286].) Explain what administrative review you sought or explain why you did not seek such review:

       Board of Parole Hearings (Board) has no administrative review.

    b. Did you seek the highest level of administrative review available?  ☒ Yes.  ☐ No.
    *Attach documents that show you have exhausted your administrative remedies.*

12. Other than direct appeal, have you filed any other petitions, applications, or motions with respect to this conviction, commitment, or issue in any court?   [XX] Yes. If yes, continue with number 13.   [ ] No. If no, skip to number 15.

13. a. (1) Name of court:   Los Angeles Superior Court

   (2) Nature of proceeding (for example, "habeas corpus petition"):   Motion for release

   (3) Issues raised:  (a)   Violation of plea agreement.

        (b) _____

   (4) Result (Attach order or explain why unavailable):   Denied   see Exhibit G Sections 1 & 2

   (5) Date of decision:   February 15, 2007 & May 09, 2006

   b. (1) Name of court:   California Superior Court, County of Los Angeles

   (2) Nature of proceeding:   Habeas Corpus

   (3) Issues raised:  (a)   Board of Parole Hearings is violating due process

        (b) _____

   (4) Result (Attach order or explain why unavailable):   Denied   see Exhibit G Section 3

   (5) Date of decision:   May 04, 2007

   c. For additional prior petitions, applications, or motions, provide the same information on a separate page.

14. If any of the courts listed in number 13 held a hearing, state name of court, date of hearing, nature of hearing, and result:
   None held

15. Explain any delay in the discovery of the claimed grounds for relief and in raising the claims in this petition. (See In re Swain (1949) 34 Cal.2d 300, 304.)
   No delay Board decision was not final until June 9, 2006

16. Are you presently represented by counsel?   [ ] Yes.   [XX] No. If yes, state the attorney's name and address, if known:

17. Do you have any petition, appeal, or other matter pending in any court?   [ ] Yes.   [xx] No.   If yes, explain:
   XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX
   XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

18. If this petition might lawfully have been made to a lower court, state the circumstances justifying an application to this court:
   N/A

I, the undersigned, say: I am the petitioner in this action. I declare under penalty of perjury under the laws of the State of California that the foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief, and as to those matters, I believe them to be true.

Date:  6•18•07

_____
(SIGNATURE OF PETITIONER)

MC-275 [Rev. January 1, 1999]          PETITION FOR WRIT OF HABEAS CORPUS          Page six of six

**PROOF OF SERVICE BY MAIL**
**BY PERSON IN STATE CUSTODY**
(C.C.P. §§ 1013(A), 2015,5)

I, _____Santos Chavez_____, declare:

I am over 18 years of age and I am party to this action. I am a

resident of CORRECTIONAL TRAINING FACILITY prison, in the County

of Monterrey, State of California. My prison address is:

> Santos Chavez _____, CDCR #: C-87968
> CORRECTIONAL TRAINING FACILITY
> P.O. BOX 689, CELL #: _____
> SOLEDAD, CA 93960-0689.

On _____6·18·07_____, I served the attached:

PETITION FOR WRIT OF HABEAS CORPUS

on the parties herein by placing true and correct copies

thereof, enclosed in a sealed envelope (verified by prison

staff), with postage thereon fully paid, in the United States

Mail in a deposit box so provided at the above-named institution

in which I am presently confined. The envelope was addressed as

follows:

CALIFORNIA COURTS OF APPEAL          CALIFORNIA ATTORNEY GENERAL
SECOND APPELLATE DISTRICT            300 S. Spring St.
300 S. Spring St. Fl. 2 N Tower      Los Angeles, CA 90013
Los Angeles, CA 90013

I declare under penalty of perjury under the laws of the

State of California that the foregoing is true and correct.

Executed on _____6·18·07_____.

_____
Santos Chavez
Declarant

DOCKETING
RECEIVED

ATTORNEY GENERAL
LOS ANGELES

ATTORNEY GENERAL
LOS ANGELES

RECEIVED

ATTORNEY GENERAL
SAN DIEGO
2007 JUN 27  AM 8:11

SAM T. VUU