# EXHIBIT G

# CALIFORNIA APPELLATE COURTS

## Case Information



**Supreme Court**                              Change court ▼

Court data last updated: 02/26/2008 12:53 PM

Supreme
Court

Welcome

Search

E-mail

Calendar

Help

Opinions



home

**Case Summary    Docket    Briefs
Disposition    Parties and Attorneys    Lower Court**

## Disposition

**CHAVEZ (SANTOS) ON H.C.**
**Case Number S154571**

Only the following dispositions are displayed below: Orders Denying Petitions, Orders Granting Rehearing and Opinions. Go to the Docket Entries screen for information regarding orders granting review.

**Case Citation: none**

| Date | Description |
|------|-------------|
| 09/19/2007 | Petition for review denied |

**Click here to request automatic e-mail notifications about this case.**

© 2007 Judicial Council of California

Court of Appeal, Second Appellate District, Div. 8 - No. B199944
S154571

SUPREME COURT
F I L E D

SEP 7 – 2007

Frederick K. Ohlrich Clerk

DEPUTY

# IN THE SUPREME COURT OF CALIFORNIA

In re SANTOS CHAVEZ on Habeas Corpus

The time for granting or denying review in the above-entitled matter is hereby extended to and including October 18, 2007, or the date upon which review is either granted or denied.

*Chief Justice*

Original

Santos Chavez
C-87968 ED-002-Up
P.O. Box 689
Soledad, CA 93960-0689
Pro Per

SUPREME COURT
F I L E D

JUL 2 0 2007

Frederick K. Ohlrich Clerk

DEPUTY

# S154571    CALIFORNIA SUPREME COURT

Santos Chavez,           )    Case No._____    RECEIVED
                         )
            Petitioner,  )                                JUL 1 8 2007
                         )    **PETITION FOR REVIEW**
v.                       )                                CLERK SUPREME COURT
                         )
BEN CURRY, Warden (A), et al.,  )    (Review of California Courts of Appeal
                         )    denial case no. B199944 Dated: July 11, 2007.
            Respondent.  )

## PETITION FOR REVIEW

Petitioner, Santos Chavez, ask this court to review the denial of the
California Courts of Appeals, Second Appellate District, denial of his
application for writ of habeas corpus against the Board of Parole Hearings,
denying his application to be released on parole.

### NECESSITY FOR REVIEW

The case Law governing the application of California Penal Code 3041 (b)
and the case law related thereto, is being applied in differing manners in the
same and differing courts.  Example, the 9th Circuit has held plea agreements
are binding, yet lower California Courts fail to apply these holdings, nor do
lower courts determine when the crime is actually beyond the minimum necessary
elements to sustain a conviction, this standard cannot be left to eyes of the
Board, Board members are not judges of the law.

Thus, review is necessary to provide uniformity in the application of
parole law to term to life prisoners in California.

l

INTRODUCTION

Petitioner, Santos Chavez, declares the Board of Parole Hearings (Board) reason, possible differing versions of the life offense might show a lack of remorse, to deny parole during petitioner's 8th parole consideration hearing held February 09, 2006 (Hearing Transcripts submitted as Exhibit A)(Exhibits Submitted Separately), is not supported by "some evidence" that petitioner currently poses a current risk to public safety, in light of his 24 years of continued incarceration on a 17 to life sentence which resulted from a plea of guilty to one count of second degree murder, during which time the facts of petitioner's offense were agreed upon by the Los Angeles Deputy District Attorney (DDA), and plead guilty to by petitioner.

Petitioner on June 19, 2006 filed a petition for writ of Habeas Corpus in the California Superior Court, case no. BH004075, challenging the Board's denial and procedures, said court denied petitioner's petition on May 4, 2007 claiming that the Board's decision was supported by some evidence, see (Ex. G, Section 3).

Specifically the Superior Court found the Board's decision was supported by finding that "multiple victims were attacked, injured or killed". This finding is contrary to the Plea agreement promise made by DDA Pamela Springer, when she promised to dismiss all other counts for guilty plea to one count of second degree murder. At the change of plea hearing (see Exhibit E, Section 1) DDA Springer and petitioner engaged in the following colloquy:

Ms. Springer: "Yes, Your Honor. Pursuant to our discussion between counsel and myself, the defendant is prepared to at this time, it is my understanding, plead guilty to count II of this information, murder. He is prepared to admit to the allegation in return for which the remaining counts will be dismissed.

There will be a stipulation that there is a factual basis for a finding that the murder is in the second degree." (Id. at 2).

Ms. Springer: "Mr. Chavez, you understand that counts I, III, and IV will be dismissed at the time of probation and sentencing provided you do go forward?

Do you understand that?

The Defendant: Yes." (Id. at 6).

Ms. Springer: "Now, when you do go to state prison, when the parole board determines that you are ready for release back into the community, you will be placed on parole for a period of five years.

If during that time you violate any condition of parole, you can be returned to state prison for up to one year.

Do you understand this?

The Defendant: Yes. (Id. at 7).

Ms. Springer: "Mr. Chavez, to information no. A38207, Count II, charging you with a violation of section 187 of the penal code, murder, in that you did willfully and unlawfully and with malice aforethought kill Ronald Rivas, a Human Being, how do you plead?

The Defendant: Guilty.

Ms. Springer: And do you admit, sir, that in the commission of that offense, you personally used a firearm?

The Defendant: Yes.

Ms. Springer: In this particular offense, that you used a rifle, is that correct?

The Defendant: Yes? (Id. at 10)

When, as here, promises are made by the state attorney in exchange for a plea of guilty, those promises are binding on the Board, see <u>Brown v. Poole</u>, 337 F.3d 1155 (9th Cir. 2003); <u>Buckley v. Terhune</u>, 441 F.3d. 688 (9th Cir. 2005) cert. denied <u>Tilton v. Buckley</u>, U.S. Supreme Ct. no 05-1623, 2007 DJDAR 5499.

Contrary to the findings of the Board, erroneously upheld by the superior court, there is "NO EVIDENCE" to support a multiple victim finding, the state attorney entered into a plea agreement with petitioner that he would be convicted of one count of second degree murder, nothing more and nothing less.

Assuming arguendo the Board could ignore plea agreements, the above finding is also among the "immutable" facts of crimes which, given the lapse of 2[4] years and the exemplary rehabilitative gains made by petitioner over time, continued reliance on the aggravating facts of the crime no longer amount[s] to 'some evidence' supporting denial of parole, see In re Barker, 2007 DJDAR 7548, 7558.

Next the superior courts claim that the Board found petitioner was "unconcerned about how many people were hurt or killed" is a complete misstatement of the Board's factual record.

The Board was concerned that [at the time of the shooting] many individuals were present and luckily there weren't more casualties, which went to the point that the "offense" was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering,  see (Exhibit A, pg 112), another factor that will never change, notwithstanding the fact that petitioner plead guilty, expressed remorse then and now, and continues to state his concern over his actions and the danger his actions posed to all the many people were present, hurt or killed, a fact not disputed by the Board.  The Board read into the record portions of three psych reports, briefly stated:  See Exhibit A, starting on page 71, "we have April 15th of 2005.  And that's authored by Zika. She's the senior supervisor in psychology.  And goes over various issues. Identifying information, marital issue, the parole plans, possibly the current mental status with treatment needs.  And I didn't notice any problems there. Does make a comment here that is "his judgment is sound and his insight is good."  On page 72 they read into the record:  "Inmate Chavez feels the full

impact of his terrible decision to shoot somebody resulting in a man's death.
He stated today is would've been much better to have called the police and let
them handle the problem.  Inmate Chavez feels genuine remorse for the victim,
the victims family and for his own family."

On page 74, petitioner explains to the Board that he feels terrible about
the offense and is very fortunate that no one else died.

On pages 76, 78, 79 assessment of dangerous evaluations in three different
psych reports between 2000 and 2005 all found petitioner's potential for
violence in the community to be no more then the average citizen and a suitable
candidate for parole.  (All eight psych reports are submitted under Exhibit C).

Lastly the superior courts uphold of the Board's finding that petitioner
has inconsistent version's of the offense is not supported by the entire record,
and cannot be "some evidence" to support a denial of parole.

During the Board Hearing, Ex A, DDA Yglecias, in an "non-adversarial"
manner (Id. at 90), proceeds to retry petitioner (Id. 86-99).  Her major concern
was an unsworn, unreliable, unsigned, alleged statement made prior to petitioner
being charged for his offense.

During sentencing of petitioner, the record shows DDA Springer accepting
petitioner's factual version of events based not on just the word of petitioner,
but on the confession made by petitioner's crime partner (Mr. Cantu) as follows:

Ms. Springer: "Yes, Your Honor.  Very briefly as to Mr. Cantu's
cooperation.  From the moment he was apprehended in Texas, he immediately laid
out both his and his co-defendant's complicity in the murder.  He waived
extradition and came back to California voluntarily.

Though it was the type of a midnight hour type of deal worked out with
Mr. Cantu, he nevertheless did agree to testify against this defendant in return
for merely staying the use allegation.

As to whether or not the other side fired first and as a result two people

ended up wounded and one dead, that evidence was in conflict.  That evidence would have to go before a jury, and it would be up to the jury to determine whether or not which fired or who fired first.

But the fact remains, regardless of who actually fired first, that this defendant and his friend, Jessie Cantu, armed themselves with loaded firearms, a rifle, a hand gun, and went looking for members from Cypress Park, not particularly the ones who had harassed his wife, but he went looking.

They went looking for members of Cypress Park in order to retaliate for the harassment of his wife.  As a result of the hunt, Mr. Ronald Rivas, a marine who was home on leave without absolutely no evidence that he was involved in any harassment of the defendant's wife, he ended up dead, the victim of a bullet.

So, Your Honor, in submission, the People feel that this defendant does not deserve to have the stay -- excuse me.  That two years stayed.  There is no basis both in fact, reason, or logic to stay that additional two years.  We'd submit it.  (Ex E, Section 2 pgs 7-8).

Petitioner's version of his offense has remained the "SAME" since his admission of guilt May 21, 1984 and sentence June 12, 1984, in that he and his crime partner (Mr. Cantu) armed themselves with a handgun and a rifle and went to confront the men who attempted to attack petitioner's pregnant wife, as shown above these facts were undisputed 24 years ago, and accepted by the Los Angeles Superior Court Judge and the Los Angeles Deputy District Attorney.

Thus, now some 24 years later, a contrary allegation by a DDA at petitioner's parole hearing, who appears not to pleased with the plea of guilty agreement her office made 24 years ago, retires the case.  This retrial is a clear attempt to provide the Board "some evidence" to deny parole, which has blindly been upheld by the Superior Court.  The evidence, an unsworn, unsigned, self-serving, untrue statement, that was never used during trial proceedings, cannot be used as "some evidence" to support a finding that petitioner currently

6

poses a unreasonable risk to public safety. Additionally trained professionals have found petitioner does not pose an unreasonable risk to public safety if released on parole. Thus, petitioner's hearing was transformed from a fair hearing into an unfair, arbitrary hearing in violation of petitioner's due process rights, by a highly questionable tactic by a new DDA.

NONE [emphasis added] of the reasons given by the Board to deny parole are supported by "any evidence" that petitioner would pose an unreasonable risk to public safety if released on parole after serving over 24 years in prison on a 17 to life sentence. The Board's decision actually contradicts their denial of parole, some of the comments made by the Board are as following:

"I'll make some comments and then read the decision. You know, we were very favorably impressed with you. Your programming is great. It's just we have - we're left with a lot of unanswered questions. And whenever we are in that type of situation we have to err on the side of caution." (Ex A, pg 111).

And the impetus for the crime was the inmate's wife at the time, Donna, had encountered some individuals from the Cypress Pard gang at a grocery store. They threatened her and she, in turn, told the inmate, her husband, who got upset over this and decided to basically take the matters into his own hands and discourage the gang members from that type of activity and he ended up shooting one and wounding two others." (Id. 113)

"In terms of your institutional behavior, you do have an excellent record, as I mentioned, of programming. You do seem to have participated in as many self-help and therapy programs as we could've asked you to do. And you do have a - is it three vocations?" (Ibid.)

The Board's record clearly shows petitioner is suitable for parole, their decision to deny parole is not support by "some evidence".

7

Petitioner has a right to a fair parole consideration hearing, the Board violated this right, petitioner has a protected liberty interest in parole, the Board violated this protected right, see <u>Irons v. Carey</u>, (2007) 479 F.3d 658, 2007 U.S. App. Lexis 5198; petitioner's minimum eligible parole date past on March 7, 1993 see (Ex. A, pg 1) and petitioner exceeded his actual minimum term of 17 years on September 1, 1997 [arrested 9/1/1982 + 17 years = 9/1/1997], notwithstanding the plea agreement entered into by petitioner, which promised he would be held accountable for one count of second degree murder, all other charges were dismissed and promised that when the parole board determined petitioner was ready for release petitioner would be placed on parole for five years.

THEREFORE: Being there is "NO EVIDENCE" to support the Board's decision that petitioner actually poses a risk to public safety if released on parole, all the "EVIDENCE" in the record supports parole, and he has past both his minimum terms, and honored all the terms of his plea agreement, and that the Board was to release him, remain back to the Board would be a futile act, the only remaining remedy is to order respondent to parole him forthwith.

## CALIFORNIA STATUTORY AND REGULATORY SCHEME FOR PAROLE

Beginning with <u>In re Elkins</u>, (2006) 144 Cal.App.4th 475, 487, "with an overview of the law as summarized in <u>In re Rosenkrantz</u>, (2002) 29 Cal.4th 616, and two subsequent decisions, <u>In re Scott</u>, (2004) 119 Cal.App.4th 871 (Scott I), and <u>In re Scott</u>, (2005) 133 Cal.App.4th 573 (Scoot II), and other constitutional, code and regulatory framework.

"Parole suitable decisions for inmates serving indeterminate life terms are made, in the first instance, by the Board. (<u>Scott I</u>, at 884-885). While the Board has broad discretion, they must normally set parole release in a manner

that provides uniform terms for offenses of similar gravity and magnitude with respect to the public safety (ibid; PC § 3041, subd. (a)), and they must set a parole date unless it determines that the gravity of the current convicted offense or offenses, or their timing and gravity, are such that public safety requires a more lengthy period of incarceration (Scott I, at 885; PC § 3041, subd. (b)). That decision is guided, in turn, by a regulation directing the Board's consideration to six nonexclusive circumstances tending to show unsuitability and nine tending to show suitability, and a matrix table to be used to set uniform terms for where the particular murder fits, in terms of its relative seriousness see (Cal. Code Regs., tit. 15, 2400 et seg.); (Scott I at 888, 897); (Elkins, 487, fn.).

PC § 3041, Scott I, Scott II, found the only "statutory" factor required to be considered, and overarching consideration, is "public safety".

In determining risk to "public safety" the regs., (ibid) require that "all relevant, reliable information available to the panel shall be considered in determining suitability for parole.

The relative importance of each unsuitable or suitable factors is left to the judgment of the panel, (Scott II, at 592).

The goal of PC § 3041, is that "release on parole is the rule, rather than the exception. This section requires that the Board set a release date unless it determines that "consideration of the public safety requires a more lengthy period of incarceration" (In re Smith, (2003) 114 Cal.App.4th 343, 351; accord In re Lee, (2006) 143 Cal.App.4th 1400, 1405 [petitioner sentenced to indeterminate life term is normally entitled to parole when he does not pose an unreasonable risk to public safety"]).

Petitioner, being pro per, asks the court to use less stringent standards than formal pleadings drafted by lawyers, Haines v. Kerner, (1972) 404 U.S. 519, also use close judicial scrutiny when judging petitioner's parole denial, since

he committed his offense over 24 years ago, exceeded his 17 year minimum term by

9 years, Scott II, Lee, Elkins and Irons, using all above framework for review.

STANDARD FOR REVIEW

In denying petitioner's habeas corpus petition, the superior court did not

conduct an evidentiary hearing, this being an original proceeding, this court

should review the record independently (Scott I at 884). And the review  is

under the undisputed "some evidence" standard (Rosenkrantz at 658; Elkins, at

488 ["some evidence" standard designed to ensure minimum procedural due process

protections].

While the court is precluded from resolving conflicts in the evidence,

weight to be given evidence, or the manner specific factors relevant to parole

suitability are to be considered and balanced, being these matters are

exclusively within the discretion of the Board, making it irrelevant that a

court might find the evidence in the record supporting suitability far outweighs

unsuitability factors (Rosenkrantz at 677) the evidence must have some indicia

of reliability (Scott I at 899) and unsuitability – suitability determinations

must have some rational basis in fact (Elkins at 489).

As summarized by the California Supreme Court, the judicial branch is

authorized to review the factual basis of a decision of the Board denying parole

in order to ensure that the decision comports with the requirements of due

process of law, in conducting such a review, the court may inquire whether "some

evidence" in the record before the Board supports the decision to deny parole,

based upon factors specified by the statute and regulation.  If the decision's

consideration of the specified factors is not supported by some evidence in the

record and thus is devoid of a factual basis, the court should grant the

petition for writ of habeas corpus (Rosenkrantz at 658), remanding the case for

a new hearing being futile, the only appropriate remedy is to grant release

(Saif'ullah 2005 WL 1555389 at *16; Rosenkrantz v. Marshall, 2006 WL 2327085;

McQuillion v. Duncan, (2003) 342 F.3d 1012, 1015-101; Lee and Elkins.

Finally, as has been stated, because the overarching consideration is public safety, the test in reviewing the Board's decision denying parole "is not whether some evidence supports the reasons the Board gives for denying parole, but whether some evidence indicates a parolee's release unreasonably endangers public safety (Lee at 1408).

Some evidence of the existence of a particular factor does not necessarily equate to some evidence the parolee's release unreasonably endangers public safety (Id.). "A commitment offense is an unsuitability factor that is immutable and whose predictive value may be very questionable after a long period of time." see (Scott II, at 594-595 and fn 9) quoting (People v. Murtishaw, (1981) 29 Cal.3d 733, 768) holding "predictions of future dangerousness are exceedingly unreliable, even where the passage of time is not a factor and the assessment is made by an expert".

**GROUND ONE:**

Can petitioner be denied parole based on dismissed counts by the Deputy District Attorney?

Petitioner plead guilty to one count of second degree murder with the promise by the state attorney that all other counts would be dismissed. Now the parole authority holds these dismissed counts against petitioner and using them to deny parole is contrary to his plea agreement and California Law.

California Penal Code 3041 (b) requires a parole date be set unless the gravity of the convicted offense is such that a longer period of incarceration is necessary. Petitioner was never convicted of crimes against multiple victims, any use of this factor to deny parole for petitioner violates both the law and petitioner's plea agreement. See Brown and Buckley, supra.

**GROUND TWO:**

Being the record is the only reliable information and the trial record contains the facts of petitioner's offense, use of police reports violates Cal. Code of Regs. tit. 15 2402.

Police reports are not part of the record of conviction, <u>Draeger v. Reed</u>, 9 Cal.App.4th 1511. Therefore all references to police reports in the transcripts are not evidence and must be stricken. During parole hearings, "evidence" must have "indicia of reliability" <u>Biggs v. Terhune</u>, 334 F.3d at 915, "some evidence" standard is only met, if the "evidence" is reliable, in the "record" and supports the "record" <u>Powell v. Gomez</u>, 33 F.3d 39, 40, <u>Cato v. Rushen</u>, 824 F.2d 703, 705 and <u>Superintendent v. Hill</u>, 472 US 455-456. The United States Supreme Court held in <u>Crawford v. Washington</u>, 2004 DJDAR 2949 "The Confrontation Clause commands that "reliability" be assessed in a particular manner: By testing in the crucible of cross-examination". An unsworn, unsigned, typed by an unknown author, with no evidence of how this alleged statement was taken is unreliable.

During the change of plea hearing and sentencing hearing of petitioner (see Exhibit E) the state attorney set forth the facts of the case, the Superior Court Judge accepted them as true and reliable.

The Board must be prohibited from using unreliable untested police reports as "some evidence" in a attempt to over ride reliable factual judicial findings to deny parole.

**GROUND THREE:**

Can the Board use an alleged failure to met one of the nine suitability factors as "some evidence" to deny parole?

As understood by petitioner, the Board is to set a parole date unless they find the crime was committed beyond the minimum necessary elements to sustain the conviction. The Supreme Court held in Dannenberg and Rosenkrantz this to mean "particular egregious", reading those cases, petitioner cannot find

anywhere the Court said the Board could deny if petitioner failed to meet a suitability factor.

In petitioner's case the Board said, as address supra, they were very impressed with petitioner, yet until they are 100% certain of petitioner's remorse they err on the side of caution and denied parole.

Signs of Remorse is a suitability factor which is to be weighed against the unsuitability factors, not a means to deny parole, so what weighing process does the Board use?

Clearly, using an alleged failure to meet a suitability factor, with a 100% certainty does not justify the denial of parole under statute, regulations or court rulings.

GROUND FOUR:

Does the Indeterminate Sentence Law substitute the will and discretion of the Board of Parole Hearings as to the time when petitioner is to be released for the fixed right to a deduction for his term of good conduct?

Petitioner is vested with a statutory right to earn good time conduct credits, In re Monigold, (1988) 205 Cal.App.3d 1224, (see Exhibit B, section 3).

When the Law substitutes the discretion of the Board for a statutory right, then it appears to be unconstitutional.

When, as here, the Board has not fixed the length of time which petitioner is to serve until the time they are ready to grant him his discharge, as evidenced by the instant case, there is obviously no opportunity for the operation of the good time credit system (see Ex Parte Lee, (1918) 177 Cal. 690)

The Law requires petitioner shall be released upon reaching his maximum term Dannenberg unless the Board fixes a shorter time and grants release, which they have failed to do.

For this reason it appears penal code 3041 (b) is unconstitutional.

13

**GROUND FIVE:**

Decision that petitioner is unsuitable for parole is not justified when the Board's own decision does not contain "any evidence" petitioner currently poses an unreasonable risk to public safety.

The Board's only concerns regarding parole was, multiple victims and petitioner's alleged failure to meet a suitability factor with a 100% clarity.

Petitioner's record and the Board found petitioner's psych reports fully supported parole. That petitioner had parole plans, had done all the programming they expected of him and they were very impressed.

As address, petitioner did not plead guilty to a charge of multiple victims, those charges were dismissed, besides that fact that after 24 years its been held that this reason is no longer a factor (<u>Elkins</u> at 498; and <u>Barker</u>, 2007 DJDAR 7558).

The only issue is the failure to meet a suitability factor in the eyes of the Board. Yet no rule, statute, regulation, Law, of court ruling, petitioner can locate holds that parole can be denied for failing to met a suitability factor.

Clearly, petitioner no longer poses an unreasonable risk to public safety and should therefore be released.

**GROUND SIX:**

Petitioner's due process rights under the 5th & 14th Amemd., of the U.S. Const., are violated by the Board's use of unchanging factors to deny petitioner a grant of parole, once petitioner exceeded his minimum term.

As discussed in the Introduction, petitioner has served his minimum term September 1, 1997, that was set under California Penal Code 3041 (a), use of offense to deny parole now violates both state and federal due process.

Numerous courts have found the continued denials of parole based on unchanging factors in face of the rehabilitation of petitioner, espoused by the

prison system and in face of impeccable prison programming, does in fact violate due process of law, state due process violated in <u>Barker</u>, <u>Lee</u>, <u>Elkins</u>, <u>Scott</u>, <u>In re Gray</u>, 2007 DJDAR 7515; federal due process violated in <u>Martin v. Marshall</u>, (2006) 431 F.Supp.2d 1038; <u>Sanchez v. Kane</u>, (2006) 444 F.Supp.2d 1049; <u>Rosenkrantz v. Marshall</u>, (2006) 444 F.Supp.2d 1063; <u>Biggs v. Terhune</u>, (2003) 334 F.3d 914; <u>Willis v. Kane</u>, 2007 WL 1232060.

Petitioner's life offense, as explained, has no evidentiary value in proving current dangerousness, what remains is petitioner's rehabilitation which shows his lack of danger to public safety if released on parole.

It is generally recognized by the courts and by modern penologists that the purpose of the indeterminate sentence law, like other modern laws in relation to the administration of the criminal law, is to mitigate the punishment which would otherwise be imposed upon the offender.

These laws place emphasis upon the reformation of the offender.  They seek to make the punishment fit the criminal rather than the crime.

They endeavor to put before the prisoner great incentive to well-doing in order that his will to do well should be strengthened and confirmed by the habit of well-doing.  Instead of trying to break the will of the offender and make his submissive, the purpose is to strengthen his will to do right and lesson his temptation to do wrong (see <u>Ex Parte Lee</u>, (1918) 177 Cal. 690).

In petitioner's case, he served his minimum term of punishment, his record shows he has a strong will to do right, and does not pose a risk to public safety, and must be released on parole.

**GROUND SEVEN:**

Does the promise of Deputy District Attorney Springer, that the parole board will release petitioner back into the community prevent the application of the enactment of statute 3041.2 after petitioner entered his plea agreement.

Petitioner entered into his plea agreement in 1984, 4 years prior to the

enactment of proposition 89, and the promise made to petitioner was that the parole Board would release him on parole.  In the case In re Chaudhary, (2004) county of Santa Clara Case no. 108084, (provided as Exhibit G, Section 6) held application of prop. 89's enactment of Penal Code 3041.2 violated due process, to those who plead to second degree murder prior to its enactment.

Clearly, petitioner plead to second degree murder prior to 1988, was promised that the parole board would be the one to parole him.

CONCLUSION

WHEREFORE:  When "NO EVIDENCE" can be found in the "record" that petitioner currently poses an unreasonable risk to public safety when paroled, remand to the Board of Parole Hearings is futile.  Petitioner's "record" shows experts rated his risk to public safety as low or no more than the average citizen.

Petitioner has exceeded his 17 year term of punishment and has served 9 years into the "to life" portion, combined, more than 24 years of rehabilitation.  Petitioner plead covered all the elements of the offense, thus no elements remain to deny parole.

Petitioner's plea promised him the Board would release him on parole back into the community.  The Boards failure to parole petitioner, without good cause, now requires this court to order petitioner released forthwith.

I, Santos Chavez, hereby declare all the above true and correct under penalty of perjury.

Dated: July 16, 2007

Respectfully Submitted,

Santos Chavez Pro Per

16

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

COURT OF APPEAL · SECOND DIST.

**F I L E D**

JUL 1 1 2007,

JOSEPH A. LANE _____ Clerk

F. AMOS _____ Deputy Clerk

In re

SANTOS CHAVEZ

on Habeas Corpus.

B199944

(Super. Ct. No. A382607)

**ORDER**

THE COURT*:

We have read and considered the petition for writ of habeas corpus filed on June 21, 2007.

The petition is denied as there is "some evidence" supporting the Board of Parole Hearing's February 2006 determination that petitioner was unsuitable for parole. (See *In re Rosenkrantz* (2002) 29 Cal.4th 616, 658.)

*COOPER, P.J.                    RUBIN, J.                    FLIER, J.

## PROOF OF SERVICE BY MAIL
### BY PERSON IN STATE CUSTODY
#### (C.C.P. §§ 1013(A), 2015,5)

I, _____ Santos Chavez _____, declare:

I am over 18 years of age and I am party to this action. I am a
resident of CORRECTIONAL TRAINING FACILITY prison, in the County
of Monterrey, State of California.  My prison address is:

Santos Chavez _____, CDCR #: __ C-87968 ____
CORRECTIONAL TRAINING FACILITY
P.O. BOX 689, CELL #: __ ED-052-Up ____
SOLEDAD, CA 93960-0689.

On __ July 16, 2007 ____, I served the attached:

PETITION FOR REVIEW

on the parties herein by placing true and correct copies
thereof, enclosed in a sealed envelope (verified by prison
staff), with postage thereon fully paid, in the United States
Mail in a deposit box so provided at the above-named institution
in which I am presently confined.  The envelope was addressed as
follows:

CALIFORNIA SUPREME COURT
350 McAllister St.
San Francisco, CA 94102-7303

CALIFORNIA ATTORNEY GENERAL
300 S. SPRING ST.
LOS ANGELES, CA 90013

CALIFORNIA COURTS OF APPEAL
SECOND APPELLATE DISTRICT
300 S. SPRING ST. FL. 2 N TOWER
LOS ANGELES, CA 90013

CALIFORNIA SUPERIOR COURT
COUNTY OF LOS ANGELES
210 W. TEMPLE ST.
LOS ANGELES, CA 90012-3210

I declare under penalty of perjury under the laws of the
State of California that the foregoing is true and correct.
Executed on _ July 16, 2007 _.

Santos Chavez
_____
Declarant